# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.: 2:10-cv-02203-RLH-GWF |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Order–#227) |
| JEREMY JOHNSON, individually, as officer of Defendants I Works, Inc., Cloud Nine, Inc., CPA Upsell, Inc., Elite Debit, Inc., Internet Economy, Inc., Market Funding, Inc., and Success Marketing, Inc.; as a member of Defendant Network Agenda LLC; and as the *de facto* principal of numerous Defendant Shell Companies; I WORKS, INC., *et al.*, | |
| Defendants. | |

Before the Court is Receiver Robb Evans of Robb Evans & Associates LLC's ("Receiver") **Motion for Order: (1) Authorizing and Confirming Sale of Personal Property by Public Auction; (2) Authorizing and Confirming Sale and Redemption of Investment Interest; (3) Authorizing Receiver to List and Offer for Sale Houseboats, Aircraft, and Multiple Real Properties; and (4) Granting Relief From Local Rule 66-5 Pertaining to Notice to Creditors** ("Sale Motion") (##227, 228, filed May 27, 2011). The Court has also considered Defendants Duane Fielding, Network Agenda, LLC, and Anthon Holdings Corp.'s (collectively, the "Fielding Defendants") Opposition (##239, 240, filed June 13, 2011), Defendants Jeremy D.

1

1  Johnson; I Works, Inc.; Cloud Nine Marketing, Inc.; CPA Upsell, Inc.; Elite Debit, Inc.; Internet
2  Economy, Inc.; Market Funding Solutions, Inc.; Success Marketing, Inc.; Fitness for Life, Inc.'s
3  (collectively, the "Johnson Defendants") Opposition (#245, filed June 20, 2011), the Receiver's
4  Reply to the Fielding Defendants' Opposition (#250, filed June 23, 2011), Plaintiff Federal Trade
5  Commission's ("FTC") Reply (#253, filed June 27, 2011), and the Receiver's Reply to the
6  Johnson Defendants' Opposition (#256, filed June 29, 2011).

## BACKGROUND

As the parties are familiar with the facts of this case, the Court will not recount them further except as necessary for the disposition of the Sale Motion. This dispute arises from the FTC's investigation of Johnson and numerous affiliated individuals and corporations who allegedly defrauded the public via internet scams. On December 21, 2010, the FTC filed its complaint pursuant to the Federal Trade Commission Act, and the Electronic Fund Transfer Act, to obtain permanent injunctive relief, restitution, disgorgement, and other equitable relief. On February 10, 2011, the Court issued a Preliminary Injunction Order (#130) ("Preliminary Injunction") that among other things appointed the Receiver to administer assets frozen by the Preliminary Injunction. The Receiver now moves the Court to allow the sale of certain assets. For the reasons discussed below, the Court grants the Sale Motion.

## DISCUSSION

**I.     The Receiver's Sale Motion**

Pursuant to 28 U.S.C. §§ 2001 and 2004, a district court has the authority to direct an appointed receiver to arrange a public sale of any real property or personal property under the receivership. § 2001(a). After all interested parties receive notice and a hearing, "the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby" and a price is set at no less than two-thirds of the appraised value. § 2001(b).

### A.     Johnson Defendants' Opposition

In the Sale Motion, the Receiver asks the Court to authorize the sale or listing for sale of various real property and personal property which are under the Receiver's control.  The Johnson Defendants oppose these proposed actions for several reasons.  They argue that the office equipment would obtain greater value through means other than a local auction in southern Utah.  They further argue that the vehicles identified for public auction are collector's items which will not realize their full value by auction in Hurricane, Utah, but will appreciate in value over time while in storage.  In short, the Johnson Defendants oppose the Sale Motion because none of the items are perishable, the current depressed state of the economy favors waiting to sell any assets until a later time, and the assets should remain in place until a final determination is made.

The Court concludes that the Johnson Defendants' objections are without merit.  The Receiver is charged with the duty to preserve the value of the assets of the receivership, which in this case must be accomplished by preventing the value of these assets and the estate as a whole from decreasing through ongoing expenses to maintain, insure, store, and protect those assets.  The Court is satisfied that the Receiver has identified sound business reasons that justify the sale of these assets.  Furthermore, nothing in the oppositions filed suggest that the parties with alleged interests in those assets to be sold now would be injured if their interests are converted to cash to be held by the Receiver.

