UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| FEDERAL TRADE COMMISSION, | Case No. 2:10-cv-02203-MMD-GWF |
|---|---|
| Plaintiff, | ORDER |
| v. | (Def.'s Motion for Summary Judgment – dkt. no. 557) |
| JEREMY JOHNSON, et al., | |
| Defendants. | |

**I.   SUMMARY**

Before the Court is Defendant Elite Debit, Inc.'s ("Elite Debit") Motion for Summary Judgment. (Dkt. no. 557.) For the reasons discussed below, the Motion is denied.

**II.   BACKGROUND**

Plaintiff Federal Trade Commission ("the Commission") brought this suit on December 21, 2010, against Defendants Jeremy Johnson, Loyd Johnston, numerous other individuals, and numerous entities, including I Works, Inc. and Elite Debit, alleging that Defendants engaged in fraudulent business activities on the Internet that deceptively enrolled unwitting consumers into memberships for products or services, then charged their credit cards or debit funds without consumer authorization or knowledge. (*See generally* dkt. no. 42.) The Commission alleges numerous violations of Section 5(a) of the Federal Trade Commission Act ("the FTC Act"), 15 U.S.C. § 45(a) (prohibiting unfair or deceptive business activities) as well as violations of Section 907(a)

of the Electronic Fund Transfer Act ("the EFTA"), 15 U.S.C. § 1693e(a), and its corollary Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b) (governing the rights and liabilities of consumers engaged in electronic funds transfer activities). (*See id.* at 73-80.)

Finding that the Commission established a likelihood of success on the merits, the Court entered a preliminary injunction against Defendants and appointed a receiver ("the Receiver") to manage the approximately $300 million of disputed funds the Commission alleges belongs to consumers defrauded by Defendants. (*See* dkt. no. 130.) Since the injunction was issued on February 10, 2011, the Receiver has endeavored to preserve the receivership estate while the parties engaged in discovery on the merits of the claims brought by the Commission.

Elite Debit is the first of the Defendants to bring a summary judgment motion, which it filed on May 9, 2012. (*See* dkt. no. 557.) At the time Elite Debit brought the Motion, the parties were under a stipulated partial discovery stay signed by the Court on July 14, 2011, (*see* dkt. no. 263) and extended on January 6, 2012 (*see* dkt. no. 434). Although the stay did not apply to Fed. R. Civ. P. 45 document discovery on the merits, depositions, among other discovery devices, remained subject to the stay. At the time Elite Debit brought this Motion, no depositions could be taken, nor could any requests for admission or interrogatories be propounded. (*See id.*)

**III.   LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit

under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

///

///

**IV.     DISCUSSION**

Elite Debit brings its Motion arguing that the Commission inappropriately seeks to find Elite Debit liable for the wrongdoings of others, and that the EFTA does not govern the transactions conducted by Elite Debit. The Commission disagrees, asserting that Elite Debit's liability is premised on its actions as constitutive of a common enterprise. It also argues that Elite Debit was engaged in services that provided electronic funds transfers subject to regulation by the EFTA. In the alternative, the Commission seeks denial of Elite Debit's Motion as premature in light of incomplete discovery. The Court addresses each argument in turn below.

**A.     Common Enterprise Liability**

Elite Debit seeks summary judgment arguing that it cannot be held liable under any claims brought by the Commission because it did not sell any products, did not make any misrepresentations, and engaged in no unfair billing practices. Elite Debit also argues that the Commission seeks liability against it for the wrongs of others. In support of this argument, Elite Debit provides the Court with the following summary of the nature of its activities.

According to Elite Debit, it was established to process checks consumers wanted issued for online transactions with various companies. Participating merchants used a protocol to allow customers to input relevant personal and banking information in online fields which would then be relayed to Elite Debit's program. Elite Debit's program would convert the information into an electronic check that it would present to a bank. The check funds would be deposited into the account of the merchant, and Elite Debit would debit its processing fee from the merchants' accounts per an agreement signed with the merchant. Elite Debit argues that because it was not involved in the sale of any products and services offered by its clients, it never engaged in any acts of misrepresentation, failure to disclose, or unfair billing practices. The Commission responds by arguing that its basis for liability against the entity defendants is its allegation that they are common enterprises, i.e., that "they exhibit either vertical or horizontal commonality qualities that

may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43 (9th Cir. 2010) (noting that evidence of pooled resources, management by the same individuals, and some level of participation in the challenged business venture sufficed to demonstrate a common enterprise between entities).

