UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>              Plaintiff,<br><br>    v.<br><br>JEREMY JOHNSON, et al.,<br><br>              Defendants. | Case No. 2:10-cv-02203-MMD-GWF<br><br>ORDER |

## I.    SUMMARY

Before the Court is counsel for Relief Defendants' Responses to the Court's Order to Show Cause (dkt. nos. 856, 918, and 1065). The Court heard oral arguments on the Order to Show Cause on June 3, 2013.

## II.    BACKGROUND

### A.    The Civil Case

The Federal Trade Commission ("the FTC" or "the Commission") brought this suit on December 21, 2010, against Defendants Jeremy Johnson, Loyd Johnston, numerous other individuals, and numerous entities, including I Works, Inc. ("I Works") and Elite Debit, Inc., alleging that Defendants engaged in fraudulent business activities on the Internet that deceptively enrolled unwitting consumers into memberships for products or services, then charged their credit cards or debit funds without consumer authorization or knowledge. (*See* Compl., dkt. no. 42.) The Commission alleges numerous violations of § 5(a) of the Federal Trade Commission Act ("the FTC Act"), 15 U.S.C. § 45(a)

(prohibiting unfair or deceptive business activities) as well as violations of § 907(a) of the Electronic Fund Transfer Act ("the EFTA"), 15 U.S.C. § 1693e(a), and its corollary § 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b) (governing the rights and liabilities of consumers engaged in electronic funds transfer activities). (*See id.* at 73–80.)

Finding that the Commission established a likelihood of success on the merits, the Court entered a preliminary injunction against Defendants and appointed a receiver ("the Receiver") to manage the approximately $300 million of disputed funds the Commission alleges belongs to consumers defrauded by Defendants. (*See* Preliminary Injunction, dkt. no. 130.) Since the injunction was issued on February 10, 2011, the Receiver has endeavored to preserve the receivership estate while the parties engage in discovery on the merits of the claims brought by the Commission. In response to the discovery of property belonging to the receivership estate held by various non-defendants, the Court on March 25, 2013, clarified the scope of the preliminary injunction by finding these third party-owned assets as constituting receivership assets and setting forth various procedures for disputing the characterization of assets as belonging to the estate. (*See* dkt. no. 897.)

### B.   Addition of Relief Defendants

The Commission filed an amended complaint naming additional individuals and entities as relief defendants (hereinafter "Relief Defendants"). (*See* First Amended Complaint ("FAC"), dkt. no. 830.) Karra Porter of Christensen & Jensen, P.C. ("Christensen" or "the Firm") represents Relief Defendants as well as numerous corporate defendants, including I Works.[1] According to representations made by Ms.

---

[1] These Defendants, collectively referred to as the "I Works Defendants, " include the following: Blue Streak Processing, Inc., Business First, Inc., Cloud Nine Marketing, Inc., Cold Bay Media, Inc. CPA Upsell, Inc., Diamond J Media, Inc., EBusiness Success, Inc., eCom Success, Inc., Elite Debit, Inc. Funding Success, Inc., Hooper Processing, Inc. I Works, Inc., Internet Economy, Inc. Internet Fitness, Inc., Market Funding Solutions, Inc., Money Harvest, Inc., Monroe Processing, Inc. Net Commerce, Inc., Premier Performance, Inc., Pro Internet Services, Inc., Revive Marketing, Inc. Success Marketing, Inc., Summit Processing, Inc., Tran Voyage, Inc., TranFirst, Inc., and Unlimited Processing, Inc.

Porter during the Court's June 2, 2013, hearing, Relief Defendants contacted the Firm first to represent them, which in turn led to the Firm's representation of the I Works Defendants due to the significant overlap in legal claims against them.[2]

After agreeing to represent Relief Defendants, Christensen accepted as payment a quit claim deed to Jeremy Johnson's residence, located at 529 S. Woodsview Circle, St. George, Utah ("the Property"), in exchange for $2.5 million of legal services to Relief Defendants. (*See* dkt. no. 855-2.) This residence was subject to the Preliminary Injunction issued by the Court, and constitutes an asset of the Receivership. (*See* Preliminary Injunction at 24 and 28.) Upon learning of the transfer, the Receiver contacted Ms. Porter and her colleagues on February 13, 2013, at the Firm for more information regarding the transfer. (*See* dkt. no. 855-9.) After the Firm disputed the impropriety of the fee arrangement, the Receiver brought an Emergency Application for Issuance of Order to Show Cause, which the Court granted. (*See* dkt. nos. 855 and 858.) As noted, a hearing on the Order to Show Cause was held on June 3, 2013, and is the subject of this Order. (*See* dkt. no. 1063.)

### III. LEGAL STANDARD

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). This case involves sanctions under the third source of authority.

---

[2]Ms. Porter sought admission *pro hac vice* to represent Cloud Nine Marketing, Inc., Elite Debit, Inc., I Works, Internet Economy, Inc., Marketing Fund Solutions, Inc., and Success Marketing, Inc. on February 12, 2013. (*See* dkt. no. 812.) Her colleagues from Christensen & Jensen also did so soon thereafter. On February 21, 2013, Ms. Porter and her colleagues entered an appearance on behalf of all I Works Defendants. (*See* dkt. no. 823.) After the Amended Complaint was filed, Ms. Porter appeared on behalf of Relief Defendants by filing their Motion to Dismiss. (*See* dkt. no. 886.)

Federal courts have the inherent power to punish conduct which abuses the judicial process, including accessing attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NSDCO, Inc.,* 501 U.S. 32, 45-46 (1991) (citation omitted). When imposing sanctions under its inherent authority, a court must make an explicit finding of bad faith or willful misconduct. *In re Dyer,* 322 F.3d 1178, 1196 (9th Cir. 2003). Negligence cannot sustain a sanction under a court's inherent authority. *Zambrano v. City of Tustin,* 885 F.2d 1473, 1485 (9th Cir. 1989). In addition, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44.

When a district court decides to impose sanctions or discipline, it must clearly delineate under which authority it acts to ensure that the attendant requirements are met. *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999) (*citing Keegan Management Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) ("For a sanction to be validly imposed, the conduct must be sanctionable under the authority relied on.") (internal quotation marks and citation omitted)). "The imposition of sanctions requires a statement of reasons for the district court's action, including the need for the particular sanctions imposed." *Couveau v. Am. Airlines, Inc.,* 218 F.3d 1078, 1081 (9th Cir. 2000) ("The imposition of sanctions requires a statement of reasons for the district court's action, including the need for the particular sanctions imposed.") (*citing G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 830 (10th Cir. 1990) ("If the district court ultimately imposes sanctions, detailed findings are necessary to identify the objectionable conduct and provide for meaningful appellate review.")).

**IV.     DISCUSSION**

Whether the Court should exercise its inherent authority to impose sanctions is a close call. Christensen in its investigation appears to have worked backward – it presumed that acceptance of the quitclaim deed as partial payment for legal fees did not violate the Preliminary Injunction, and then tried to justify their decision after the Court

///

1  issued the Order to Show Cause.  However, the Court finds that Christensen's conduct, while improper, does not rise to the level of bad faith to warrant sanctioning.

When the Firm discussed representation of Relief Defendants, and ultimately agreed on the representation, an obligation to review the history of the case arose. Although this litigation has a long and complex history, agreeing to representation of various Defendants and accepting as payment the property identified in the Preliminary Injunction Order and occupied by the main individual defendant obligated the Firm to familiarize itself with the parties, the nature of the allegations made against Defendants, and the history of filings made to this Court.  Chief among those filings is the Preliminary Injunction Order, which made clear that the subject property was an asset of the Receivership. (*See* Preliminary Injunction at 24 and 28.)  Further, a search of the docket would have revealed previous filings that demonstrate its status as Receivership property.  In particular, the Receiver opposed a motion filed by SunFirst Bank seeking to foreclose on the Property pursuant to a senior lien, prompting SunFirst to stipulate to withdraw the motion. (*See* dkt. nos. 247, 272, and 277.) The Receiver opposed the motion and specifically explained that the Residence is receivership property. (*See* dkt. no. 272 at 4-5.)

Ms. Porter represents to the Court that the Receiver's Motion to Clarify cast some doubt as to the status of the Property, since the Motion itself sought to clarify the scope of the Preliminary Injunction as to disputed assets. This Motion, however, attempted to affirm the Injunction's applicability to assets that various Defendants and non-parties asserted interest in, based on express language included within it. The filing of the Motion did not conclusively demonstrate that the Property was unencumbered. At the very least, it raised doubts as to its status.  Further, Relief Defendants retained the Firm to help defend them against allegations that they hold ill-gotten gains gathered by Defendants in the course of a fraudulent enterprise. That the same Relief Defendants sought to pay the Firm with the transfer of a home occupied by one of the Relief Defendants and the main defendant should have raised a red flag to counsel aware of

the allegations against its clients. Doubts should have surfaced. And where there was doubt, particularly after the Receiver made a demand upon the property in its February 13, 2013, letter, the Firm should have consulted with the Court to resolve that doubt. Instead, it apparently sought to justify *a fortiori* its decision to accept this form of payment by selectively citing to the record. The Court finds this conduct to have been improper, but not sufficiently reckless so as to constitute the bad faith required to justify sanctions.

**V.     CONCLUSION**

Based on the foregoing, the Court denies the Receiver's request for reimbursement of attorneys' fees and costs.

DATED THIS 16th day of July 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE