UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:10-cv-02203-MMD-GWF |
| Plaintiff, | ORDER |
| v. | |
| JEREMY JOHNSON, et al., | |
| Defendants. | |

**I.    SUMMARY**

Before the Court are the following ripe motions brought by various parties in this case:

1. The Vowell Entities' Emergency Motion to Intervene (dkt. no. 967);
2. The Federal Trade Commission's ("the FTC" or "the Commission") Motion to Strike (dkt. no. 984);
3. The Vowell Entities' Emergency Motion for Clarification of Order (dkt. no. 998);
4. The Fielding Defendants' Motion to Extend Time (dkt. no. 1017);
5. The Vowell Entities' Motion for Hearing (dkt. no. 1018);
6. The I Works Defendants' Motion to Introduce Entire Document (dkt. no. 1028);
7. The United States' Motion to Strike (dkt. no. 1054).

The Court addresses each below.

## II. BACKGROUND

The FTC brought this suit on December 21, 2010, against Defendants Jeremy Johnson, Loyd Johnston, numerous other individuals, and numerous entities, including I Works, Inc. and Elite Debit, Inc., alleging that Defendants engaged in fraudulent business activities on the Internet that deceptively enrolled unwitting consumers into memberships for products or services, then charged their credit cards or debit funds without consumer authorization or knowledge. (*See* Compl, dkt. no. 42.) The Commission alleges numerous violations of Section 5(a) of the Federal Trade Commission Act ("the FTC Act"), 15 U.S.C. § 45(a) (prohibiting unfair or deceptive business activities) as well as violations of Section 907(a) of the Electronic Fund Transfer Act ("the EFTA"), 15 U.S.C. § 1693e(a), and its corollary Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b) (governing the rights and liabilities of consumers engaged in electronic funds transfer activities). (*See id.* at 73–80.)

Finding that the Commission established a likelihood of success on the merits, the Court entered a preliminary injunction against Defendants and appointed a receiver ("the Receiver") to manage the approximately $300 million of disputed funds the Commission alleges belongs to consumers defrauded by Defendants. (*See* dkt. no. 130.) Since the injunction was issued on February 10, 2011, the Receiver has endeavored to preserve the Receivership estate while the parties engage in discovery on the merits of the claims brought by the Commission. In response to the discovery of property belonging to the Receivership estate held by various non-defendants, the Court on March 25, 2013 clarified the scope of the preliminary injunction by finding these third party-owned assets as constituting receivership assets and setting forth various procedures for disputing the characterization of assets as belonging to the estate. (*See* dkt. no. 900.)

The Commission also since filed an amended complaint naming additional individuals and entities as relief defendants. (*See* First Amended Complaint ("FAC"), dkt. no. 830.)

///

## III. DISCUSSION

### A. The Vowell Entities' Emergency Motion to Intervene (dkt. no. 967)

The Vowell Entities[1] seek a judicial order to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2).[2] Because the Court addresses the Motion on the papers, the Vowell Entities' Request for Hearing on this Motion is denied. (*See* dkt. no. 1018.)

#### 1. Legal Standard

Rule 24(a)(2) permits anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." When evaluating motions to intervene as a matter of right, courts construe Rule 24 liberally in favor of potential intervenors, focusing on practical considerations rather than technical distinctions. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). A party seeking to intervene by right must meet four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be

---

[1] The Court uses the term "the Vowell Entities" to include the following individuals and entities: Todd L. Vowell; Sheree Vowell; Alpha Yankee, LLC; C2 Holdings, LLC; Capital Energy Corporation; Cerberus Management, LLC; Choker Block, LLC; Commerce Financial, LLC; Chateau Circle, LLC; Digital Currency, LLC; Dreamland Capital, LLC; ePayment Solutions, LLC; Executive Service Center, LLC; Fishhook Partners, LLC; Flatline Investments, LP; Flying High Enterprises, LLC; IC Development, LLC; Interstate Lending, LLC; KATTS, LLC; Kingfish Management, LLC; Kombi Capital, LP; Liahona Holdings, LP; Market Mastery Trading, LLC; Mastery Merchant, LLC; Money Master for Life; Omaha Eight, LLC; Online Weight Loss; Paradise Ranch Development, LLC; Paydirt Capital, Inc.; Paydirt Management, Inc.; Paydirt Properties, LLC; Paydirt, LP; Powder Monkeys, LLC; Scud Runner, LLC; Silvernix Holdings, LLC; Spindletop Investments, LLC; SRLA Association, LLC; SRLA, LLC; Summerset Ranch, LLC; Taggart Management, LLC; TJJ Properties, LLC; TLV Enterprises, Inc.; Treadstone Partners, LP; Triple Play Group, LLC; Triple Seven, LLC/LP; Triple Seven, Inc.; T. Vowell Sole Proprietorship Capital Holding; and Woodsview Holdings, LLC. These are the third parties that the Motion to Clarify primarily concerned.

[2] The Court does not address permissive intervention under Rule 24(b)(1)(B), which the Vowell Entities do not argue for.

situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). An applicant for intervention bears the burden of showing that all four requirements are met. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

### 2. Analysis

The Court denies the Vowell Entities' request to intervene for two principle reasons. First, the request to intervene is untimely. *See Orange Cnty. v. Air Cal.*, 799 F.2d 535, 537–38 (9th Cir. 1986) (discussing three factors considered in determining timeliness of intervention request). The Vowell Entities request intervention over fourteen (14) months after the Receiver's second report implicated them in transactions involving Receivership assets, and nearly twelve (12) months after the Receiver moved to clarify the preliminary injunction order. Only after the Court issued its decision to grant the Receiver's Motion to Clarify ─ over thirty (30) days after, to be exact ─ did the Vowell Entities formally seek intervention. In the meantime, discovery on all substantive issues has nearly completed, and the Court has endeavored to maintain an efficient schedule for resolution of this case on the merits.

Second, and more importantly, the Vowell Entities are not prejudiced by their lack of party status. On the contrary, they have appeared at numerous instances to defend their interests in this litigation and to oppose the Receiver's request to include their assets within the Receivership estate. Party status would provide them no additional rights to vindicate their legal interests in any disputed property. This includes their right to appeal this Court's Order granting the Receiver's Motion.[3]

---

[3]After the Ninth Circuit ordered the Vowell Entities to show cause as to why their appeal should not be dismissed for lack of standing, both the Vowell Entities and the FTC argued that standing exists for a non-party to appeal a court order where they participated in the proceeding below and have a legitimate interest in the order appealed. Satisfied that standing to proceed exists, the Ninth Circuit discharged its order to show cause, and the parties are currently briefing their appeal accordingly.

4

The Vowell Entities make much of their right to engage in discovery, but fail to provide any specific or compelling reason why they require such discovery to protect their interests. This is not an ordinary case where an intervenor seeks recovery from various parties, or is defending against any litigant's claims. Rather, the Vowell Entities here merely seek to challenge the characterization of their own assets as part of the Receivership. No discovery is required precisely because the only factual questions concern assets within their exclusive control.

In sum, because the Vowell Entities fail to meet the first and third requirements of the intervention test, their Motion is denied.

### B.   The FTC's Motion to Strike Certain Affirmative Defense Raised by the I Works and Fielding Defendants (dkt. no. 984)

The FTC moves to strike certain affirmative defenses raised by the I Works Defendants[4] and the Fielding Defendants[5] in their Answers to the FAC. (*See* dkt. nos. 921 and 928.) Both sets of defendants timely filed responses to the FTC's Motion.[6]

#### 1.   Legal Standard

"The court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike under Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues." *SidneyVinstein v. A. H. Robins*

---

[4] For the purposes of this Motion, the "I Works Defendants" include the following: Blue Streak Processing, Inc., Business First, Inc., Cloud Nine Marketing, Inc., Cold Bay Media, Inc. CPA Upsell, Inc., Diamond J Media, Inc., EBusiness Success, Inc., eCom Success, Inc., Elite Debit, Inc. Funding Success, Inc., Hooper Processing, Inc. I Works, Inc., Internet Economy, Inc. Internet Fitness, Inc., Market Funding Solutions, Inc., Money Harvest, Inc., Monroe Processing, Inc. Net Commerce, Inc., Premier Performance, Inc., Pro Internet Services, Inc., Revive Marketing, Inc. Success Marketing, Inc., Summit Processing, Inc., Tran Voyage, Inc., TranFirst, Inc., and Unlimited Processing, Inc.

[5] The Fielding Defendants are Duane Fielding, Anthon Holdings Corp., and Network Agenda, LLC.

[6] As the Court granted the Fielding Defendants' Amended Motion to Extend Time to respond to the FTC's Motion to Strike, (dkt. no. 1061), their first Motion to Extend Time (dkt. no. 1017) is denied as moot.

*Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Although the Ninth Circuit has not ruled on the proper use of a Rule 12(f) motion to strike an affirmative defense, three other circuits have ruled that the motion is disfavored and should only be granted if the asserted defense is clearly insufficient as a matter of law under any set of facts the defendant might allege." *McArdle v. AT & T Mobility LLC*, 657 F. Supp. 2d 1140, 1149-50 (N.D. Cal. 2009), *rev'd on other grounds in McArdle v. AT & T Mobility, LLC*, F. App'x 515 (9th Cir. 2012). "A court must view the pleading under attack in the light most favorable to the pleader" and should not weigh the sufficiency of evidence in evaluating a motion to strike. *Cardinale v. La Petite Acad., Inc.*, 207 F. Supp. 2d 1158, 1162 (D. Nev. 2002). Because courts strike affirmative defenses only when clearly warranted by the facts, motions to strike should be denied if "substantial questions of fact appear at the pleading stage." *Shenandoah Life Ins. Co. v. Hawes*, 37 F.R.D. 526, 530 (E.D.N.C. 1965); *see also SEC v. Gulf & W. Indus., Inc.*, 502 F. Supp. 343, 345 (D.D.C. 1980). Whether to strike affirmative defenses is within the Court's discretion. *Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990).

### 2. Discussion

The FTC challenges the following affirmative defenses as not supported by law: failure to state a claim; reliance on the FTC's written statements and directions; statute of limitations; lack of justifiable reliance; denials of liability; and reservation of future affirmative defenses.

#### a. Failure to State a Claim

Failure to state a claim is not an affirmative defense. *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010); *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F.Supp.2d 1283, 1291 (S.D. Fla. 2007) ("Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case. Therefore, it is not properly asserted as an affirmative defense."). A plaintiff fails to state a claim when she cannot properly establish the required essential elements of a claim. If the plaintiff

does, a defendant may raise an affirmative defense that serves as an excuse or justification notwithstanding the existence of the claim's required elements. *See Barnes*, 718 F. Supp. 2d at 1173 (*quoting Roberge v. Hannah Marine Corp.*, No. 96-1691, 124 F.3d 199, 1997 WL 468330, at *3 (6th Cir. Aug. 13, 1997)). Accordingly, I Works Defendants' first and second affirmative defenses (dkt. no. 928 at 79) and Fielding Defendants' first and thirteenth affirmative defenses (dkt. no. 921 at 3, 5) are stricken.

### b. Reliance on FTC's direction or written statements

I Works Defendants' third affirmative defense is that their reliance on advice of counsel, other consultants, and the FTC's own direction or written statements precludes their liability because intent and the likelihood of subsequent violations are elements of some of the FTC's claims. At this stage in the litigation, and for the purposes of conserving judicial resources, the Court declines to entertain the FTC's arguments to strike this defense. As the arguments here stray too closely to the merits of the FTC's claims against I Works Defendants, the propriety of these defenses, if they are raised, can be evaluated after future dispositive briefings.

### c. Statute of limitations

For the same reasons discussed above, the Court declines to entertain the FTC's request to strike I Works Defendants' and Fielding Defendants' statute of limitations defenses. These arguments require the Court to assess the merits of the FTC's claims against these defendants, and are therefore best reserved for decision when addressing the parties' dispositive motions.

### d. Lack of justifiable reliance

I Works Defendants assert as an affirmative defense consumers' lack of justifiable reliance on any alleged misrepresentations or wrongdoing by Defendants, which they argue preclude their liability. Again, the Court declines to review at this stage the parties' arguments on this matter, as they veer too closely to the merits of the FTC's claims and their presence as affirmative defenses is not prejudicial to the parties or to the Court.

///

### e. Denials of liability

The Fielding Defendants raise as affirmative defenses blanket denials of the FTC's allegations in their fourth, eighth, and eleventh affirmative defenses. (*See* dkt. no. 921 at 3-4.) A denial of a plaintiff's allegations is an improper affirmative defense for the reasons stated above. *See Barnes*, 718 F. Supp. 2d at 1174 ("To the extent that the [defendant] restates negative defenses that exist in other parts of the complaint, those defenses are redundant pursuant to Rule 12(f) and should be struck so as to simplify and streamline the litigation."); *EEOC v. Interstate Hotels, L.L.C.*, No. C 04-04092 WHA, 2005 WL 885604, at *4 (N.D. Cal. Apr. 14, 2005) ("It is plaintiff's burden to prove that he has suffered damages. If plaintiff fails to do so, plaintiff will lose the claim and an affirmative defense to that effect is unnecessary."). Accordingly, these three affirmative defenses are stricken, as they are blanket denials of the FTC's allegations.

### f. Reservation of future affirmative defenses

Lastly, the FTC seeks to strike the Fielding Defendants' twelfth affirmative defense which purports to reserve future defenses that discovery may reveal are appropriate. (*See* dkt. no. 921 at 4–5.) This is an improper affirmative defense. *EEOC v. Timeless Investments, Inc.*, 734 F. Supp. 2d 1035, 1055 (E.D. Cal. 2010) ("A 'reservation of affirmative defenses' is not an affirmative defense."); *Solis v. Zenith Capital, LLC*, C 08-4854 PJH, 2009 WL 1324051, at *7 (N.D. Cal. May 8, 2009) ("[I]f at some later date defendants seek to add affirmative defenses, they must comply with Rule 15 of the Federal Rules of Civil Procedure. Defendants cannot avoid the requirements of Rule 15 simply by 'reserving the right to amend or supplement their affirmative defenses.'"). Accordingly, it is stricken.

In sum, I Works Defendants' first and second affirmative defenses are stricken, while the Fielding Defendants' first, fourth, eighth, eleventh, twelfth, and thirteenth affirmative defenses are stricken.

///

///

## C. The Vowell Entities' Emergency Motion for Clarification of Order (dkt. no. 998)

The Vowell Entities file this Motion seeking "clarification" of the Court's Order granting the Receiver's Motion to Clarify. (*See* dkt. no. 900 ("Clarifying Order").) However, this Motion was filed shortly after appealing the same Order, thereby forcing this Court into the morass of determining whether it retains jurisdiction to clarify or alter its previous order now on appeal.

### 1. Reconsideration pending appeal

"The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Nevertheless, "[t]he district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo." *Natural Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). Rule 62(c) codifies this exception to this principle by allowing a district court to "suspend, modify, restore, or grant an injunction in terms for bond or other terms that secure the opposing party's rights." "This Rule grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it 'does not restore jurisdiction to the district court to adjudicate anew the merits of the case.'" *Id.* (*quoting McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982)). Accordingly, "any action taken pursuant to Rule 62(c) may not materially alter the status of the case on appeal." *Id.* (internal quotations omitted).

In their Motion, the Vowell Entities first seek clarification as to whether the Court's Order relied on a theory of the Vowells as custodians or the Vowells as alter egos of the Receivership defendants. This request is essentially one to reconsider the Court's order, as the Vowell Entities challenge the basis for the Court's decision to characterize their assets as part of the Receivership estate. Given that the Court need not provide additional explanation for the basis of its prior ruling in order to "preserve the status quo

during the pendency of an appeal," *Natural Res. Def. Council, Inc.*, 242 F.3d at 1166, the Court is without authority to reconsider its prior Order while the matter is pending on appeal.[7] *Cf. United States v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990) (stating that 18 U.S.C. § 3731, which sets the time for appeal, is a jurisdictional limitation which divests the trial court of authority to reconsider a judgment). Nevertheless, the Vowell Entities argue in their Reply that their request for clarification is a proper Rule 62(c) motion. The Court disagrees. The Order granting the Receiver's Motion to Clarify was itself designed to preserve the enforcement of the preliminary injunction and its provisions, the conditions of which constitute the "status quo" of this case. The Vowell Entities' subsequent request to reconsider that Order is meant not to preserve the status quo, but to upend it. In any event, the Vowell Entities have not demonstrated that a stay of the Order pending appeal is appropriate. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

The Vowell Entities' second request is to provide additional safeguards and protections to them in order to protect their interests in assets declared as belonging to the Receivership estate. Just as above, this is a request to modify the Court's Order not to ensure adequate compliance of the preliminary injunction pending appeal, but to challenge the mechanism laid out for the injunction's application to the Vowell Entities. The Court lacks the jurisdiction to materially alter its Order for any reason other than to ensure continued compliance with the terms of the preliminary injunction.

### 2. Unsecured debt financing

The Vowell Entities also seek clarification as to whether the preliminary injunction precludes them from utilizing funds generated by unsecured debt financing. In response to an emergency request from the Receiver, the Court ordered the parties to file additional briefs on the issue. (*See* dkt. no. 1080.)

---

[7]The Vowell Entities' Motion is improper as a Rule 59(e) request to alert or amend a judgment, since it was filed more than 28 days after the Court's Order granting the Receiver's Motion to Clarify. *See Tinsley v. Borg*, 895 F.2d 520, 523 (9th Cir. 1990) (Rule 59(e) motion effectively revives the district court's jurisdiction, and a new notice of appeal must be filed after disposition of the 59(e) motion).

The Court's Clarifying Order, *inter alia*, clarified that the Vowell Entities' assets constitute property of the Receivership estate, and that, with the exception of Todd Vowell, Sheree Vowell, and Jason Vowell, the Vowell Entities are Receivership Defendants under the preliminary injunction. (*See* dkt. no. 900 at ¶ 3.) These assets were held to constitute Receivership assets because the Court found, based on extensive evidence presented by the Receiver, that they originate in assets belonging to Jeremy Johnson and the other named corporate defendants in this litigation and are being held for the benefit of Defendants in this litigation. Accordingly, the provision of the preliminary injunction that prevents encumbering, pledging, and disbursing of assets held for the benefit of Defendants applies equally to the Vowell Entities' assets.[8] In addition, the preliminary injunction provides the Receiver exclusive custody, control, and possession of all assets of the Corporate Defendants and Jeremy Johnson, which in turn applies equally to the assets of the Vowell Entities by operation of the Clarifying Order. (Dkt. no. 900 at 23–24 (Part XV.B–C).)

The result of these provisions is clear: the payment of attorneys' fees from unsecured credit card debt from Todd Vowell's personal credit card violates the preliminary injunction if it pledges as the source of its repayment assets that belong to the Receivership estate. In essence, such debt would "encumber" funds that are Receivership assets, which is strictly prohibited by the preliminary injunction. Of course, if the source of any future repayment is, for example, later-acquired funds obtained after the issuance of the preliminary injunction and which are earned wholly outside of any

---

[8] The preliminary injunction provides that "Jeremy Johnson, the Corporate Defendants, and *all other Persons* who receive notice of this Order" are enjoined from "[t]ransferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing" of any assets "held for the benefit of Jeremy Johnson or any Corporate Defendant." (Dkt. no. 130 at 15-16 (Part VI) (emphasis added).) The injunction further prevents "[i]ncurring charges or cash advances on any credit or bank card issued in the name, individually, jointly, or severally, of Jeremy Johnson or any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by Jeremy Johnson or any Corporate Defendant." (*Id.* at 16 (Part VI.C).)

dealings with the Receivership Defendants, no concerns would be raised. But according to the Court-appointed Receiver, the Vowells possess no such assets, and even if they did, serious questions as to their status as Receivership assets remain. Precisely because the Receivership assets are held in the exclusive custody of the Receiver, they cannot be leveraged as the source of future repayments when obtaining a credit card loan from a lender (or any other type of unsecured loan).

Accordingly, counsel for the Vowell Entities must ensure themselves that any funds received in exchange for legal services are not those subject to the preliminary injunction and the Clarifying Order. *See FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1144 (9th Cir. 2010) (recognizing in the context of an FTC enforcement action that "an attorney is not permitted to be willfully ignorant of how his fees are paid"). "[W]hen an attorney is objectively on notice that his fees may derive from a pool of frozen assets, he has a duty to make a good faith inquiry into the source of those fees." *FTC v. Assail, Inc.*, 410 F.3d 256, 265 (5th Cir. 2005), *cited with approval by Network Servs. Depot, Inc.*, 617 F.3d at 1143-44. Contrary to the Vowell Entities' position in their supplemental reply, it makes no difference that the Vowell Entities are not parties to the litigation and that they are not themselves charged with fraud. The rulings in *Assail* and in *Network Services Depot* apply equally to payments made by parties or payments made by non-parties; so long as the payments originate in frozen assets, and so long as counsel is apprised that his fees "may derive from a pool of frozen assets," the duty to inquire is triggered. *Assail, Inc.*, 410 F.3d at 265. Any suspicion raised concerning the source of assets that a borrower intends to use to fulfill loan obligations must prompt an attorney to ensure that her acceptance of the fees does not violate the Court's injunction order. And pursuant to the responsibilities placed upon the Receiver to maintain the integrity of the Receivership estate, inquiries made by the Receiver as to the source of any unsecured debts must be responded to.

///

///

### 3. Increase bond

The Vowell Entities additionally seek a larger bond to secure the preliminary injunction. Assuming that the Court retains jurisdiction to so order in light of the pending appeal, an increase in the bond is not necessary at this time to ensure the maintenance of the status quo.

### 4. Stay of preliminary injunction

Lastly, the Vowell Entities request the Court stay the application of the preliminary injunction pending their Motion to Intervene. As the Court has decided this Motion above, this request is denied as moot.

In conclusion, the Court denies the Vowell Entities' Emergency Motion for Clarification of Order for the reasons set forth above.

### D. The I Works Defendants' Motion to Introduce Entire Document (dkt. no. 1028)

I Works Defendants' seek to introduce a full deposition transcript to supplement excerpts used by the United States in support of its Reply relating to the Emergency Motion for a Limited Stay of Discovery. As that Motion has already been resolved (*see* dkt. no. 1083), this Motion is denied as moot.

### E. The United States' Motion to Strike (dkt. no. 1054)

The United States seeks to strike the improper surreply filed by various pro se defendants. (*See* dkt. no. 1051.) As the Court previously indicated its unwillingness to entertain the surreply (*see* dkt. no. 1065), this Motion is denied as moot.

## IV. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that the Vowell Entities' Emergency Motion to Intervene (dkt. no. 967) is DENIED.

IT IS FURTHER ORDERED that the Federal Trade Commission's Motion to Strike Certain Affirmative Defense Raised by the I Works and Fielding Defendants (dkt. no. 984) is GRANTED in part and DENIED in part.

///

IT IS FURTHER ORDERED that the Vowell Entities' Emergency Motion for Clarification of Order (dkt. no. 998) is DENIED.

IT IS FURTHER ORDERED that the Fielding Defendants' Motion to Extend Time (dkt. no. 1017) is DENIED as moot.

IT IS FURTHER ORDERED that the Vowell Entities' Motion for Hearing (dkt. no. 1018) is DENIED.

IT IS FURTHER ORDERED that the I Works Defendants' Motion to Introduce Entire Document (dkt. no. 1028) is DENIED as moot.

IT IS FURTHER ORDERED that the United States' Motion to Strike (dkt. no. 1054) is DENIED as moot.

DATED THIS 5th day of August 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE