UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| Plaintiff, | ) ) | Case No. 2:10-cv-02203-MMD-GWF |
| vs. | ) ) | **ORDER** |
| JEREMY JOHNSON, *et al.*, | ) ) | Motion for Sanctions (#799) |
| Defendants. | ) ) | |

This matter comes before the Court on Plaintiff Federal Trade Commission's ("Plaintiff") Motion for Sanctions (#799) against Defendant Jeremy Johnson ("Johnson"), filed on February 7, 2013. Defendant filed a Response (#828) on February 24, 2013. Plaintiff filed a Reply (#859) on March 7, 2013.

**FACTUAL AND PROCEDURAL BACKGROUND**

The District Judge set forth a brief factual background of this matter, *see June 19, 2013 Order, Doc. #1083* at 1:20-2:3, which this Order hereby incorporates. Plaintiff represents that it served Johnson with 21 Interrogatories and 25 Requests for Production of Documents ("RFP") on September 6, 2012, to which Johnson's responses were due October 9, 2012. Plaintiff also represents it served Johnson with 88 Requests for Admissions ("RFA") on September 10, 2012, to which Johnson's responses were due October 15, 2012. Plaintiff granted Johnson an extension until October 30, 2012 to respond. Thereafter, Plaintiff claims, Johnson did not respond to any communication until a January 2, 2013 phone call during which Johnson agreed to provide responses only with assurances they would not be used in any criminal proceedings. Plaintiff rejected the condition and received no further responses. Plaintiff filed an unopposed Motion to

Compel (#777) on January 4, 2013. The Court granted the Motion (#777), and ordered Johnson to respond to Plaintiff's discovery requests no later than January 30, 2013. *See January 24, 2013 Order*, Doc. #789. Plaintiff represents that on February 2, 2013, it contacted Johnson and offered to accept his discovery responses as late as February 4, 2013. Plaintiff received no responses, and the instant Motion followed. In his Response (#828) to the instant Motion, Johnson indicated that he would mail the responses on February 25, 2013. In light of Johnson's deposition date of February 28, 2013, the Court ordered Johnson to send his discovery responses to Plaintiff via electronic mail no later than February 26, 2013. *See February 26, 2013 Minute Order, Doc. #835*. In its Reply (#859) in support of the instant Motion, Plaintiff states that it received Johnson's responses on February 26, 2013, but that they are deficient.

Intervenor United States of America filed an Emergency Motion to Stay Discovery (#946) on April 15, 2013. The District Judge stayed all non-asset related discovery pending a ruling on the Motion to Stay (#946) on April 18, 2013. *See Minute Order, Doc. #951*. The District Judge then denied the Motion to Stay (#946) on June 19, 2013. *See Order, Doc. #1083*. Several corporate Defendants and Plaintiff subsequently sought modifications of the Scheduling Order, *See Doc. #1096, Doc. #1097*, which the District Judge denied. *See July 8, 2013 Order, Doc. #1102*. Discovery, therefore, is now closed.

**DISCUSSION**

**I.   Sanctions**

District Courts have "inherent power to control their dockets" and may "impose sanctions including, where appropriate, default or dismissal." *Thompson v. Housing Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam). Federal Rule of Civil Procedure 37(b)(2)(A)(vi) provides that where a party "fails to obey an order to provide or permit discovery," the district court may impose sanctions by "rendering a default judgment against [it]." Dismissal is available in appropriate cases "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam).

Courts consider five factors to determine whether terminal sanctions are appropriate: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Conn. Gen. Life Ins. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007). "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against[.] Thus the key factors are prejudice and the availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). A defendant suffers prejudice "if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Id.* (internal citations omitted). Prejudice may result from an unreasonable delay in responding to discovery, but the burden to show actual prejudice shifts to the party seeking sanctions after the responding party has given a non-frivolous excuse for the delay. *Hernandez v. City of El Monte*, 138 F.3d 393, 400-01 (9th Cir. 1998). The sub-parts of the fifth factor are "whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Conn. Gen. Life Ins.*, 482 F.3d at 1096. This five-part "test" is not mechanical; rather, it provides "the district court with a way to think about what to do, not [...] a script that the district court must follow." *Id.*

Here, Plaintiff has not satisfied its burden of establishing prejudice to an extent warranting the imposition of terminal sanctions. Johnson is currently being prosecuted in the United States District Court for the District of Utah in a parallel criminal proceeding involving the same underlying set of facts at issue in this litigation. Johnson represents that he and his former counsel in the parallel criminal proceeding, Nathan Crane, Esq., were collaborating on discovery responses, mindful of their potential Fifth Amendment implications in Johnson's criminal prosecution. Johnson further represents that on the eve of the Court-imposed deadline for his responses, Mr. Crane filed a motion to withdraw as counsel, which was granted on February 1, 2013. Johnson, who is without counsel in this case, contends that he therefore could not timely respond to the discovery requests without possibly jeopardizing his Fifth Amendment rights. Furthermore, the Court has previously compelled Johnson to respond to Plaintiff's discovery requests, *see January*

*24, 2013 Order, Doc. #789*, but has not previously warned Johnson that failure to respond may result in terminal sanctions.

In light of Johnson's representations and the fact that no trial date has been set in this case, the Court finds that *Connecticut General's* five factors weigh against sanctioning Johnson.  In its Reply (#859), Plaintiff moves the Court alternatively to impose lesser sanctions, such as precluding Johnson from using any unproduced documents for his defense and deeming Plaintiff's RFAs admitted.  In exercise of its discretion under Rule 37(b)(2)(A), the Court declines to impose any of these sanctions at this time in favor of again compelling Johnson to provide sufficient responses.  The Court additionally cautions Johnson that continued failure to respond adequately to the discovery requests at issue will result in the imposition of sanctions.

## II.     Johnson's Discovery Responses

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  For good cause, the court may broaden the scope of discovery to any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Relevancy under Rule 26(b)(1) is liberally construed.  *U.S. E.E.O.C. v. Caesars Entertainment, Inc.,* 237 F.R.D. 428, 431–32 (D.Nev. 2006).  Indeed, Rule 26 encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.*"* *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues.  *See id.* at 351.  If a party agrees to produce requested documents, it must produce all material that is within its "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1)(A).  "Control" need not be actual control; courts construe it broadly as "the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989); *see also Scott v. Arex, Inc.,* 124 F.R.D. 39, 41 (D.Conn. 1989) (party controls document if it has right, authority, or ability to obtain documents on demand).

. . .

**a.     *Requests for Production of Documents***

Johnson objected and responded to each of Plaintiff's 25 RFPs in a nearly identical manner. Johnson's response to RFP No. 1. is representative. Plaintiff's RFP No. 1 seeks

> [a]ll correspondence–including electronic correspondence, such as text messages, chat logs, and emails–that [Johnson] received or sent using an email address other than @iworks.com [...] which relates to the business, management, ownership, or assets of any of the Individual Defendants or Corporate Defendants.

*See* Reply, Doc. #859, Exh. 2 at 3:16-21. Johnson replied:

> I object to [Plaintiff's] Document Production Request to the extent that it is vague, ambiguous, overly broad, and unduly burdensome. I do not currently have in my possession the requested documents. [Plaintiff] or Receiver already has received these documents as they have been provided in the CID or were included in the Receiver's seizure of all the hard drives and other documentation that was kept at my home or at I Works' place of business. Other documentation and information is potentially in possession of Nathan Crane, my previous defense attorney, or in possession of Ron Yengich, my current defense attorney. Further inquiries should be directed to them. Any text messages were lost on or around September 25, 2013 (*sic*), when my Iphone ceased functioning.

*Id.* at 3:23-4:5.  "Boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents," without more, are insufficient. *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Each of Johnson's objections to Plaintiff's RFPs is identical and equally devoid of adequate explanation; accordingly, the Court overrules the objections and compels Johnson to respond to each RFP. Additionally, regardless of whether Plaintiff or the Receiver in this case have already received the documents sought, to the extent that they are in Johnson's possession, custody, or control, he must produce them. Furthermore, although certain documents may be in the possession of Johnson's previous or current criminal counsel, they are still within Johnson's control because he has the ability to obtain them. *See Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1452. Johnson must therefore produce any responsive documents in the possession of Mr. Crane or Mr. Yengich, unless they are subject to any privilege. Johnson is instructed, however, that formally claiming a privilege involves "specifying which information and documents are privileged and for what reasons." *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Calif. 1996).

       **b.**     ***Interrogatories***

Interrogatories must be answered with "information available to the [responding] party." *See* Fed. R. Civ. P. 33(b); *see also Oatman v. Sec. of Treasury of U.S.*, 893 F.Supp. 937, 939 (D. Idaho May 30, 1995). Responding parties must furnish responsive information to discovery requests "as is available through reasonable efforts." *Id.* If the information sought is contained in the responding party's files and records, he or she is under a duty to search the records to provide the answers. *See U.S. ex rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 680 (E.D. Calif. 2006) (citing *Govas v. Chalmers*, 965 F.2d 298, 302 (7th Cir. 1992)). But where the information is contained in business records and responding would require burdensome or expensive research, the responding party may specify the records from which the answer may be obtained and make them available for inspection. *Id. See also* Fed R. Civ. P. 33(d). If the information sought in an interrogatory is held by an entity "with which the responding party maintains a relationship that enables [him] readily to procure the required information, then that party may be expected to seek out the information" and respond substantively. *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 195 (D. Nev. 2010).

Here, the Court finds Johnson did not prepare his responses to Plaintiff's Interrogatories with the diligence Rule 33 requires. Specifically, Plaintiff's Interrogatory No. 21 seeks "all persons who assisted [Johnson] in preparing [his] responses to all written discovery, [...] as well as the documents [Johnson] consulted to respond to the Interrogatories and Requests for Admission." *See Reply, Doc. #859, Exh. 3* at 7. Johnson responded that he "typed [his] responses [him]self and did not use documents." *Id.* Johnson's failure to review documents or consult knowledgeable persons is evidenced by other responses. For example, Interrogatory No. 20 seeks "the five most common consumer complaints received by I Works concerning I Works' marketing[.]" *Id.* Johnson responded that "[he] is not sure what the five most common complaints were." *Id.* Interrogatory No. 5 seeks "the business purpose behind the creation of the Philippine companies: Raven Internet Marketing Corp., JRS Media Solutions Corp., and Netpro Marketing Solutions Corp." *Id.* at 3. Johnson responded in part that "[t]here were many reasons for the formation of these corporations and [he] [doesn't] recall what all of them are." *Id.* Johnson's evasiveness likewise pervades other

Interrogatory responses, and it appears to the Court that Johnson may be able to provide more adequate responses if he expended the investigative efforts Rule 33 demands. Therefore, the Court will order Johnson to more thoroughly review and inquire the documents and knowledgeable persons available to him and supplement his responses to Interrogatory Nos. 3, 4, 5, 6, 7, 9, 11, 14, 15, 17, 19, 20, and 21.

Johnson objected to Plaintiff's Interrogatory No. 12 as vague and argumentative. Interrogatory No. 12 seeks "the differences between the 'dummy' underwriting websites included with I Works' merchant account applications and the I Works sales sites that generated the bulk of I Works' sales." *Id.* at 5. Johnson objected and responded that he is "not sure what a 'dummy' underwriting website that (*sic*) that the FTC is referring to." *Id.* The Court sustains Johnson's objection, and instructs Plaintiff and Johnson ("the Parties") to meet and confer regarding the websites and definition of "dummy" Plaintiff intended. Johnson shall respond to Interrogatory No. 21 thereafter.

### c.   *Requests for Admission*

A party's duty of reasonable inquiry in responding to requests for admissions is similar to its duty in answering interrogatories. *Halpern*, 271 F.R.D. at 193. If the matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. *Id. See also* Fed R. Civ. P. 33(a)(4). Although the answering party may assert lack of knowledge or information as a reason for failing to admit or deny a request for admission, he may only do so after stating that he has made a "reasonable inquiry and that the information [he] knows or *can readily obtain* is insufficient[.]" Fed R. Civ. P. 33(a)(4) (emphasis added).

Here, the vast majority of Johnson's responses are identical: "After reasonable inquiry, I am unable to obtain the information to admit or deny this statement." *See, e.g., Reply, Doc. #859, Exh. 4* at 11. Without more, the Court finds these boilerplate responses to be inadequate, particularly in light of Johnson's response to Interrogatory No. 21, that he did not consult any individual or any documents in preparing his discovery responses. *See id., Exh. 3* at 7. Because a party responding to RFAs must expend "reasonable effort" to review "information available" to him, the Court will order Johnson to conduct additional review and admit or deny the following RFA Nos. 9-12, 14-17,

21, 28-33, 37, 43-47, 49-50, 53, 57-60, 62-65, 67-68, 73-74, 76, and 79-80.  In the event that, after sufficient inquiry, Johnson is still unable to admit or deny the RFAs, he shall state in detail the extent of his inquiry.

Johnson's responses to Plaintiff's RFA Nos. 1 through 7 are also identical: "After reasonable inquiry, I am unable to obtain the information to admit or deny this statement.  I do not have the CID or my response as they are in the hands of either my old criminal attorney or potentially my new criminal attorney."  Johnson can "readily obtain" the information necessary to admit or deny RFAs 1 through 7, however, because he can collect it from his previous and/or current criminal counsel.  Therefore, the Court will compel Johnson to admit or deny Plaintiff's RFAs 1 through 7.  Similarly, RFA No. 48 requests Johnson to admit or deny that "[i]n early 2009, I Works directed several employees to develop an I Works compliance program[.]" *Reply, Doc. #859, Exh. 4* at 10.  Johnson responded that "[he] cannot truthfully admit or deny this matter as to the date" but that "I Works did set up a compliance program[.]" *Id.* at 11.  As above, the Court is not convinced that Plaintiff made a reasonable inquiry as to the date at issue, and will compel Johnson to investigate and respond further to RFA No. 48.

Johnson also lodged specific objections to a number of RFAs.  Plaintiff's RFA No. 54 requests Johnson to admit or deny that "[i]t was the opinion of employees working on the I Works compliance program that consumers [...] did not know that they would be charged for the I Works products." *Reply, Doc. #859, Exh. 4* at 11.  Johnson objected to the form of the RFA, because it "asks [him] to speak for the state of mind or opinion of I Works employees." *Id.*  This objection is overruled; Johnson shall admit or deny the statement to the extent that the employees' opinion was expressed and Johnson had knowledge of it.

RFA No. 55 requests Johnson to admit or deny that "[r]eports were provided to Ryan Riddle that included findings by employees working on the I Works compliance program that third-party merchants' websites failed to disclose [...] the terms of the I Works Products marketed as Forced Upsells on those websites." *Id.* at 12.  RFA No. 56 makes the same request as to reports provided to Scott Leavitt.  *Id.*  Johnson objected to both because they "ask[] [him] to make a statement for Ryan Riddle's" and "Scott Leavitt's knowledge." *Id.*  These objections are overruled;

Johnson shall admit or deny RFA Nos. 55 and 56 to the extent that he has knowledge that such reports were provided to Ryan Riddle and Scott Leavitt.

RFA No. 71 requests Johnson to admit or deny that "I Works directed the creation of the Grant-A-Day program, at least in part, to obtain testimonials about grants being available for personal needs." *Id.* at 14. RFA No. 72 states "I Works includes government benefits, such as food stamps, when claiming that government grants are available to individuals for personal needs." *Id.* Johnson objected identically to both RFAs, asserting "the term 'personal needs' is not defined adequately" to admit or deny. *Id.* These objections are sustained; the Parties shall meet and confer to further define "personal needs," and Johnson shall admit or deny RFA Nos. 71 and 72 thereafter.

Finally, Johnson responds identically to RFA Nos. 81 through 88, which request Johnson to admit or deny the genuineness of copies of certain documents. For example, RFA No. 81 requests Johnson to admit or deny that "Preliminary Injunction Ex. 17, IW 144-150, is a true and correct copy of a Marketing Agreement [Johnson] signed on or about March 24, 2006, as Chief Executive Officer of Raven Holdings, Inc." *Id.* at 16. Johnson responded:

> After reasonable inquiry, I am unable to obtain the information to admit or deny this statement. I signed and authorized my signature on thousands of documents as President of I Works. Because of [Plaintiff's] history of altering and falsifying documents in this case, I decline to verify any document unless I can verify its original source and be assured that [Plaintiff] has not been able to tamper with the document.

*Id.* RFA Nos. 82 through 88 seek verification of 7 additional documents, with Johnson's refusal repeated. Based on Johnson's implicit representation that he is no longer in possession, custody, or control of the original subject documents, the Court will not compel him to verify the documents. To the extent that Johnson is in possession, custody, or control of the originals, however, he shall admit or deny RFA Nos. 81 through 88. Furthermore, if Plaintiff furnishes Johnson with the original documents for inspection, Johnson shall be compelled to admit or deny RFA Nos. 81 through 88. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Sanctions (#799) is **granted** in part and **denied** in part as follows:

1  (1)  Defendant Jeremy Johnson shall produce the documents sought in each of Plaintiff's
2       25 Requests for Production of Documents within 14 days of the date of this Order;
3  (2)  Johnson shall conduct further inquiry and supplement his responses to Interrogatory
4       Nos. 3, 4, 5, 6, 7, 9, 11, 14, 15, 17, 19, 20, and 21 in a manner consistent with this
5       Order, within 14 days of the date of this Order;
6  (3)  The Parties shall meet and confer regarding the websites and definition intended by
7       Plaintiff in Interrogatory No. 12 within 10 days of the date of this Order.  Johnson
8       shall supplement his response to Interrogatory No. 12 within 4 days of the date of
9       the meet-and-confer;
10 (4)  Plaintiff shall conduct further inquiry and admit or deny Plaintiff's Requests for
11      Admission Nos. 1-8, 9-12, 14-17, 21, 28-33, 37, 43-50, 53-60, 62-65, 67-68, 73-74,
12      76, and 79-80 in a manner consistent with this Order, within 14 days of the date of
13      this Order.  In the event that, after sufficient inquiry, Johnson is still unable to admit
14      or deny the RFAs, he shall state in detail the extent of his inquiry;
15 (5)  The Parties shall meet and confer regarding the definition of "personal needs"
16      Plaintiff intended in Requests for Admission Nos. 71 and 72 within 10 days of the
17      date of this Order.  Johnson shall admit or deny RFA Nos. 71 and 72 within 4 days
18      of the date of the meet-and-confer; and
19 (5)  To the extent that Johnson is in possession, custody, or control of the original
20      documents to which Plaintiff's Requests for Admission Nos. 81 through 88 cite, he
21      shall admit or deny RFAs 81-88.  To the extent Johnson is not in possession,
22      custody, or control of the originals and Plaintiff still desires verification of the
23      documents, Plaintiff shall furnish Johnson with the original documents within 14
24      days of the date of this Order.  Johnson shall admit or deny RFAs 81-88 within 4

. . .
. . .
. . .
. . .

days of inspection of the originals. Plaintiff shall be permitted to be present during Johnson's inspection of the documents.

DATED this 25th day of September, 2013.

                                                            GEORGE FOLEY, JR.
                                                            United States Magistrate Judge