UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

**FEDERAL TRADE COMMISSION,**
                                    **Plaintiff,**

                v.

**JEREMY JOHNSON, individually, as officer of Defendants I Works, Inc.; Cloud Nine, Inc.; CPA Upsell, Inc.; Elite Debit, Inc.; Internet Economy, Inc.; Market Funding Solutions, Inc.; and Success Marketing, Inc.; as a member of Defendant Network Agenda LLC; and as the *de facto* principal of numerous Defendant Shell Companies;  I WORKS, INC., *et al.*
                                    Defendants.**

**CV 10-2203 MMD (GWF)**

### STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANT BRYCE PAYNE

On December 21, 2010, Plaintiff, the Federal Trade Commission ("FTC" or "Commission") filed a redacted Complaint for permanent injunction and other relief pursuant to Sections 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 917(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), alleging that defendants Jeremy Johnson, Duane Fielding, Andy Johnson, Loyd Johnston, Scott Leavitt, Scott Muir, Bryce Payne, Kevin Pilon, Ryan Riddle, Terrason Spinks, I Works, Inc., Anthon Holdings Corp., Cloud Nine Marketing, Inc., CPA Upsell, Inc., Elite Debit, Inc., Employee Plus, Inc., Internet Economy, Inc., Market Funding Solutions, Inc., Network Agenda, LLC, Success Marketing, Inc., Big Bucks Pro, Inc., Blue Net Progress, Inc., Blue Streak Processing, Inc., Bolt Marketing, Inc., Bottom Dollar,



Inc., Bumble Marketing, Inc., Business First Inc., Business Loan Success, Inc., Cold Bay Media, Inc., Costnet Discounts, Inc., CS Processing, Inc., Cutting Edge Processing, Inc., Diamond J Media, Inc., Ebusiness First, Inc., Ebusiness Success, Inc., Ecom Success, Inc., Excess Net Success, Inc., Fiscal Fidelity, Inc., Fitness Processing, Inc., Funding Search Success, Inc., Funding Success, Inc., GG Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Hooper Processing, Inc., Internet Business Source, Inc., Internet Fitness, Inc., Jet Processing, Inc., JRB Media, Inc., Lifestyles For Fitness, Inc., Mist Marketing, Inc., Money Harvest, Inc., Monroe Processing, Inc., Net Business Success, Inc., Net Commerce, Inc., Net Discounts, Inc., Net Fit Trends, Inc., Optimum Assistance, Inc., Power Processing, Inc., Premier Performance, Inc., Pro Internet Services, Inc., Razor Processing, Inc., Rebate Deals, Inc., Revive Marketing, Inc., Simcor Marketing, Inc., Summit Processing, Inc., The Net Success, Inc., Tranfirst, Inc., Tran Voyage, Inc., Unlimited Processing, Inc., and xCel Processing, Inc., have engaged in violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 917(c) of EFTA, 15 U.S.C. § 1693o(c) ("EFTA"), and Section 205.10(b) of Regulation E ("Reg E"), 12 C.F.R. § 205.10(b), in connection with the marketing and sale of Internet-based information products and services. The Commission and defendant Bryce Payne have agreed to the entry of, and request the Court to enter, this Stipulated Final Order for Permanent Injunction and Monetary Judgment as to Bryce Payne ("Order"), to resolve all matters of dispute in this action between them.

**THEREFORE, IT IS STIPULATED, AGREED, AND ORDERED**

as follows:

1.     This Court has jurisdiction over the subject matter of this case and over Defendant
       Payne;

2.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b);

3.      The activities alleged in the Complaint are in or affecting "commerce" as that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44;

4.      The Complaint states a claim upon which relief may be granted under Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b); under Section 917(c) of EFTA, 15 U.S.C. § 1693o(c); and Reg E, 12 C.F.R. § 205.10(b);

5.      Defendant Payne has entered into this Order freely and without coercion, and acknowledges that he has read the provisions of this Order and is prepared to abide by them;

6.      This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law;

7.      Defendant Payne waives all rights to seek appellate review or otherwise challenge or contest the validity of this Order and waives and releases any claim he may have against the Commission, its employees, representatives, or agents, and the Receiver and the Receiver's employees, representatives, or agents;

8.      Defendant Payne agrees that this Order does not entitle him to seek or to obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996), and he further waives any right to attorneys' fees that may arise under said provision of law;

9.      Defendant Payne does not admit to any allegations in the Complaint, except for facts necessary to establish jurisdiction and as otherwise specifically stated in this Order;

10.    This Order is remedial in nature and no portion of any payments paid herein shall be deemed or construed as payment of a fine, damages, penalty, or punitive assessment; and

11.    Entry of this Order is in the public interest.

## ORDER

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.    **"Affiliate Network"** means any Person who provides Defendant Payne with Marketing Affiliates for an Affiliate Program or whom Defendant Payne contracts with as a Marketing Affiliate to promote any Product.

2.    **"Affiliate Program(s)"** means any arrangement under which Defendant Payne pays, offers to pay, or provides or offers to provide any form of consideration to any third party to:  (1) provide Defendant Payne or his Clients with, or refer to Defendant Payne or his Clients, potential or actual customers; or (2) otherwise market, advertise, or offer for sale any Product on behalf of Defendant Payne or his Clients.

3.    **"Assists others"** or **"Assisting others"** means providing assistance or support to any person or entity, including, but not limited to, providing any of the following services: (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any promotional material; (3) providing names of, or assisting in the generation of, potential customers; (4) verifying, processing, fulfilling, or arranging for the fulfillment of orders; (5) hiring, recruiting, or training personnel; (6) performing promotional or marketing services of any kind; or (7) processing or arranging

for processing of credit card, debit card, Automated Clearinghouse ("ACH") debits, remotely-created checks, or payments through any other system.

4.    **"Clear and Conspicuous"** or **"Clearly and Conspicuously"** means:

a.    In print communications, the message shall be presented in a manner that stands out from the accompanying text, so that it is sufficiently prominent, because of its type size, contrast to the background against which it appears, location, or other characteristics, for an ordinary consumer to notice, read, and comprehend it in relation to any claim it may be modifying;

b.    In communications made through an electronic medium (such as television, video, radio, and interactive media such as the Internet, online services, mobile services and software), the message shall be presented simultaneously in both the audio and visual portions of the communication.  In any communication presented solely through visual or audio means, the message shall be made through the same means in which the communication is presented.  In any communication disseminated by means of an interactive electronic medium such as software, the Internet, online services, or mobile services, a disclosure must be unavoidable and presented prior to the consumer incurring any financial obligation.  Any audio message shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it in relation to any claim it may be modifying.  Any visual message shall be presented in a manner that stands out in the context in which it is presented, so that it is sufficiently prominent, because of its size and shade, contrast to the background against which it appears, length of time it appears

on the screen, and its location, for an ordinary consumer to notice, read, and comprehend it in relation to any claim it may be modifying; and

c.   Regardless of the medium used to disseminate it, the message shall be in understandable language and syntax.  Nothing contrary to, inconsistent with, or in mitigation of the message shall be used in any communication.

5.   "**Client**" means any third party to which Defendant Payne provides any of the services listed in the definition of Assisting others.

6.   "**Continuity Program**" means any plan, arrangement, or system under which a consumer is periodically charged to maintain a service or periodically receive any Product, including, but not limited to, access to a "member only" website, without prior Clear and Conspicuous notification by the seller at least ten (10) business days before each charge to allow the consumer to cancel without incurring charges.  For purposes of this Order, Continuity Program does **not** include periodic billing for (1) services that a consumer receives in person at a merchant's business premises, such as a health club or a storage facility or (2) services performed for a consumer in person at his or her location or business premises, such as services performed under a maintenance service contract. Services provided via the internet, telecommunications or a mobile device are not considered to be services performed in person.

7.   "**Corporate Defendants**" means I Works, Inc., Anthon Holdings Corp., Cloud Nine Marketing, Inc., CPA Upsell, Inc., Elite Debit, Inc., Employee Plus, Inc., Internet Economy, Inc., Market Funding Solutions, Inc., Network Agenda, LLC, Success Marketing, Inc., Big Bucks Pro, Inc., Blue Net Progress, Inc., Blue Streak Processing, Inc., Bolt Marketing, Inc., Bottom Dollar, Inc., Bumble Marketing, Inc., Business First

Inc., Business Loan Success, Inc., Cold Bay Media, Inc., Costnet Discounts, Inc., CS
Processing, Inc., Cutting Edge Processing, Inc., Diamond J Media, Inc., Ebusiness First,
Inc., Ebusiness Success, Inc., Ecom Success, Inc., Excess Net Success, Inc., Fiscal
Fidelity, Inc., Fitness Processing, Inc., Funding Search Success, Inc., Funding Success,
Inc., GG Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Hooper
Processing, Inc., Internet Business Source, Inc., Internet Fitness, Inc., Jet Processing,
Inc., JRB Media, Inc., LifeStyles for Fitness, Inc., Mist Marketing, Inc., Money Harvest,
Inc., Monroe Processing, Inc., Net Business Success, Inc., Net Commerce, Inc., Net
Discounts, Inc., Net Fit Trends, Inc., Optimum Assistance, Inc., Power Processing, Inc.,
Premier Performance, Inc., Pro Internet Services, Inc., Razor Processing, Inc., Rebate
Deals, Inc., Revive Marketing, Inc., Simcor Marketing, Inc., Summit Processing, Inc.,
The Net Success, Inc., Tranfirst, Inc., Tran Voyage, Inc., Unlimited Processing, Inc., and
xCel Processing, Inc. and by whatever other names each may be known, and any
subsidiaries, affiliates, any fictitious business entities or business names created or used
by these entities, or any of them, and their successors and assigns.

8.    **"Document"** is synonymous in meaning and equal in scope to the usage of the term in
Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts,
Internet sites, Webpages, Websites, electronic correspondence, including e-mail and
instant messages, photographs, audio and video recordings, contracts, accounting data,
advertisements (including, but not limited to, advertisements placed on the World Wide
Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web
pages, books, written or printed records, handwritten notes, telephone logs, telephone
scripts, receipt books, ledgers, personal and business canceled checks and check

registers, bank statements, appointment books, computer records, and other data compilations from which information can be obtained and translated.  A draft or non-identical copy is a separate document within the meaning of the term.

9.    **"Endorsement"** means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization), which message consumers are likely to believe reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser.

10.    **"Endorser"** means the party whose opinions, beliefs, findings, or experience the message appears to reflect, and may be an individual, group or institution.

11.    **"Express Verifiable Authorization"** means:

a.    Express written authorization by the customer, which includes the customer's signature, and shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law;

b.    Express oral authorization which is audio-recorded and made available upon request to the customer, and the customer's bank or other billing entity, and which evidences clearly both the customer's authorization of payment for the goods or services that are the subject of the transaction and the customer's receipt of all of the following information:

(i)    An accurate description, clearly and conspicuously stated, of the goods or services for which payment authorization is sought;

(ii)    The number of debits, charges, or payments (if more than one);

     (iii)    The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

     (iv)    The amount(s) of the debit(s), charge(s), or payment(s);

     (v)    The customer's name;

     (vi)    The customer's billing information, identified with sufficient specificity such that the customer understands what account will be used to collect payment for the goods or services that are the subject of the transaction;

     (vii)    A telephone number for customer inquiry that is answered during normal business hours; and

     (viii)    The date of the customer's oral authorization; or

  c.  Written confirmation of the transaction, identified in a Clear and Conspicuous manner as such on the outside of the envelope, sent to the customer via first class mail prior to the submission for payment of the customer's billing information, and that includes all of the information contained in b(i)-(vii) above and a Clear and Conspicuous statement of the procedures by which the customer can obtain a refund in the event the confirmation is inaccurate; *provided,* however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

12.    "**Financial Institution**" means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of

1956 (12 U.S.C. § 1843(k)).  An institution that is significantly engaged in financial

activities is a Financial Institution.

13.   **"Forced Upsell"** means the automatic bundling of any additional Product with the

purchase of a Primary Product.  For purposes of this Order, Forced Upsell shall include,

but not be limited to, any bundled additional Product from which consumers cannot opt-

out, as well as any Upsell that uses a pre-checked checkbox.

14.   **"Grant-related Product"** means any Product, including a plan or program, that is

represented, directly or by implication, to assist a consumer in any manner in obtaining a

grant or similar financial assistance from the government or any other source.

15.   **"In Close Proximity"** shall mean for any communication presented solely through visual

means:  on the same webpage, online service page, mobile device screen, or other

electronic page, and immediately adjacent to any:  (1) cost-related claim; or (2) request

that consumers provide their name, address, telephone number, email address, or any

Sensitive Personal Information, and viewable in conjunction with the claim or request in

such a manner that the communication is viewable without requiring the consumer to

scroll up, down, or sideways, or otherwise adjust their browser window or mobile device

window in any way.  Representations or disclosures in response to any:  (1) cost-related

claim; or (2) request that consumers provide their name, address, telephone number,

email address, or any Sensitive Personal Information that are accessed or displayed

through hyperlinks, pop-ups, interstitials, or other means are NOT "In Close Proximity."

16.   **"Individual Defendants"** means Jeremy Johnson, Duane Fielding, Andy Johnson, Loyd

Johnston, Scott Leavitt, Scott Muir, Bryce Payne, Kevin Pilon, Ryan Riddle, and

Terrason Spinks.



17.   "**Investment Opportunity**" means any offer, including a program, plan, service, or opportunity that is for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, earnings, profit, or appreciation, including, but not limited to a multi-level marketing opportunity.  For purposes of this Order, Investment Opportunity does **not** include the sale of the following: (1) regulated financial products when they are sold by a federally-regulated financial institution; (2) regulated insurance products when they are sold by individuals, agencies or companies licensed to sell such insurance products; and (3) ownership shares in a state-registered business entity, such as a corporation, limited liability company, partnership or sole proprietorship, that does not engage in any conduct prohibited by this Order.

18.   "**I Works Defendant(s)**" means the Corporate Defendants and the Individual Defendants, individually, collectively, or in any combination.

19.   "**Marketing Affiliate**" means any person or entity, including third-party marketers and Affiliate Networks, who participates in an Affiliate Program.

20.   "**Material**" means likely to affect a person's choice of, or conduct regarding, a Product.

21.   "**Material Connection**" means any relationship that materially affects the weight or credibility of any Endorsement and that would not be reasonably expected by consumers.

22.   "**Material Fact**" means any statement that is likely to affect a person's choice of, or conduct regarding, a Product.

23.   "**Merchant Account**" means any account with an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other

entity that enables an individual, a business, or other organization to accept payments of any kind.

24. **"Negative Option Feature"** means, in an offer or agreement to sell or provide any Product, a provision under which the customer's silence or failure to take an affirmative action to reject a Product or to cancel the agreement is interpreted by the seller or provider as acceptance of the offer.

25. **"Plaintiff"** or **"Commission"** or **"FTC"** means the Federal Trade Commission.

26. **"Primary Product"** means the chief or principal Product that is the subject of the marketing materials or sales offer.

27. **"Product"** means products, goods, and services, and includes online memberships.

28. **"Receiver"** means Robb Evans & Associates, the receiver appointed by the Court's Preliminary Injunction entered on February 10, 2011.

29. **"Representatives"** means Defendant Payne's agents, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, and those persons in active concert or participation with Defendant Payne, who receive actual notice of this Order by personal service or otherwise.

30. **"Sensitive Personal Information"** means nonpublic information concerning an individual consumer, including, but not limited to: Social Security number, in whole or in part; credit and/or debit card information, in whole or in part, including credit and/or debit card number, expiration date, and transaction detail records; Financial Institution account information or transaction records, in whole or in part, including the ABA routing number, account number, check number, and transaction detail records; and



account information or transaction records relating to nontraditional payment systems,
such as any telecommunications billing system, PayPal, and BillMeLater.

31.     "**Upsell**" shall mean any Product that is offered to the consumer at the time the consumer
purchases the Primary Product.

32.     The words "**and**" and "**or**" shall be understood to have both conjunctive and disjunctive
meanings.

# I.

## CONDUCT PROHIBITIONS

**IT IS THEREFORE ORDERED** that Defendant Payne, whether acting directly or through
any officer, agent, servant, employee, sole proprietorship, partnership, limited liability company,
corporation, subsidiary, branch, division, or other entity, is hereby permanently restrained and
enjoined from:

A.  Advertising, marketing, promoting, offering for sale, or selling any Grant-related Product
    or Assisting others engaged in advertising, marketing, promoting, offering for sale, or
    selling any Grant-related Product;

B.  Advertising, marketing, promoting, offering for sale, or selling any Investment
    Opportunity or Assisting others engaged in advertising, marketing, promoting, offering
    for sale, or selling any Investment Opportunity; *provided however*, the prohibition
    against Assisting others shall not apply to Defendant Payne in his duties as a non
    supervisor or non manager of any publically-traded company in which Defendant Payne:

    1.  owns one (1) percent or less of the outstanding common shares or preferred
        shares; or



2.  in any way exercises control over one (1) percent or less of the outstanding common shares or preferred shares;

C.  Advertising, marketing, promoting, offering for sale, or selling any Product in which consumers will be entered into a Continuity Program or that has a Negative Option Feature, or Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any Product in which consumers will be entered into a Continuity Program or that has a Negative Option Feature; *provided however*, the prohibition against Assisting others shall not apply to Defendant Payne in his duties as a non supervisor or non manager of any:

1.  publically-traded company in which Defendant Payne

(a) owns one (1) percent or less of the outstanding common shares or preferred  shares; or

(b) in any way exercises control over one (1) percent or less of the outstanding common shares or preferred  shares;

2.  public utility, such as electricity, natural gas, water, or sewage; or

3.  federal, state, or local government agency;

D.  Advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell, or Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;

E.  Holding any ownership or other financial interest in any business entity that:

1.  Engages in or Assists others in the advertising, marketing, promoting, offering for sale, or selling of any Grant-related Product;



2. Engages in or Assists others in the advertising, marketing, promoting, offering for sale, or selling of any Investment Opportunity; *provided, however*, this prohibition shall not apply to any publically-traded company in which Defendant Payne:

    (a) owns one (1) percent or less of the outstanding common shares or preferred shares; or

    (b) in any way exercises control over one (1) percent or less of the outstanding common shares or preferred shares;

3. Engages in or Assists others in the advertising, marketing, promoting, offering for sale, or selling any Product in which consumers will be entered into a Continuity Program or that has a Negative Option Feature; *provided, however*, this prohibition shall not apply to any publically-traded company in which Defendant Payne:

    (a) owns one (1) percent or less of the outstanding common shares or preferred shares; or

    (b) in any way exercises control over one (1) percent or less of the outstanding common shares or preferred  shares; or

4. Engages in or Assists others in the advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;

F. Serving as an officer, director, or manager of any business entity, unless Defendant Payne actually controls, participates in, or has knowledge of the daily operations of that entity;

G. Acting as a signatory on any account for any business entity unless Defendant Payne controls, participates in, or has knowledge of the daily operations of that entity; and



H. Applying for any Merchant Account for any business entity unless Defendant Payne controls, participates in, or has knowledge of the daily operations of that business entity.

*Provided further*, nothing in this Order shall be construed as an exception to this Section I.

## II.

## PROHIBITED PRACTICES

**IT IS FURTHER ORDERED** that:

A. In connection with the advertising, marketing, promotion, offering for sale, or sale of any Product, Defendant Payne and his Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device are hereby restrained and enjoined from:

1. Making or Assisting others in making, either directly or indirectly, expressly or by implication, any false or misleading statement or representation of Material Fact;

2. Misrepresenting or Assisting others in misrepresenting, either directly or indirectly, expressly or by implication:

   a. The total cost to purchase, receive, or use, and the quantity of, any Product that is the subject of the sales offer;

   b. The risks associated with a Product, including that a Product is risk-free, low risk, or otherwise results in no obligation to the consumer;

   c. Any Material restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

   d. Any Material aspect of the performance, efficacy, nature, or central characteristics of any Product that is the subject of the sales offer;



e.   Any Material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

f.   The status of any user or Endorser of a Product, including, but not limited to, misrepresenting that the user or Endorser is an independent user or ordinary, unbiased consumer of the Product; or

g.   That consumer Endorsements reflect typical consumer experiences with a Product;

3.   Failing to disclose Clearly and Conspicuously:

a.   The total cost to purchase, receive, or use any Product that is the subject of the sales offer;

b.   The total cost to purchase, receive, or use any Product in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information; and

c.   The total cost to purchase, receive, or use any Product subject to the sales offer, in equal or greater size and prominence, and In Close Proximity to, any claim that the Product is "free," has a minimal cost, or is being offered on a trial basis or at an introductory or limited-time reduced cost; and

4.   Failing to disclose Clearly and Conspicuously any other Material information, including, but not limited to:

a.   The quantity of any Product that is the subject of the sales offer;



b. Any Material term or condition, including, but not limited to, any restrictions, limitations, recurring or periodic billing features, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

c. Any Material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for any Product, including, but not limited to, if there is a policy of not making refunds, cancellations, exchanges, or repurchases;

d. That Endorsers received funds or some other benefit, directly or indirectly, from any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement, including, but not limited to, if Endorsers received funds or some other benefit from a non-profit charitable fund that is directly or indirectly associated with any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement; and

e. Any Material Connection, when one exists, between any user or Endorser and any other individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product;

B. Defendant Payne and his Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device are hereby restrained and enjoined from charging or debiting a consumer's bank, credit, or other financial account, or otherwise assessing charges to a consumer, without first obtaining the consumer's Express Verifiable Authorization; and

C. In connection with applying for or maintaining Merchant Accounts, Defendant Payne and his Representatives, whether acting directly or through any entity, corporation,



subsidiary, division, affiliate, or other device are hereby permanently restrained and enjoined from:

1.   Making or Assisting others in making, expressly or by implication, any false or misleading statement or representation, including, but not limited to, any statement or representation concerning the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind; or

2. Failing to disclose to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind any Material information related to a Merchant Account, including, but not limited to, the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, and any connection between the owner, manager, director, or officer of the applicant for or holder of a Merchant Account and any third person who has been or is placed in a Merchant Account monitoring program, had a Merchant Account terminated by a payment processor or a Financial Institution, or has been fined or otherwise disciplined in connection with a Merchant Account by a payment processor or a Financial Institution.

## III.

## PROHIBITION AGAINST VIOLATION OF THE
## ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing,

promotion, offering for sale, or sale of any Product, Defendant Payne and his Representatives,

whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other

device, are hereby permanently restrained and enjoined from:

A.  Engaging in any recurring debiting of a consumer's account without first obtaining a

valid written pre-authorization for preauthorized electronic fund transfers from the

consumer's account, which pre-authorization is clear and readily understandable,

identifiable as a pre-authorization, and reflects the consumer's assent, as required by

Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, as

more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff

Commentary to Regulation E, 12 C.F.R. § 205.10(b) (5) and (6), Supp. I;

B.  Engaging in any recurring debiting of a consumer's account without first providing a

copy of a valid written pre-authorization to the consumer for preauthorized electronic

fund transfers from the consumer's account, which copy is clear and readily

understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as

required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of

Regulation E, as more fully set out in Section 205.10 of the Federal Reserve Board's

Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b)(5) and (6), Supp.I;

and

*Stipulated Final Order as to Bryce Payne*
*FTC v. Jeremy Johnson, et al.*

C.  Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain a written authorization for preauthorized electronic fund transfers, as required in Section 205.10(b)(7) of the Federal Reserve Board's Official Staff Commentary to Regulation E.

## IV.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that monetary judgment is entered in favor of the Commission and against Defendant Payne, jointly and severally, in the amount of **Two Hundred Eighty-Nine Million Four Hundred Fifty-Three Thousand Seven Hundred Seventy-Nine Dollars ($289,453,779)**, which represents the total unreimbursed consumer injury caused by the I Works Defendants' practices alleged in the Complaint, *provided however*, full payment of the foregoing amount shall be suspended upon satisfaction of the obligations set forth in paragraphs A, B, C and D of this Section, and subject to the conditions set forth in paragraphs F, G, and H of this Section:

A.  Effective upon the entry of this Order, Defendant Payne shall surrender to the Commission, or its designated transferee, all control, title, dominion, and interest in the assets listed in Attachment A and all interest he has in funds in any account in the name of Defendant JRB Media Inc.;

B.  Each Financial Institution, bank, brokerage company, insurance company, payment processor, law firm, or other entity that holds assets in an account listed in Attachment A to this Order, shall, within five (5) days of entry of this Order, remit the entire balance of each account to the Commission by certified check(s) or other guaranteed funds payable to the Federal Trade Commission, Financial Management Office, or by wire transfer in



accordance with directions provided by the Commission.  The check(s) or written confirmation of the wire transfer(s) shall be delivered to:  Associate Director, Division of Marketing Practices, 600 Pennsylvania Avenue, NW, H-286, Washington, DC  20580. Defendant Payne shall cooperate in good faith with the FTC to effectuate these transfers, and shall, if needed, execute such documents as are necessary to remit the entire balance of each account to the Commission;

C.  Defendant Payne, or his representative, shall, within five (5) days of entry of this Order, effect the transfer of the $20,000 listed in Attachment A to the Commission by certified check(s) or other guaranteed funds payable to the Federal Trade Commission, Financial Management Office, or by wire transfer in accordance with directions provided by the Commission.  The check(s) or written confirmation of the wire transfer(s) shall be delivered to:  Associate Director, Division of Marketing Practices, 600 Pennsylvania Avenue, NW, H-286, Washington, DC  20580.  Defendant Payne shall cooperate in good faith with the FTC to effectuate these transfers, and shall, if needed, execute such documents as are necessary to remit the $20,000 to the Commission;

D.  Defendant Payne shall, within ten (10) days of entry of this Order, execute such documents as necessary to transfer titles or possession of all assets listed in Attachment A to this Order to the Commission or its designated transferee. Until all assets listed in Attachment A to this Order are surrendered to the Commission or its designated transferee, Defendant Payne shall ensure that they are insured or otherwise preserved;

E.  The Receiver shall, as soon as practicable upon receipt of non-liquid assets listed in Attachment A to this Order and transfer of titles pursuant to Section IV. D, commence their sale using a commercially-reasonable procedure, and Defendant Payne shall have no



right to challenge said sale.  Any transfer fees, taxes, or other payments mandated from the transferor under state law shall be paid from the proceeds of the sale at the time of the sale.  Following the sale of all assets listed in Attachment A to this Order, the Receiver shall forward the net proceeds to the Commission within thirty (30) days, as the Commission may direct;

F.  All funds paid to the Commission pursuant to this Order shall be deposited into an account administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress, and any attendant expenses for the administration of such equitable relief.  In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to I Works Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement.  Defendant Payne shall have no right to challenge the Commission's choice of remedies under this Section. Defendant Payne shall have no right to contest the manner of distribution chosen by the Commission;

G.  Defendant Payne relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law.  Defendant Payne shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise;

H.  The Commission's agreement to this Order is expressly premised upon: (1) the truthfulness, accuracy, and completeness of Defendant Payne's sworn financial statements and supporting documents submitted to the Commission, as well as all



subsequent addenda thereto, all of which Defendant Payne asserts were truthful, accurate, and complete at the time they were submitted; and (2) the truthfulness, accuracy, and completeness of Defendant Payne's testimony at any asset deposition.  Defendant Payne and the Commission stipulate that Defendant Payne's financial statements and supporting documents and testimony provide the bases for the assets listed in Attachment A to this Order and include material information upon which the Commission relied in negotiating and agreeing to this Order.  Defendant Payne and the Commission stipulate that the Commission has relied on the truthfulness, accuracy, and completeness of Defendant Payne's financial statements and supporting documents and testimony in agreeing to the terms of this Order and that the Commission would not have entered into this Order but for the truthfulness, accuracy, and completeness of Defendant Payne's financial statements and supporting documents and testimony;

I.   If, upon motion by the Commission, this Court finds that Defendant Payne has failed to disclose any material asset or materially misstated the value of any asset in the financial statements or related documents described above, or in his testimony at an asset deposition, or has made any other material misstatement or omission in the financial statements or related documents described above, or in his testimony at an asset deposition, this Order shall be reopened and suspension of the judgment shall be lifted for the purpose of requiring payment of monetary relief in the amount of **Two Hundred Eighty-Nine Million Four Hundred Fifty-Three Thousand Seven Hundred Seventy-Nine Dollars ($289,453,779),** less the sum of any amounts paid to the Commission pursuant to this Section IV and any other payments made by other I Works Defendants.



*Provided, however,* that in all other respects this Order shall remain in full force and effect, unless otherwise ordered by the Court;

J. Upon any reinstatement of the monetary judgment, the Court shall make an express determination that the monetary judgment shall be immediately due and payable by Defendant Payne. The Commission shall be entitled to interest on the judgment, computed from the day of entry of this Order, at the rate prescribed by 18 U.S.C. § 1961, as amended, on any outstanding amounts not paid. The Commission shall be permitted to execute on the judgment immediately after the reinstatement of the monetary judgement and engage in discovery in aid of execution;

K. Defendant Payne agrees that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights to any payment or money judgment pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case. Defendant Payne further stipulates and agrees that the facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for such purposes;

L. Proceedings instituted under this Section are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order; and

M. Defendant Payne agrees that he will not, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity submit to any federal or state tax authority any return, amended



return, or other official document that takes a deduction for, or seeks a tax refund or other favorable treatment for, any payment made pursuant to this Order.  Defendant Payne further stipulates that he will not seek a credit or refund of any kind for federal or state taxes or penalties for tax years 2006 to 2010.  However, if Defendant Payne should otherwise obtain a credit or refund of any federal or state taxes or penalties paid for tax years 2006 to 2010, then Defendant Payne shall promptly pay the Commission the amount of such credit or refund, together with any interest that Defendant Payne has earned in connection with any such credit or refund.

## V.

### BAN ON USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant Payne and his Representatives are permanently restrained and enjoined from:

A. Disclosing to any third party, using, or benefitting from consumer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), or would otherwise allow the assessing of a charge against a consumer's account, of any person which the I Works Defendants obtained prior to entry of this Order in connection with the advertising, marketing, promotion, or offering of any Products;

B. Failing to provide to the Receiver such consumer information in all forms that is in Defendant Payne's possession, custody, or control within five (5) business days after entry of this Order;



C. Failing to dispose of such consumer information in all forms that is in Defendant Payne's possession, custody, or control within fifteen (15) days after entry of this Order. Disposal shall be by means that protect against unauthorized access to the consumer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the consumer information cannot practicably be read or reconstructed.

*Provided, however*, that consumer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## VI.

## MONITORING BY DEFENDANT PAYNE

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Defendant Payne, and his Representatives, in connection with the advertising, marketing, promoting, offering for sale, selling or provision of any Products on or through the Internet, the World Wide Web, or any web page or website, are hereby restrained and enjoined from failing to:

A. Obtain contact information from any prospective Marketing Affiliate or Client. In the case of a natural person, Defendant Payne shall obtain the prospective Marketing Affiliate's or Client's first and last name, physical address, country, telephone number, e-mail address, date of birth, and complete bank account information as to where payments are to be made. In the case of business entities, Defendant Payne shall obtain the first and last name, physical address, country, telephone number, e-mail address, and



date of birth for the natural person who owns, manages, or controls the prospective Marketing Affiliate or Client, and complete bank account information as to where payments are to be made;

B. Require each Affiliate Network to obtain from its Marketing Affiliates and maintain the identifying information set forth in Subsection A of this Section prior to the Marketing Affiliate's or Affiliate Network's participation in Defendant Payne's Affiliate Program;

C. Provide each prospective Marketing Affiliate or Client prior to such prospective Marketing Affiliate's acceptance into Defendant Payne's Affiliate Program or prior to Defendant Payne providing services to a prospective Client: (1) a copy of this Order; and (2) a Clear and Conspicuous statement in writing that engaging in acts or practices prohibited by this Order will result in immediate termination of any Marketing Affiliate or Client and forfeiture of all monies received from or owed to the Marketing Affiliate or Client;

D. Obtain from each prospective Marketing Affiliate or Client prior to such prospective Marketing Affiliate's acceptance into Defendant Payne's Affiliate Program or prior to Defendant Payne providing services to a prospective Client a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order;

E. Routinely monitor any marketing materials, including websites, emails, and pop-ups used by each Marketing Affiliate to advertise, promote, market, offer for sale, or sell any Defendant Payne Product(s);

F. Routinely monitor any marketing materials, including websites, emails, and pop-ups used by each Client to advertise, promote, market, offer for sale, or sell any Product(s) for which Defendant Payne is providing services;



G.  Promptly and completely investigate any complaints received by Defendant Payne through any source to determine whether any Marketing Affiliate or Client is engaging in acts or practices prohibited by this Order;

H.  Review the sales websites for each Marketing Affiliate advertising, promoting, marketing, offering for sale, or selling any of Defendant Payne's Product(s) at least once every thirty (30) days to determine whether any Marketing Affiliate is engaging in acts or practices prohibited by this Order;

I.  Review the sales websites advertising, promoting, marketing, offering for sale, or selling each Client's Product for which Defendant Payne provides services, at least once every thirty (30) days to determine whether any Client is engaging in acts or practices prohibited by this Order;

J.  Immediately halt the processing of any payments or charges generated by any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order;

K.  Fully refund, within five (5) business days of discovery, any consumer whose account Defendant Payne has processed a charge against whose sale originated from any Marketing Affiliate or Client that is discovered to have engaged in, or is engaging in, acts or practices prohibited by this Order since the date of Defendant Payne's most recent review of the Marketing Affiliate's or Client's marketing materials, including the Marketing Affiliate's or Client's websites; and

L.  Terminate, immediately, any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order and cease payments to any such person.

*Stipulated Final Order as to Bryce Payne*
*FTC v. Jeremy Johnson, et al.*



*Provided, however*, that this Section does not authorize or require Defendant Payne to take any action that violates any federal, state, or local law.

## VII.

## COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Complaint or related to the location of assets or business records of any I Works Defendant, Defendant Payne shall cooperate in good faith with the FTC and appear at such places and times as the FTC shall reasonably request, after three (3) business days written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC. If requested in writing by the FTC, Defendant Payne shall appear and provide truthful testimony in any trial, deposition, or other proceeding, or produce or authenticate, if possible, any documents, related to or associated with the transactions or the occurrences that are the subject of the Complaint, without the service of a subpoena.

## VIII.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant Payne shall obtain acknowledgments of receipt of this Order:

A. Defendant Payne, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For twenty (20) years after entry of this Order, Defendant Payne for any business that he, individually or collectively with any other I Works Defendant, is the majority owner or directly or indirectly controls, must deliver a copy of this Order to: (1) all principals,



officers, directors, and managers; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; (3) all third-party facilitators such as list brokers, telemarketers or any entity related to the obtaining or use of a Merchant Account; and (4) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  To all others, delivery must occur before they assume their responsibilities.

C.  From each individual or entity to which Defendant Payne delivered a copy of this Order, Defendant Payne must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## IX.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant Payne shall make timely submissions to the Commission:

A.  One year after entry of this Order, Defendant Payne must submit a compliance report, sworn under penalty of perjury:

    1.  Defendant Payne must:  (a) designate at least one telephone number and an email, physical, and postal address as points of contact, which representatives of the Commission may use to communicate with him; (b) identify all of his businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of any other I Works Defendant (which Defendant Payne must describe if he knows



or should know due to his own involvement); (d) describe in detail whether and how he is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission; and

2. Additionally, Defendant Payne must: (a) identify all his telephone numbers and all his email, Internet, physical, and postal addresses, including all residences; (b) identify all his titles and roles in all business activities, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

B. For twenty (20) years following entry of this Order, Defendant Payne must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

1. Defendant Payne must report any change in: (a) any designated point of contact; or (b) the structure of any entity that Defendant Payne has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order;

2. Additionally, Defendant Payne must report any change in his: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity in which Defendant Payne has any ownership interest or otherwise has direct

*Stipulated Final Order as to Bryce Payne*
*FTC v. Jeremy Johnson, et al.*



or indirect control, and identify the business's name, physical address, and Internet address, if any;

C. For eight (8) years following entry of this Order, Defendant Payne must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in his title or role in any business activity, including any business for which Defendant Payne performs services whether as an employee or otherwise and identify the business's name, physical address, and Internet address, if any;

D. Defendant Payne must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against him within fourteen (14) days of its filing;

E. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature; and

F. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. BRYCE PAYNE X110011.

## X.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant Payne must create certain records for twenty (20) years after entry of the Order, and to retain each such record for five (5) years.  Specifically, for any business in which Defendant Payne, individually or collectively with any other I Works Defendant, is a majority owner or directly or indirectly controls, he must maintain the following records:

A.  Accounting records showing the revenues from all Products sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.  Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.  Customer files obtained after entry of this Order showing the names, addresses, telephone numbers, dollar amounts paid, refunds and chargebacks issued, and the quantity and description of Products purchased;

D.  Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E.  All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

F.  A copy of each advertisement, marketing email, banner advertisement, pop-up advertisement, mobile advertisement, web page, direct mail piece, telemarketing script, text advertisement, or other marketing material.



Nothing in this Section shall relieve Defendant Payne of any responsibility under the Section entitled "Monitoring By Defendant Payne" above.

## XI.

### COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant Payne's compliance with this Order, including the financial representations upon which part of the Monetary Judgment was suspended, and any failure to transfer any assets as required by this Order:

A. Within fourteen (14) days of receipt of a written request from a representative of the Commission, Defendant Payne must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, the Commission is authorized to communicate directly with Defendant Payne.

C. The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant Payne or any individual or entity affiliated with Defendant Payne, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.



## XII.

## SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another.   If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

The parties, and their respective counsel, hereby consent to the terms and conditions of the Order as set forth above and consent to the immediate entry thereof.

**SO ORDERED,** this 21st____ day of ___October____, at _12:13 p_ __m., Pacific Daylight Time.



MIRANDA M. DU
United States District Judge

*Stipulated Final Order as to Bryce Payne*
*FTC v. Jeremy Johnson, et al.*

**STIPULATED AND AGREED TO BY:**

Date: 5/9/2013

Defendant Bryce Payne

**For Plaintiff Federal Trade Commission:**

Date: 8/7/2013

Collot Guerard
J. Ronald Brooke, Jr.
Janice L. Kopec
Dotan Weinman
Attorneys for Plaintiff
Federal Trade Commission
600 Pennsylvania Avenue, NW
Room 286
Washington, DC 20580

*Stipulated Final Order as to Bryce Payne*
*FTC v. Jeremy Johnson, et al.*                    Page 37 of 37

Attachment A

Assets to be turned over to the Federal Trade Commission or its designated transferee pursuant to the Final Order for Permanent Injunction and Monetary Judgment as to Bryce Payne:

1   $20,000 in cash;

2   Surrender value of the following three life insurance policies;

    a.  Principal Financial Policy No. 6454419,
    b.  Farmers Insurance Policy No. 005621414u, and
    c.  Farmers Insurance Policy No. 005621415u;

3   Funds in the Royal Alliance Mutual Fund held in the name of Bryce Payne at Iworld Financial Center, Broker Account 037-329331;

4   One (1) Gold Coin; and

5   All interest in a claim for $150,000 in Brick and Motor Investments, currently in bankruptcy.