UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

**FEDERAL TRADE COMMISSION,**
                       **Plaintiff,**

         v.

**JEREMY JOHNSON, individually, as officer of
Defendants I Works, Inc.; Cloud Nine, Inc.; CPA
Upsell, Inc.; Elite Debit, Inc.; Internet Economy,
Inc.; Market Funding Solutions, Inc.; and
Success Marketing, Inc.; as a member of
Defendant Network Agenda LLC; and as the *de
facto* principal of numerous Defendant Shell
Companies;  I WORKS, INC.,** *et al.*
                       **Defendants.**

**CV 10-2203 MMD (GWF)**

### STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND
### MONETARY JUDGMENT AS TO DEFENDANT KEVIN PILON

On December 21, 2010, Plaintiff, the Federal Trade Commission ("FTC" or "Commission")

filed a redacted Complaint for permanent injunction and other relief pursuant to Section 13(b) of

the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 917(c) of the

Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), alleging that defendants Jeremy

Johnson, Duane Fielding, Andy Johnson, Loyd Johnston, Scott Leavitt, Scott Muir, Bryce Payne,

Kevin Pilon, Ryan Riddle, Terrason Spinks, I Works, Inc., Anthon Holdings Corp., Cloud Nine

Marketing, Inc., CPA Upsell, Inc., Elite Debit, Inc., Employee Plus, Inc., Internet Economy, Inc.,

Market Funding Solutions, Inc., Network Agenda, LLC, Success Marketing, Inc., Big Bucks Pro,

Inc., Blue Net Progress, Inc., Blue Streak Processing, Inc., Bolt Marketing, Inc., Bottom Dollar,

*Stipulated Final Order as to Kevin Pilon*
*FTC v. Jeremy Johnson, et al.*



Inc., Bumble Marketing, Inc., Business First Inc., Business Loan Success, Inc., Cold Bay Media,

Inc., Costnet Discounts, Inc., CS Processing, Inc., Cutting Edge Processing, Inc., Diamond J

Media, Inc., Ebusiness First, Inc., Ebusiness Success, Inc., Ecom Success, Inc., Excess Net

Success, Inc., Fiscal Fidelity, Inc., Fitness Processing, Inc., Funding Search Success, Inc.,

Funding Success, Inc., GG Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc.,

Hooper Processing, Inc., Internet Business Source, Inc., Internet Fitness, Inc., Jet Processing,

Inc., JRB Media, Inc., Lifestyles For Fitness, Inc., Mist Marketing, Inc., Money Harvest, Inc.,

Monroe Processing, Inc., Net Business Success, Inc., Net Commerce, Inc., Net Discounts, Inc.,

Net Fit Trends, Inc., Optimum Assistance, Inc., Power Processing, Inc., Premier Performance,

Inc., Pro Internet Services, Inc., Razor Processing, Inc., Rebate Deals, Inc., Revive Marketing,

Inc., Simcor Marketing, Inc., Summit Processing, Inc., The Net Success, Inc., Tranfirst, Inc.,

Tran Voyage, Inc., Unlimited Processing, Inc., and xCel Processing, Inc., have engaged in

violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 917(c) of EFTA, 15 U.S.C.

§ 1693o(c) ("EFTA"), and Section 205.10(b) of Regulation E ("Reg E"), 12 C.F.R. § 205.10(b),

in connection with the marketing and sale of Internet-based information products and services.

The Commission and defendant Kevin Pilon ("Pilon") have agreed to the entry of, and request

the Court to enter, this Stipulated Final Order for Permanent Injunction and Monetary Judgment

as to Pilon ("Order"), to resolve all matters of dispute in this action between them.

**THEREFORE, IT IS STIPULATED, AGREED, AND ORDERED**

as follows:

1.      This Court has jurisdiction over the subject matter of this case and over the defendant

      Pilon;

2. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b);

3. The activities alleged in the Complaint are in or affecting "commerce" as that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44;

4. The Complaint states a claim upon which relief may be granted under Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b); under Section 917(c) of EFTA, 15 U.S.C. § 1693o(c); and Reg E, 12 C.F.R. § 205.10(b);

5. Defendant Pilon has entered into this Order freely and without coercion, and he acknowledges that he has read the provisions of this Order and is prepared to abide by them;

6. This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law;

7. Defendant Pilon waives all rights to seek appellate review or otherwise challenge or contest the validity of this Order and waives and releases any claim he may have against the Commission, its employees, representatives, or agents, and the Receiver and the Receiver's employees, representatives, or agents;

8. Defendant Pilon agrees that this Order does not entitle him to seek or to obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996), and he further waives any right to attorneys' fees that may arise under said provision of law;

9. Defendant Pilon neither admits nor denies any allegations in the Complaint. Only for purposes of this action, Defendant Pilon admits the facts necessary to establish jurisdiction and as otherwise specifically stated in this Order;

*Stipulated Final Order as to Kevin Pilon*
*FTC v. Jeremy Johnson, et al.*          Page 3 of 36



10.     This Order is remedial in nature and no portion of any payments paid herein shall be deemed or construed as payment of a fine, damages, penalty, or punitive assessment; and

11.     Entry of this Order is in the public interest.

## ORDER

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.      **"Affiliate Network"** means any Person who provides Defendant Pilon with Marketing Affiliates for an Affiliate Program or whom Defendant Pilon contracts with as a Marketing Affiliate to promote any Product.

2.      **"Affiliate Program(s)"** means any arrangement under which Defendant Pilon pays, offers to pay, or provides or offers to provide any form of consideration to any third party to:  (1) provide Defendant Pilon or his Clients with, or refer to Defendant Pilon or his Clients, potential or actual customers; or (2) otherwise market, advertise, or offer for sale any Product on behalf of Defendant Pilon or his Clients.

3.      **"Assists others"** or **"Assisting others"** means providing assistance or support to any person or entity, including, but not limited to, providing any of the following services: (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any promotional material; (3) providing names of, or assisting in the generation of, potential customers; (4) verifying, processing, fulfilling, or arranging for the fulfillment of orders; (5) hiring, recruiting, or training personnel; (6) performing promotional or marketing services of any kind; or (7) processing or arranging



for processing of credit cards, debit cards, Automated Clearinghouse ("ACH") debits, remotely-created checks, or payments through any other system.

4.   **"Clear and Conspicuous"** or **"Clearly and Conspicuously"** mean:

a.   In print communications, the message shall be presented in a manner that stands out from the accompanying text, so that it is sufficiently prominent, because of its type size, contrast to the background against which it appears, location, or other characteristics, for an ordinary consumer to notice, read, and comprehend it in relation to any claim it may be modifying;

b.   In communications made through an electronic medium (such as television, video, radio, and interactive media such as the Internet, online services, mobile services and software), the message shall be presented simultaneously in both the audio and visual portions of the communication.  In any communication presented solely through visual or audio means, the message shall be made through the same means in which the communication is presented.  In any communication disseminated by means of an interactive electronic medium such as software, the Internet, online services, or mobile services, a disclosure must be unavoidable and presented prior to the consumer incurring any financial obligation.  Any audio message shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it in relation to any claim it may be modifying.  Any visual message shall be presented in a manner that stands out in the context in which it is presented, so that it is sufficiently prominent, because of its size and shade, contrast to the background against which it appears, length of time it appears



1    on the screen, and its location, for an ordinary consumer to notice, read, and comprehend

2    it in relation to any claim it may be modifying; and

3       c.  Regardless of the medium used to disseminate it, the message shall be in understandable

4    language and syntax.  Nothing contrary to, inconsistent with, or in mitigation of the

5    message shall be used in any communication.

6

7  5.    "**Client**" means any third party to which Defendant Pilon provides any of the services

8    listed in the definition of Assisting others.

9  6.    "**Continuity Program**" means any plan, arrangement, or system under which a

10    consumer is periodically charged to maintain a service or periodically receive any

11    Product, including, but not limited to, access to a "member only" website.

12

13  7.    "**Corporate Defendants**" means I Works, Inc., Anthon Holdings Corp., Cloud Nine

14    Marketing, Inc., CPA Upsell, Inc., Elite Debit, Inc., Employee Plus, Inc., Internet

15    Economy, Inc., Market Funding Solutions, Inc., Network Agenda, LLC, Success

16    Marketing, Inc., Big Bucks Pro, Inc., Blue Net Progress, Inc., Blue Streak Processing,

17    Inc., Bolt Marketing, Inc., Bottom Dollar, Inc., Bumble Marketing, Inc., Business First

18    Inc., Business Loan Success, Inc., Cold Bay Media, Inc., Costnet Discounts, Inc., CS

19    Processing, Inc., Cutting Edge Processing, Inc., Diamond J Media, Inc., Ebusiness First,

20    Inc., Ebusiness Success, Inc., Ecom Success, Inc., Excess Net Success, Inc., Fiscal

21    Fidelity, Inc., Fitness Processing, Inc., Funding Search Success, Inc., Funding Success,

22    Inc., GG Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Hooper

23    Processing, Inc., Internet Business Source, Inc., Internet Fitness, Inc., Jet Processing,

24

25    Inc., JRB Media, Inc., LifeStyles for Fitness, Inc., Mist Marketing, Inc., Money Harvest,

26

27

28  *Stipulated Final Order as to Kevin Pilon*

Inc., Monroe Processing, Inc., Net Business Success, Inc., Net Commerce, Inc., Net
Discounts, Inc., Net Fit Trends, Inc., Optimum Assistance, Inc., Power Processing, Inc.,
Premier Performance, Inc., Pro Internet Services, Inc., Razor Processing, Inc., Rebate
Deals, Inc., Revive Marketing, Inc., Simcor Marketing, Inc., Summit Processing, Inc.,
The Net Success, Inc., Tranfirst, Inc., Tran Voyage, Inc., Unlimited Processing, Inc., and
xCel Processing, Inc., and by whatever other names each may be known, and any
subsidiaries, affiliates, any fictitious business entities or business names created or used
by these entities, or any of them, and their successors and assigns.

8.     **"Document"** is synonymous in meaning and equal in scope to the usage of the term in
Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts,
Internet sites, Webpages, Websites, electronic correspondence, including e-mail and
instant messages, photographs, audio and video recordings, contracts, accounting data,
advertisements (including, but not limited to, advertisements placed on the World Wide
Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web
pages, books, written or printed records, handwritten notes, telephone logs, telephone
scripts, receipt books, ledgers, personal and business canceled checks and check
registers, bank statements, appointment books, computer records, and other data
compilations from which information can be obtained and translated.  A draft or
non-identical copy is a separate document within the meaning of the term.

9.     **"Endorsement"** means any advertising message (including verbal statements,
demonstrations, or depictions of the name, signature, likeness or other identifying
personal characteristics of an individual or the name or seal of an organization), which



1    message consumers are likely to believe reflects the opinions, beliefs, findings, or

2    experience of a party other than the sponsoring advertiser.

3    10.    **"Endorser"** means the party whose opinions, beliefs, findings, or experience the

4    message appears to reflect, and may be an individual, group or institution.

5

6    11.    **"Express Verifiable Authorization"** means:

7    a.    Express written authorization by the customer, which includes the customer's

8    signature, and shall include an electronic or digital form of signature, to the extent

9    that such form of signature is recognized as a valid signature under applicable federal

10    law or state contract law;

11    b.    Express oral authorization which is audio-recorded and made available upon request

12    to the customer, and the customer's bank or other billing entity, and which evidences

13    clearly both the customer's authorization of payment for the goods or services that

14    are the subject of the transaction and the customer's receipt of all of the following

15    information:

16

17    (i)    An accurate description, clearly and conspicuously stated, of the goods or

18    services for which payment authorization is sought;

19

20    (ii)    The number of debits, charges, or payments (if more than one);

21    (iii)    The date(s) the debit(s), charge(s), or payment(s) will be submitted for

22    payment;

23

24    (iv)    The amount(s) of the debit(s), charge(s), or payment(s);

25    (v)    The customer's name;

26

27

28    *Stipulated Final Order as to Kevin Pilon*
     *FTC v. Jeremy Johnson, et al.*          Page 8 of 36



(vi)    The customer's billing information, identified with sufficient specificity such that the customer understands what account will be used to collect payment for the goods or services that are the subject of the transaction;

(vii)    A telephone number for customer inquiry that is answered during normal business hours; and

(viii)    The date of the customer's oral authorization; or

c.   Written confirmation of the transaction, identified in a Clear and Conspicuous manner as such on the outside of the envelope, sent to the customer via first class mail prior to the submission for payment of the customer's billing information, and that includes all of the information contained in b(i)-(vii) above and a Clear and Conspicuous statement of the procedures by which the customer can obtain a refund in the event the confirmation is inaccurate; *provided,* however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

12.    "**Financial Institution**" means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)). An institution that is significantly engaged in financial activities is a Financial Institution.

13.    "**Forced Upsell**" means the automatic bundling of any additional Product with the purchase of a Primary Product. For purposes of this Order, a Forced Upsell shall include,



but not be limited to, any bundled additional Product from which consumers cannot opt-out, as well as any Upsell that uses a pre-checked checkbox.

14. **"In Close Proximity"** shall mean for any communication presented solely through visual means:  on the same webpage, online service page, mobile device screen, or other electronic page, and immediately adjacent to the cost-related claim and viewable in conjunction with the cost-related claim in such a manner that the communication is viewable without requiring the consumer to scroll up, down, or sideways, or otherwise adjust their browser window or mobile device window in any way.  Representations or disclosures in response to cost-related claims that are accessed or displayed through hyperlinks, pop-ups, interstitials, or other means are NOT "In Close Proximity."

15. "**Individual Defendants**" means Jeremy Johnson, Duane Fielding, Andy Johnson, Loyd Johnston, Scott Leavitt, Scott Muir, Bryce Payne, Kevin Pilon, Ryan Riddle, and Terrason Spinks.

16. **"Investment Opportunity"** means anything, tangible or intangible, including a program or plan, that is offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, earnings, profit, or appreciation.

17. **"I Works Defendant(s)"** means the Corporate Defendants and the Individual Defendants, individually, collectively, or in any combination.

18. **"Marketing Affiliate"** means any person or entity, including third-party marketers and Affiliate Networks, who participates in an Affiliate Program.

19. **"Material"** means likely to affect a person's choice of, or conduct regarding, a Product.

20. **"Material Connection"** means any relationship that materially affects the weight or credibility of any Endorsement and that would not be reasonably expected by consumers.

21. "**Material Fact**" means any statement that is likely to affect a person's choice of, or conduct regarding, a Product.

22. **"Merchant Account"** means any account with an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

23. **"Negative Option Feature"** means, in an offer or agreement to sell or provide any Product, a provision under which the customer's silence or failure to take an affirmative action to reject a Product or to cancel the agreement is interpreted by the seller or provider as acceptance of the offer.

24. "**Plaintiff**" or "**Commission**" or "**FTC**" means the Federal Trade Commission.

25. **"Primary Product"** means the chief or principal Product that is the subject of the marketing materials or sales offers.

26. "**Product**" means products, goods, and services, and includes online memberships.

27. **"Representatives"** means Defendant Pilon's agents, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, and those persons in active concert or participation with Defendant Pilon, who receive actual notice of this Order by personal service or otherwise.

28. **"Sensitive Personal Information"** means nonpublic information concerning an individual consumer, including, but not limited to: Social Security number, in whole or



in part; credit and/or debit card information, in whole or in part, including credit and/or debit card number, expiration date, and transaction detail records; Financial Institution account information or transaction records, in whole or in part, including the ABA routing number, account number, check number, and transaction detail records; and account information or transaction records relating to nontraditional payment systems, such as any telecommunications billing system, PayPal, and BillMeLater.

29.     "**Upsell**" shall mean any Product that is offered to the consumer at the time the consumer purchases the Primary Product.

30.     The words "**and**" and "**or**" shall be understood to have both conjunctive and disjunctive meanings.

# I.

## CONDUCT PROHIBITIONS

**IT IS THEREFORE ORDERED** that defendant Pilon, whether acting directly or through any officer, agent, servant, employee, sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, is hereby permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell, or Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;



B. Holding any ownership or other financial interest in any business entity that engages in or Assists others in the advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;

C. Serving as an officer, director, or manager of any business entity, unless Defendant Pilon actually controls, participates in, or has knowledge of the daily operations of that entity;

D. Acting as a signatory on any account for any business entity unless Defendant Pilon controls, participates in, or has knowledge of the daily operations of that entity; and

E. Applying for any Merchant Account for any business entity unless Defendant Pilon controls, participates in, or has knowledge of the daily operations of that business entity.

*Provided further*, nothing in this Order shall be construed as an exception to this Section I.

## II.

## PROHIBITED PRACTICES

**IT IS FURTHER ORDERED** that:

A. In connection with the advertising, marketing, promotion, offering for sale, or sale of any Product, Defendant Pilon and his Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device are hereby restrained and enjoined from:

    1.  Making or Assisting others in making, either directly or indirectly, expressly or by implication, any false or misleading statement or representation of Material Fact;

    2.  Misrepresenting or Assisting others in misrepresenting, either directly or indirectly, expressly or by implication:



a.   That government grants are generally available to individuals to pay personal expenses;

b.   That consumers will be able to find government grants to pay personal expenses using materials provided by, marketed by, or advertised by Defendant Pilon;

c.   That consumers who purchase an Investment Opportunity provided by, marketed by, or advertised by Defendant Pilon are likely to make money;

d.   The income, earnings, profits, or sales volume likely to be achieved from an Investment Opportunity;

e.   Any Material aspect of a Continuity Program or of a Negative Option Feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s);

f.   The total cost to purchase, receive, or use, and the quantity of, any Product that is the subject of the sales offer;

g.   The risks associated with a Product, including that a Product is Risk-Free, Low Risk, or otherwise results in no obligation to the consumer;

h.   Any Material restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

i.   Any Material aspect of the performance, efficacy, nature, or central characteristics of any Product that is the subject of the sales offer;

  j. Any Material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

  k. The status of any user or Endorser of a Product, including, but not limited to, misrepresenting that the user or Endorser is an independent user or ordinary, unbiased consumer of the Product, or

  l. That consumer Endorsements reflect typical consumer experiences with a Product;

3. Failing to disclose Clearly and Conspicuously:

  a. The total cost to purchase, receive, or use any Product that is the subject of the sales offer;

  b. The total cost to purchase, receive, or use any Product in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

  c. The total cost to purchase, receive, or use any Product subject to the sales offer, in equal or greater size and prominence, and In Close Proximity to, any cost-related claim including, but not limited to, any claim that the Product is "free," has a minimal cost, or is being offered on a trial basis or at an introductory or limited-time reduced cost;

  d. All Material terms and conditions of any Negative Option Feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the



charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s);

e.  All Material terms and conditions of any Negative Option Feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s) in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

f.  All Material terms and conditions of any Continuity Plan;

g.  All Material terms and conditions of any Continuity Plan in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

h.  All Material terms and conditions of any Continuity Plan or Negative Option Feature in equal or greater size and prominence, and In Close Proximity to, any cost-related claim including, but not limited to, any claim that a product is "free" or "no cost," if a cost-related claim is made in the course of advertising, offering for sale, or otherwise marketing any Product; and

i.  All Material terms and conditions of any Continuity Program or Negative Option Feature in equal or greater size and prominence, and In Close Proximity to, any claim about risks associated with a Product, including claims that a Product is



Risk-Free, Low Risk, or otherwise results in no obligation to the consumer, if such claim is made in the course of advertising, offering for sale, or otherwise marketing any Product;

4. Failing to disclose Clearly and Conspicuously any other Material information, including, but not limited to:

    a. The quantity of any Product that is the subject of the sales offer;

    b. Any Material term or condition including, but not limited to, any restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

    c. Any Material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for any Product including, but not limited to, if there is a policy of not making refunds, cancellations, exchanges, or repurchases;

    d. That Endorsers received funds or some other benefit, directly or indirectly, from any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement including, but not limited to, if Endorsers received funds or some other benefit from a non-profit charitable fund that is directly or indirectly associated with any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement, *provided that*, this provision shall not apply where (1) the Endorser is an expert or Person known to a significant portion of the viewing public, and (2) the



endorsement appears in an advertisement where payment would be ordinarily

expected by viewers; and

    e.  Any Material Connection, when one exists, between any user or Endorser and any

other individual or entity manufacturing, advertising, labeling, promoting,

offering for sale, selling, or distributing a Product;

B.  Defendant Pilon and his Representatives, whether acting directly or through any entity,

corporation, subsidiary, division, affiliate, or other device are hereby restrained and

enjoined from charging or debiting a consumer's bank, credit, or other financial account,

or otherwise assessing charges to a consumer, without first obtaining the consumer's

Express Verifiable Authorization; and

C.  In connection with applying for or maintaining Merchant Accounts, Defendant Pilon and

his Representatives, whether acting directly or through any entity, corporation,

subsidiary, division, affiliate, or other device are hereby permanently restrained and

enjoined from:

    1.  Making or Assisting others in making, expressly or by implication, any false or

misleading statement or representation including, but not limited to, any statement or

representation concerning the identity of the owner, manager, director, or officer of

the applicant for or holder of a Merchant Account, to an acquiring bank or other

Financial Institution, service provider, payment processor, independent sales

organization, or other entity that enables an individual, a business, or other

organization to accept payments of any kind; or



2. Failing to disclose to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind any Material information related to a Merchant Account including, but not limited to, the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, and any connection between the owner, manager, director, or officer of the applicant for or holder of a Merchant Account and any third person who has been or is placed in a Merchant Account monitoring program, had a Merchant Account terminated by a payment processor or a Financial Institution, or has been fined or otherwise disciplined in connection with a Merchant Account by a payment processor or a Financial Institution.

## III

## PROHIBITION AGAINST VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, or sale of any Product, Defendant Pilon and his Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby permanently restrained and enjoined from:

A. Engaging in any recurring debiting of a consumer's account without first obtaining a valid written pre-authorization for preauthorized electronic fund transfers from the consumer's account, which pre-authorization is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, as



more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff

Commentary to Regulation E, 12 C.F.R. § 205.10(b) (5) and (6), Supp. I;

B.  Engaging in any recurring debiting of a consumer's account without first providing a

copy of a valid written pre-authorization to the consumer for preauthorized electronic

fund transfers from the consumer's account, which copy is clear and readily

understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as

required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of

Regulation E, as more fully set out in Section 205.10 of the Federal Reserve Board's

Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b)(5) and (6), Supp.I;

and

C.  Failing to maintain procedures reasonably adapted to avoid an unintentional failure to

obtain a written authorization for preauthorized electronic fund transfers, as required in

Section 205.10(b)(7) of the Federal Reserve Board's Official Staff Commentary to

Regulation E.

## IV.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that monetary judgment is entered in favor of the

Commission and against Defendant Pilon in the amount of **Seven Million Five Hundred Eleven**

**Thousand Dollars ($7,511,000.00)**, which represents the total unreimbursed consumer injury

caused by the Defendant Pilon's practices alleged in the Complaint, *provided however*, full

payment of the foregoing amount shall be suspended upon satisfaction of the obligations set



1   forth in paragraphs A and B of this Section, and subject to the conditions set forth in paragraphs

2   C, D, and E of this Section:

3    A. Effective upon the entry of this Order, Defendant Pilon shall surrender to the

4       Commission all interest he has in funds in any accounts in the names of defendants

5       Bottom Dollar, Inc., Bumble Marketing, Inc, Costnet Discounts, Inc., Cutting Edge

6       Processing, Inc., Ebusiness First, Inc., Excess Net Success, Inc., Fiscal Fidelity, Inc.,

7       Fitness Processing, Inc., GG Processing, Inc., Internet Business Source, Inc., Net

8       Business Success, Inc., Net Fit Trends, Inc., Power Processing, Inc., Rebate Deals, Inc.,

9       The Net Success, Inc., and xCel Processing, Inc;

10    B. Defendant Pilon or his Representative, shall, within five (5) days of entry of this Order,

11      effect the transfer of $1,000 to the Commission by certified check(s) or other guaranteed

12      funds payable to the Federal Trade Commission, Financial Management Office, or by

13      wire transfer in accordance with directions provided by the Commission.  The check(s) or

14      written confirmation of the wire transfer(s) shall be delivered to:  Associate Director,

15      Division of Marketing Practices, 600 Pennsylvania Avenue, NW, H-286, Washington,

16      DC  20580.  Defendant Pilon shall cooperate in good faith with the FTC to effectuate

17      these transfers, and shall, if needed, execute such documents as are necessary to remit the

18      $1,000 to the Commission;

19    C. All funds paid to the Commission pursuant to this Order shall be deposited into an

20      account administered by the Commission or its agent to be used for equitable relief,

21      including but not limited to consumer redress, and any attendant expenses for the

22      administration of such equitable relief.  In the event that direct redress to consumers is

*Stipulated Final Order as to Kevin Pilon*
*FTC v. Jeremy Johnson, et al.*       Page 21 of 36



wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to I Works Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement.  Defendant Pilon shall have no right to challenge the Commission's choice of remedies under this Section. Defendant Pilon shall have no right to contest the manner of distribution chosen by the Commission;

D. Defendant Pilon relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law.  Defendant Pilon shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise;

E. The Commission's agreement to this Order is expressly premised upon:  (1) the truthfulness, accuracy, and completeness of Defendant Pilon's sworn financial statements and supporting documents submitted to the Commission, as well as all subsequent addenda thereto, all of which Defendant Pilon asserts were truthful, accurate, and complete at the time they were submitted; and (2) the truthfulness, accuracy, and completeness of Defendant Pilon's testimony at any asset deposition.  Defendant Pilon and the Commission stipulate that Defendant Pilon's financial statements and supporting documents and testimony, if any, provide the basis for the assets turned over to the FTC in this Order and include material information upon which the Commission relied in negotiating and agreeing to this Order.  Defendant Pilon and the Commission stipulate that the Commission has relied on the truthfulness, accuracy, and completeness of

Defendant Pilon's financial statements and supporting documents and any testimony in agreeing to the terms of this Order and that the Commission would not have entered into this Order but for the truthfulness, accuracy, and completeness of Defendant Pilon's financial statements and supporting documents and any testimony;

F.  If, upon motion by the Commission, this Court finds that Defendant Pilon has failed to disclose any material asset or materially misstated the value of any asset in the financial statements or related documents described above, or in his testimony at any asset deposition, or has made any other material misstatement or omission in the financial statements or related documents described above, or in his testimony at any asset deposition, this Order shall be reopened and suspension of the judgment shall be lifted for the purpose of requiring payment of monetary relief in the amount of **Seven Million Five Hundred Eleven Thousand Dollars ($7,511,000.00),** less the sum of any amounts paid to the Commission pursuant to this Section IV. *Provided, however,* that in all other respects this Order shall remain in full force and effect, unless otherwise ordered by the Court;

G.  Upon any reinstatement of the monetary judgment, the Court shall make an express determination that the monetary judgment shall be immediately due and payable by Defendant Pilon. The Commission shall be entitled to interest on the judgment, computed from the day of entry of this Order, at the rate prescribed by 18 U.S.C. § 1961, as amended, on any outstanding amounts not paid. The Commission shall be permitted to execute on the judgment immediately after the reinstatement of the monetary judgement and engage in discovery in aid of execution;



H. Defendant Pilon agrees that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights to any payment or money judgment pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case. Defendant Pilon further stipulates and agrees that the facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for such purposes;

I. Proceedings instituted under this Section are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order; and

J. Defendant Pilon agrees that he will not, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity submit to any federal or state tax authority any return, amended return, or other official document that takes a deduction for, or seeks a tax refund or other favorable treatment for, any payment made pursuant to this Order. Defendant Pilon further stipulates that he will not seek a credit or refund of any kind for federal or state taxes or penalties for tax years 2006 to 2010. However, if Defendant Pilon should otherwise obtain a credit or refund of any federal or state taxes or penalties paid for tax years 2006 to 2010, then Defendant Pilon shall promptly pay the Commission the amount of such credit or refund, together with any interest that Defendant Pilon has earned in connection with any such credit or refund.

## V.

### BAN ON USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant Pilon and his Representatives are permanently restrained and enjoined from:

A. Disclosing to any third party, using, or benefitting from consumer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), or would otherwise allow the assessing of a charge against a consumer's account, of any person which the I Works Defendants obtained prior to entry of this Order in connection with the advertising, marketing, promotion, or offering of any Product;

B. Failing to provide to the Receiver such consumer information in all forms that is in Defendant Pilon's possession, custody, or control within five (5) business days after entry of this Order; and

C. Failing to dispose of such consumer information in all forms that is in Defendant Pilon's possession, custody, or control within fifteen (15) days after entry of this Order. Disposal shall be by means that protect against unauthorized access to the consumer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the consumer information cannot practicably be read or reconstructed.



*Provided, however*, that consumer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

**VI.**

**MONITORING BY DEFENDANT PILON**

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Defendant Pilon, and his Representatives, in connection with the advertising, marketing, promoting, offering for sale, selling or provision of any Products on or through the Internet, the World Wide Web, or any web page or website, are hereby restrained and enjoined from failing to:

A. Obtain contact information from any prospective Marketing Affiliate or Client. In the case of a natural person, Defendant Pilon shall obtain the prospective Marketing Affiliate's or Client's first and last name, physical address, country, telephone number, e-mail address, date of birth, and complete bank account information as to where payments are to be made. In the case of business entities, Defendant Pilon shall obtain the first and last name, physical address, country, telephone number, e-mail address, and date of birth for the natural person who owns, manages, or controls the prospective Marketing Affiliate or Client, and complete bank account information as to where payments are to be made;

B. Require each Affiliate Network to obtain from its Marketing Affiliates and maintain the identifying information set forth in Subsection A of this Section prior to the Marketing Affiliate's or Affiliate Network's participation in Defendant Pilon's Affiliate Program;



C. Provide each prospective Marketing Affiliate or Client prior to such prospective Marketing Affiliate's acceptance into Defendant Pilon's Affiliate Program or prior to Defendant Pilon providing services to a prospective Client: (1) a copy of this Order; and (2) a Clear and Conspicuous statement in writing that engaging in acts or practices prohibited by this Order will result in immediate termination of any Marketing Affiliate or Client and forfeiture of all monies received from or owed to the Marketing Affiliate or Client;

D. Obtain from each prospective Marketing Affiliate or Client prior to such prospective Marketing Affiliate's acceptance into Defendant Pilon's Affiliate Program or prior to Defendant Pilon providing services to a prospective Client a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order;

E. Routinely monitor any marketing materials, including websites, emails, and pop-ups used by each Marketing Affiliate to advertise, promote, market, offer for sale, or sell any Defendant Pilon Product(s);

F. Routinely monitor any marketing materials, including websites, emails, and pop-ups used by each Client to advertise, promote, market, offer for sale, or sell any Product(s) for which Defendant Pilon is providing services;

G. Promptly and completely investigate any complaints received by Defendant Pilon through any source to determine whether any Marketing Affiliate or Client is engaging in acts or practices prohibited by this Order;

H. Review the sales websites for each Marketing Affiliate advertising, promoting, marketing, offering for sale, or selling any of Defendant Pilon's Product(s) at least once



every thirty (30) days to determine whether any Marketing Affiliate is engaging in acts or practices prohibited by this Order;

I. Review the sales websites advertising, promoting, marketing, offering for sale, or selling each Client's Product for which Defendant Pilon provides services, at least once every thirty (30) days to determine whether any Client is engaging in acts or practices prohibited by this Order;

J. Immediately halt the processing of any payments or charges generated by any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order;

K. Fully refund, within five (5) business days of discovery, any consumer whose account Defendant Pilon has processed a charge against whose sale originated from any Marketing Affiliate or Client that is discovered to have engaged in, or is engaging in, acts or practices prohibited by this Order since the date of Defendant Pilon's most recent review of the Marketing Affiliate's or Client's marketing materials, including the Marketing Affiliate's or Client's websites; and

L. Terminate, immediately, any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order and cease payments to any such person.

*Provided, however*, that this Section does not authorize or require Defendant Pilon to take any action that violates any federal, state, or local law.



# VII.

## COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Complaint or related to the location of assets or business records of any I Works Defendant, Defendant Pilon shall cooperate in good faith with the FTC and appear at such places and times as the FTC shall reasonably request, after three (3) business days written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC.  If requested in writing by the FTC, Defendant Pilon shall appear and provide truthful testimony in any trial, deposition, or other proceeding, or produce or authenticate, if possible, any documents, related to or associated with the transactions or the occurrences that are the subject of the Complaint, without the service of a subpoena.

# VIII.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED**

A. Defendant Pilon, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For eight (8) years after entry of this Order, Defendant Pilon for any business that he, individually or collectively with any other I Works Defendant, is the majority owner or directly or indirectly controls, must deliver a copy of this Order to:  (1) all principals, officers, directors, and managers; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; (3) all third-party



facilitators such as list brokers, telemarketers or any entity related to the obtaining or use of a Merchant Account; and (4) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  To all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which Defendant Pilon delivered a copy of this Order, Defendant Pilon must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## IX.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant Pilon shall make timely submissions to the Commission:

A. One year after entry of this Order, Defendant Pilon must submit a compliance report, sworn under penalty of perjury:

1. Defendant Pilon must:  (a) designate at least one telephone number and an email, physical, and postal address as points of contact, which representatives of the Commission may use to communicate with him; (b) identify all of his businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of any other I Works Defendant (which Defendant Pilon must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how he

is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission; and

2. Additionally, Defendant Pilon must:  (a) identify all his telephone numbers and all his email, Internet, physical, and postal addresses, including all residences; (b) identify all his titles and roles in all business activities, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

B. For eight (8) years following entry of this Order, Defendant Pilon must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

1. Defendant Pilon must report any change in:  (a) any designated point of contact; or (b) the structure of any entity that Defendant Pilon has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order;

2. Additionally, Defendant Pilon must report any change in his:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity in which Defendant Pilon has any ownership interest or otherwise has direct



or indirect control, and identify the business's name, physical address, and Internet address, if any;

C. For eight (8) years following entry of this Order, Defendant Pilon must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in his title or role in any business activity, including any business for which Defendant Pilon performs services whether as an employee or otherwise and identify the business's name, physical address, and Internet address, if any;

D. Defendant Pilon must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against him within fourteen (14) days of its filing;

E. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature; and

F. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin: FTC v. KEVIN PILON X110011.



# X.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant Pilon must create certain records for eight (8) years after entry of the Order, and to retain each such record for five (5) years. Specifically, for any business in which Defendant Pilon, individually or collectively with any other I Works Defendant, is a majority owner or directly or indirectly controls, he must maintain the following records:

A. Accounting records showing the revenues from all Products sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B. Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C. Customer files obtained after entry of this Order showing the names, addresses, telephone numbers, dollar amounts paid, refunds and chargebacks issued, and the quantity and description of Products purchased, to the extent such information is obtained in the ordinary course of business;

D. Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E. All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and



F. A copy of each advertisement, marketing email, banner advertisement, pop-up advertisement, mobile advertisement, web page, direct mail piece, telemarketing script, text advertisement, or other marketing material.

Nothing in this Section shall relieve Defendant Pilon of any responsibility under the Section entitled "Monitoring By Defendant Pilon" above.

## XI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant Pilon's compliance with this Order, including the financial representations upon which part of the Monetary Judgment was suspended, and any failure to transfer any assets as required by this Order:

A. Within fourteen (14) days of receipt of a written request from a representative of the Commission, Defendant Pilon must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, the Commission is authorized to communicate directly with Defendant Pilon.

C. The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant



Pilon or any individual or entity affiliated with Defendant Pilon, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XII.

## SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another.  If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

The parties, and their respective counsel, hereby consent to the terms and conditions of the Order as set forth above and consent to the immediate entry thereof.

**SO ORDERED,** this ____ day of _____, at ____m., Pacific Daylight Time.
21st          October              12:13 p

_____
MIRANDA M. DU
United States District Judge

1

2   **STIPULATED AND AGREED TO BY:**

3

4                                  Date: 1/30/13

5   Defendant Kevin Pilon

6

7   **For Plaintiff Federal Trade Commission:**

8

9

10  Collot Guérard

11  J. Ronald Brooke, Jr.
     Janice L. Kopec

12  Dotan Weinman
     Attorneys for Plaintiff

13  Federal Trade Commission
     600 Pennsylvania Avenue, NW

14  Room 286
     Washington, DC 20580

15

16

17

18

19

20

21

22

23

24

25

26

27

28  *Stipulated Final Order as to Kevin Pilon*
     *FTC v. Jeremy Johnson, et al.*        Page 36 of  36

Date: 8/7/2013