### B.     Fielding Defendants' Opposition

The Fielding Defendants also oppose these proposed actions based on their purported ownership interest in one parcel of real property, one helicopter, and several additional motor vehicles that the Receiver identified for sale.  They argue that the sale of these assets would be premature and would lead to an improper declaration of their value.  Further, they contend that the proposed sale would violate the Receiver's duty to preserve the value of the assets pending final adjudication on the merits.  In addition, they assert that the Receiver is not authorized to sell the individual Defendant Duane Fielding's assets because he is not specifically covered by the

Preliminary Injunction Order (#130, issued Feb. 10, 2011).  In sum, the Fielding Defendants make the same objections to the Receiver's Sale Motion as the Johnson Defendants, and as a result, warrant the same conclusion.

In addition, the Court notes that the Fielding Defendants' purported ownership interest in these assets seems incredibly aspirational given the evidence set forth by the Receiver. Nevertheless, even if Mr. Fielding were to show a legitimate ownership interest in these assets, he could seek appropriate compensation after the FTC's claims are fully adjudicated.  The opposing parties have failed to show that the Receiver's proposed actions would violate the Receiver's duty to preserve assets, rather the Receiver has adequately shown the Court that liquidating these assets will limit expenses and avoid further deterioration or loss of value.  Therefore, the Court grants the Receiver's Sale Motion.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that the Receiver's Motion for Order: (1) Authorizing and Confirming Sale of Personal Property by Public Auction; (2) Authorizing and Confirming Sale and Redemption of Investment Interest; (3) Authorizing Receiver to List and Offer for Sale Houseboats, Aircraft, and Multiple Real Properties; and (4) Granting Relief From Local Rule 66-5 Pertaining to Notice to Creditors (#227) is GRANTED.

IT IS FURTHER ORDERED that:

A. The Receiver is authorized to sell the following personal property of the Receivership Defendants: (a) office furniture (such as desks, chairs, sofas, cabinets, tables, etc.), televisions, telephones, computers, office artwork and other similar personal property (collectively the "Tabernacle Office Equipment") from the I Works offices formerly located at 249 East Tabernacle Street, St. George, Utah known as the "Tabernacle Towers" currently being stored by Statewide Auction Co., located at 5099 Wheeler Way, Hurricane, Utah; (b) the following vehicles: 1957 Chevrolet Belair Convertible (VIN #VC57L 188500), 1972 Chevrolet Nova SS Clone (VIN

#1X27F2L160461, License #FGM 994 – Oregon), 1952 Ford O Matic (VIN #B2LB102645, License #JTL 488 UT), 1968 Oldsmobile (442 VIN #344778N1446554, License #785 NZP UT), 1972 Chevrolet Chevelle SS 454 (VIN #1D37W2L585777), Honda Pilot Dune Buggy (ATV License Yr. 2008 #08126055) (collectively, the "Vehicles") and a custom made snow plane (Engine No. 6008678) ("Snow Plane") by public auction pursuant to the following terms, conditions and procedures ("St. George Personal Property Sale Procedures"), and the sale and publication procedures of 28 U.S.C. § § 2001 and 2004 are hereby modified accordingly:

      1.     The Receiver is authorized to employ Statewide Auction Company of Salt Lake City, Utah ("Auctioneer") to sell the St. George Personal Property at public auction to be conducted at the business premises of the Auctioneer located at 5099 Wheeler Way, Hurricane, Utah, pursuant to the Statewide Auction Company Contract dated as of May 4, 2011 ("St. George Auction Contract") attached as Exhibit 1 to the Declaration of Kenton Johnson ("Johnson Declaration") filed in support of the Sale Motion, and is authorized to compensate the Auctioneer in accordance with the St. George Auction Contract by paying the Auctioneer an auction commission of 15% of the gross sales price paid by the purchasers at the public auction for the St. George Personal Property;

      2.     The Receiver is authorized to sell the St. George Personal Property individually, in lots or in bulk at the discretion of the Receiver and the Auctioneer, with such property to be sold "as is, where is, with all faults," and without representation or warranty of any kind or nature, express or implied, to the highest bidder at the sale for payment in cash, certified funds or check with the approval of the Auctioneer;

      3.     The Auctioneer shall provide notice of the auction of the St. George Personal Property by publishing a written notice of the date, time and place of the auction sale, the terms of the sale and a summary of the property to be sold at the auction sale at least one time not less than one week prior to the auction sale in the following newspapers: *Salt Lake Tribune*, the *Deseret News* and *The Spectrum* in St. George;

1       4.      The sales of the St. George Personal Property in accordance with the St.
2 George Personal Property Sale Procedures are hereby confirmed without further notice, hearing or
3 order, and the notice of the hearing on the Sale Motion and publication of notice of the sale as set
4 forth in such procedures is deemed sufficient pursuant to 28 U.S.C. §§ 2001 and 2004;
5       5.      To the extent that any of the Vehicles is registered to or deemed to be
6 owned by Jeremy Johnson, the Preliminary Injunction Order, including Section XV.C thereof, is
7 hereby modified to allow the Receiver to sell the Vehicles in accordance with this Order;
8   B.  The Receiver is authorized to sell the office furniture and equipment, such as office
9 cubicles, office chairs, telephone system with servers and telephone units, computer servers and
10 towers, keyboards, monitors, executive office furniture including desks, chairs and wood cabinets
11 (collectively, "Ephraim Office Equipment") found in the offices previously occupied by Zibby,
12 LLC ("Zibby"), an entity owned 50% by Jeremy Johnson and 50% by his wife, Charlo Johnson,
13 located at 11 West 700 South, Ephraim, Utah ("Ephraim Office") by public auction to be
14 conducted on the premises at 11 West 700 South, Ephraim, Utah pursuant to the following
15 proposed terms, conditions and procedures ("Ephraim Office Equipment Sale Procedures"), and
16 the sale and publication procedures of 28 U.S.C. §§ 2001 and 2004 are hereby modified
17 accordingly:
18      1.      The Receiver is authorized to employ Statewide Auction Company of Salt
19 Lake City, Utah ("Auctioneer") to sell the Ephraim Office Equipment at the Ephraim Office
20 pursuant to the Statewide Auction Company Contract (Ephraim) dated as of May 4, 2011
21 ("Ephraim Auction Contract") attached as Exhibit 2 to the Johnson Declaration filed in support of
22 the Sale Motion, and is authorized to compensate the Auctioneer in accordance with the Ephraim
23 Auction Contract by paying the Auctioneer an auction commission of 15% of the gross sales price
24 paid by the purchasers at the public auction for the Ephraim Office Equipment;
25 ///
26 ///

2. The Receiver is authorized to sell the Ephraim Office Equipment individually, in lots or in bulk in the discretion of the Receiver and the Auctioneer, with such property to be sold "as is, where is, with all faults," and without representation or warranty of any kind or nature, express or implied, to the highest bidder at the sale for payment in cash, certified funds or check with the approval of the Auctioneer;

3. The Auctioneer shall provide notice of the auction of the Ephraim Office Equipment by publishing a written notice of the date, time and place of the auction sale, the terms of the sale and a summary of the property to be sold at the auction sale at least one time not less than one week prior to the auction sale in the following newspapers: *Salt Lake Tribune,* the *Deseret News* and a local newspaper of general circulation in Ephraim, Utah;

4. The sales of the Ephraim Office Equipment in accordance with the Ephraim Office Equipment Sale Procedures are hereby confirmed without further notice, hearing or order, and the notice of the hearing on the Sale Motion and publication of notice of the sale as set forth in such procedures is deemed sufficient pursuant to 28 U.S.C. §§ 2001 and 2004;

C. The Receiver is authorized to liquidate and redeem the private limited liability membership interest held by Orange Cat Investments, LLC Global Wealth Long/Short Commodity Futures Fund, LLC ("Global Wealth LLC") managed by Marathon Investments, Inc. ("Marathon"), by making a written request to Marathon for redemption of such investment in accordance with the terms and provisions of the Amended and Restated Operating Agreement pertaining to Global Wealth LLC ("Operating Agreement"), and the sale and publication procedures of 28 U.S.C.§§ 2001 and 2004 are hereby modified accordingly to allow the Receiver to redeem and liquidate such investment in accordance with the Operating Agreement.

D. The Receiver is authorized to list for sale two Skipperliner houseboats consisting of a custom 3208 Marine model 1999 Skipperliner 75 foot houseboat named PEPS I and a 1994 Skipperliner 74 foot houseboat named Animal House (collectively, "Houseboats") owned by Orange Cat Investments LLC with Aramark Sports and Entertainment Services, Inc. d/b/a Lake

Powell Resorts and Marinas ("Marine Broker") at prices to be determined in the Receiver's discretion and judgment and to enter into a written exclusive listing agreement with the Marine Broker in connection therewith providing for ordinary and customary terms and conditions for the listing of similar watercraft including ordinary and customary sales commissions not to exceed 6% of the gross sales price for the Houseboats, and further providing that acceptance of offers and completion of any sales of the Houseboats is subject to entry of an order of this Court approving such sale after notice and an opportunity for hearing;

      E.      The Receiver is authorized to (1) engage one or more companies specializing in the sale of helicopters and fixed wing aircraft to list for sale at prices to be determined in the Receiver's discretion and judgment the following aircraft: (a) 1978 Cessna P210N, Tail No. N4827P, (b) 2008 Robinson R44 Raven II helicopter, Tail No. N41286 owned by Trigger, LLC, (c) 1968 Piper Navajo, Tail No. N300WA; (d) 2005 Robinson R44 Raven II helicopter, Tail No. N321WT, (e) 2009 Piper Malibu Mirage, Tail No. N32ED, and (f) a 1978 Beech C24R, Tail No. N20135 (collectively "Aircraft"), and (2) enter into written exclusive listing agreements with one or more companies specializing in the listing and sale of the particular type and model of the Aircraft ("Aircraft Brokers") providing for ordinary and customary terms and conditions for the listing of similar Aircraft including ordinary and customary sales commissions in a range of 6% to 8% of the gross sales price for each of the Aircraft with a minimum commission amount of $10,000, providing for ordinary and customary advertising expenses, and further providing that acceptance of offers and completion of any sales of the Aircraft is subject to entry of an order of this Court approving each such sale after notice and an opportunity for hearing;

      F.      The Receiver is authorized to (1) engage local, regional or international real estate brokers experienced in the sale of the types of real properties, including experience in residential and commercial real estate and sales of raw land in the local market ("Sales Agents"), (2) list for sale at prices to be determined in the Receiver's discretion and judgment the following residential and commercial real property assets of the Receivership Defendants: (a) 82 West 700 South, St.

1  George, Utah ("82 West Property"); (b) 575 East 30 North, Ephraim, Utah ("575 East Property"),

2  (c) 11 West 700 South, Ephraim, Utah ("11 West Property"); (d) 302 West Hilton Drive, St.

3  George, Utah ("Hilton Drive Property"); (e) 147 North 100 West, Mendon, Utah ("147 North

4  Property"); (f) 392 West 400 South, Manti, Utah ("392 West Property"); (g) 575 S. Main,

5  Richfield, Utah ("Richfield Property"); (h) 127 Hollister Avenue, Santa Monica, California

6  ("Hollister Property"); (i) No. 91 North Front Street, Belize City, Belize ("Belize Property") (j)

7  the five parcels of adjacent and/or related parcels of raw land identified as Parcel #4200-B-HV,

8  St. George, Utah, Parcel #4201-A-HV & Parcel #4201-B-HV, St. George, Utah and Parcel #4203-

9  HV & Parcel #4150-B-HV, St. George, Utah ("Washington County Land"); (k) Part Sec 25, T33S,

10  R16W, SLBM, Beryl, Utah ("Beryl Land"); and (l) 750 South Main, Highway 89, Ephraim, Utah

11  ("South Main Land"), and (3) enter into written exclusive listing agreements with such Sales

12  Agents providing for ordinary and customary terms and conditions for the listing of similar real

13  property assets including ordinary and customary sales commissions not to exceed 6% of the gross

14  sales price for each of the real properties, except for the Belize Property as to which the sales

15  commission should be in an amount not to exceed 10% of the gross sales proceeds, providing for

16  ordinary and customary advertising expenses, and further providing that acceptance of offers and

17  completion of any sales of the real properties is subject to entry of an order of this Court approving

18  each such sale after notice and an opportunity for hearing; and

19       G.    Notice of the Sale Motion is hereby deemed sufficient under Local Rule 66-5 based

20  on the service of a notice of the Sale Motion's filing and the Sale Motion itself on all parties and

21  service of a notice of the Sale Motion's filing on all known non-consumer creditors of the estate

22  concurrent with the filing of the Sale Motion with the Court.

23       Dated: August 25, 2011.

24

25  _____
    ROGER L. HUNT
    United States District Judge

26