In light of the evidence presented by the Commission, the Court concludes that genuine issues of material fact remain as to the existence of a common enterprise between Elite Debit, Jeremy Johnson, and the other I Works-related entities to engage in fraudulent activities outlawed by the FTA Act and the EFTA. "To determine whether a common enterprise exists, the Court considers factors such as: common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of companies; unified advertising; and evidence that reveals that no real distinction exists between the corporate defendants." *FTC. v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1216 (D. Nev. 2011) (quoting *F.T.C. v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1182 (N.D. Ga. 2008)). "[C]orporations act[ing] as a common enterprise . . . may be held liable for the deceptive acts and practices of the other." *Grant Connect, LLC*, 827 F. Supp. 2d at 1216 (D. Nev. 2011) (quoting *id.*). The following list of material facts identified by the Commission may reasonably support a jury finding of a common enterprise:

1. Jeremy Johnson owns and is the lone officer of Elite Debit and numerous other corporate defendants (dkt. no. 224 at ¶ 38);
2. I Works employees used funds from I Works to open a depository account in the name of Elite Debit (dkt. no. 224 at ¶ 40);
3. Elite Debit's bank statements were sent to the location of I Works' headquarters (dkt. no. 224 at ¶ 40);
4. Elite Debit's address, as listed in a letter to a bank, is the same as the location of I Works' headquarters (*see* dkt. no. 557-1);

5. Loyd Johnston was an account manager for both I Works and Elite Debit (dkt. no. 152 at ¶ 292; dkt. no. 557 at 12);

6. Elite Debit's clients included I Works (dkt. no. 557 at 4).

These facts alone create genuine issues of material fact as to whether Elite Debit was involved in a common enterprise with Defendants I Works, Jeremy Johnson, and Loyd Johnston. *See Network Servs. Depot, Inc.*, 617 F.3d at 1143 (analyzing similar facts); *Grant Connect, LLC*, 827 F. Supp. 2d at 1216-17 (same). Elite Debit's citations to Nevada law regarding corporate agency are irrelevant to a finding of a common enterprise between the Defendants and Elite Debit.

### B. EFTA Liability

Elite Debit also seeks judgment on the Commission's EFTA claims, arguing that its check payment business is not subject to the EFTA's rules concerning electronic transfers.

The EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). Liability was thus premised on a finding that there had been an "electronic fund transfer." Under the EFTA, "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15. U.S.C. § 1693e(a). The term "electronic fund transfer" is defined by the EFTA as "any transfer of funds, *other than a transaction originated by check, draft, or similar paper instrument*, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7) (emphasis added). Thus, in order to qualify as an electronic fund transfer, the transaction (1) must be initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape, and (2) must "order, instruct or authorize a financial institution to debit or credit an account." *See Wachter v. Denver Nat. Bank*, 751 F. Supp. 906, 908 (D. Col. 1990) (quoting *id.*). Since Elite Debit

dealt only in checks and credit cards, it argues, the Commission's EFTA claims must be rejected.

As above, Elite Debit's argument fails. Elite Debit's description of its services ─ taking Internet payment instructions, converting them into an electronic template, and creating an imaged check ─ describes a service "initiated through an electronic terminal . . . or computer" rather than one "originated by check, draft, *or similar paper instrument*." 15 U.S.C. § 1693a(7) (emphasis added). Since consumer interaction with Elite Debit's payment protocol begins at an electronic terminal or computer, and not through a paper check or similar, it falls within the statutory definition provided in the EFTA. Further, Elite Debit's protocol "authorizes a financial institution to debit" the customer's account, satisfying the second requirement of the EFTA. Indeed, the apparent lack of personal, face-to-face contact between Elite Debit and the customer suggests that the EFTA regulates the transaction, for it is precisely the automated protocol that Elite Debit advertises as its service. *See Curde v. Tri-City Bank & Trust Co.*, 826 S.W.2d 911, 915 (Tenn. 1992) (describing the lynchpin of an electronic fund transfer as the lack of face-to-face personal contact).

Although Elite Debit makes much of the court's discussion in *Spain v. Union Trust*, 674 F. Supp. 1496, 1498-1500 (D. Conn. 1987) (noting that an electronic fund transfer "requires no personal contact, no personal decision making" while non-electronic transfers require "a personal determination as to the propriety of the action to be taken and a personal effort to execute such action"), the ultimate determinate of Elite Debit's liability is a plain reading of the statute, not the *Spain* court's application of that statute to a wholly distinguishable type of transfer. Persuasive is a notice issued by the Retail Payments Office of the Federal Reserve to financial institutions that it views transactions like the ones authorized by Elite Debit's protocol as "electronically originated consumer payments [that] fall under the requirements of the Electronic Funds Transfer Act and Regulation E, not under check law." (*See* dkt. no. 585-1 at 2.) Consequently, Elite Debit
///

has not demonstrated that it is entitled to summary judgment on the Commission's EFTA claims.

### C.     Discovery

In addition to various substantive objections to Elite Debit's Motion, the Commission argues that granting the Motion is premature in light of discovery yet to be concluded by the parties. Since enough facts already in the record support denying the Motion, the Court does not address the Commission's Rule 56(d) arguments.

## V.    CONCLUSION

In light of the foregoing, the Commission has provided the Court with enough evidence to raise genuine issues of material fact as to Elite Debit's liability on the Commission's FTC Act and EFTA claims. In addition, the stay of discovery that precluded complete discovery renders granting this Motion premature.

IT IS THEREFORE ORDERED that Defendant Elite Debit's Motion for Summary Judgment (dkt. no. 557) is DENIED.

DATED THIS 1st day of March 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE