Karra J. Porter
Karra.Porter@chrisjen.com
Kelly H. Macfarlane
Kelly.Macfarlane@chrisjen.com
Phillip E. Lowry, Jr.
Phillip.Lowry@chrisjen.com
Sarah E. Spencer
Sarah.Spencer@chrisjen.com
**CHRISTENSEN & JENSEN, P.C.**
15 West South Temple, Suite 800
Salt Lake City, Utah  84101
Telephone:    801-323-5000
Facsimile:    801-355-3472

***Attorneys for Relief Defendants:*** *Sharla Johnson, Barbara Johnson, Kerry Johnson, KB Family Limited Partnership, KV Electric, Inc., Orange Cat Investments, LLC, Zibby, LLC, and Zibby Flight Service, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                    Plaintiff(s),<br><br>v.<br><br>JEREMY JOHNSON, et al.<br><br>                    Defendant(s). | Case No.:    2:10-cv-2203-MMD-GWF |

## RELIEF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to FED. R. CIV. P. 56, Relief Defendants hereby submit this motion for partial summary judgment regarding the FTC's Count XI that seeks disgorgement of funds from the Relief Defendants.   This motion is based upon the following memorandum of points and authorities and the cited exhibits, which demonstrate that there is no dispute of material fact and that judgment as a matter of law is warranted in the Relief Defendants' favor.

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In January of 2013, two years into this litigation, the FTC amended its complaint to add certain so-called "relief defendants," i.e., Sharla Johnson, Barbara Johnson, Kerry Johnson, KB Family Limited Partnership, KV Electric, Inc., Orange Cat Investments, LLC, Zibby Flight, LLC, and Zibby, LLC.

Being named as a "relief defendant" has significant consequences.  Relief defendants are not accused of engaging in any wrongdoing themselves, but often (as in this case) their assets are seized or frozen indefinitely.[1]  They are not afforded the same protections as defendants accused of actual misconduct.  For example, as ruled by the court, normal personal jurisdiction requirements do not apply to relief defendants.  They can be brought into the litigation at the eleventh hour – as was done here – and be denied the same level of discovery as normal defendants, even though liability of those other defendants is a prerequisite to their own liability, even though those other defendants have often been without counsel and unable to defend themselves due to their own asset freezes, and even though millions of dollars may be at stake.[2]

---

[1] In this case, for example, it was successfully argued through a "motion to clarify" that Sharla Johnson, Zibby, Zibby Flight, and Orange Cat have been subject to the preliminary injunction and asset freeze since two years before they were brought into the lawsuit.  Although Kerry Johnson, Barbara Johnson, KV Electric, and KB Family Limited Partnership were not part of the "motion to clarify" the preliminary injunction, their ability to go about their business and lives have been disrupted by multiple depositions, repeated subpoenas of banks with which they do business, etc.

[2] Summary proceedings are also prejudicial to the relief defendants because, in regular litigation, the procedural protections of F.R.Civ.P. 64 would have to be met before the imposition of a broad asset freeze, and the defendants would be entitled to a jury trial on some or all of the claims.

To partly balance out these reduced protections, the law does impose two strict burdens on plaintiffs in these cases: First, because "damages" are not sought against relief defendants (which would entitle them to a jury trial), judgments are limited to specific, identified assets. Second, with respect to each such asset, the plaintiff must prove, as a matter of law, that 1) the asset is "ill-gotten," e.g., that the source of the asset was a violation of the FTC Act; and 2) that the relief defendant has "no legitimate claim" to that asset.

As an example, the FTC seeks disgorgement of certain funds paid to Kerry Johnson, defendant Jeremy Johnson's father. The issue of whether the FTC has proved as a matter of law that those funds were "ill gotten" will be addressed in the opposition to the FTC's motion for summary judgment as to liability. The second element, however – absence of a legitimate claim – has largely been glossed over in the FTC's filings to date.

As uniformly stated by the courts themselves, the issue on this second element is whether the FTC can eliminate the existence of any legitimate "claim" to the asset. The courts' use of the word "claim" is not accidental – the ultimate "right" or "ownership" of an asset is a different matter. If the FTC can prove that the defendant has no claim at all to the asset (for example, by showing that the defendant is merely a bank into which funds were deposited, or received the asset as a pure gift), then the party may be a proper relief defendant as to that asset, and a judgment as to that asset may be entered in a summary proceeding.

If the plaintiff cannot establish the complete absence of a legitimate claim – either by failing to address it, or by acknowledging the existence of a fact issue, or because the relief defendant affirmatively adduces evidence of an interest – then the party is not a proper relief defendant as to that asset, and the ultimate issue (actual ownership of or entitlement to the

3

asset), cannot be determined in a summary proceeding.  Instead, the claim as to that specific asset must be dismissed.  *See SEC v. Ross*, 504 F.3d 1130, 1141-1142 (9th Cir.2007) (individual was improperly named as relief defendant where he "received compensation in return for services rendered" and therefore had a legitimate claim); *FTC v. Bronson Partners*, *LLC*, 564 F. Supp. 2d 119 (D. Conn. July 10, 2008) (denying summary judgment to FTC on claims against relief defendants where FTC failed to show lack of legitimate claim); *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 392 (D. Conn. 2009) (denying FTC's sought disgorgement from relief defendant where "[t]he monies Sandra Howard received from H & H for services performed on behalf of Bronson were legitimately paid in consideration for her services."); *FTC v. Direct Marketing Concepts, Inc.*, 648 F. Supp. 2d 202, 222-223 (D. Mass. 2009) (denying disgorgement of relief defendant's assets where FTC failed to prove the absence of a legitimate claim of ownership).[3]

In this case, the relief defendants acknowledge that some assets cited in the FTC's Amended Complaint were gifts.  With respect to those and other assets, the relief defendants' focus will be on the first element, *i.e.*, whether the FTC's motion for summary judgment has established as a matter of law that the assets were ill-gotten.  This motion is limited to assets for which the FTC cannot or has not shown the absence of any legitimate claim by the relief defendants.

This motion also seeks a determination of the maximum judgment that may be sought by the FTC on its claims against the relief defendants.  Until such a ruling is reached, essentially all of the relief defendants' assets, and their ability to conduct their lives and businesses, will be

---

[3] This does not deprive a creditor of all potential relief.  In this case, for example, there is a parallel fraudulent transfer case already pending against several of the relief defendants.

indefinitely in limbo.  As part of this motion, the relief defendants also note that the FTC is seeking double recovery, i.e., recovery for the same asset against multiple parties, even when those parties no longer have the asset or anything to "disgorge."  While the FTC may be entitled to seek judgment against more than one defendant with respect to a single asset, any such judgment should make clear that any payment toward that judgment is a credit as to other judgments entered with respect to that same asset.

**TABLE OF CONTENTS**

**INTRODUCTION**.......................................................................................................**2**

**STATEMENT OF UNDISPUTED MATERIAL FACTS**.........................................**7**
    *Relief Defendant Kerry Johnson* .......................................................................**7**
    *Relief Defendant Barbara Johnson* ..................................................................**11**
    *Relief Defendant KV Electric, Inc.*...................................................................**12**
    *Relief Defendant KB Family Limited Partnership* ...........................................**12**
    *Relief Defendant Sharla Johnson* ....................................................................**13**
    *FTC's Motion for Summary Judgment*.............................................................**14**

**STANDARD FOR FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT** .........**17**

**ARGUMENT** ...........................................................................................................**18**

**I.**     **THE FTC HAS NOT, AND CANNOT, ESTABLISH AS A MATTER OF LAW THE ABSENCE A LEGITIMATE CLAIM OF INTEREST IN THE TRANSFERRED ASSETS**...................................................................**18**

    **a.**     **Legal standard applicable to equitable disgorgement claims against nominal parties such as Relief Defendants here**...............................**18**
    **b.**     **The relief defendants have "presumptive title" and therefore a legitimate claim of ownership to the transferred funds** ...................**21**

**II.**    **IN ANY EVENT, THE MAXIMUM LIABILITY OF THE RELIEF DEFENDANTS IS THE TOTAL SUM TO WHICH THE FTC CLAIMS IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**..........................................**26**

**CONCLUSION** .......................................................................................................**26**

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................17

*CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187 (4th Cir.2002)......................................20

*First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)........18

*FTC v. Bronson Partners*, LLC, 564 F. Supp. 2d 119 (D. Conn. July 10, 2008) ...................4, 20

*FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373 (D. Conn. 2009) ...........................4, 19, 21

*FTC v. Direct Marketing Concepts, Inc.*, 648 F. Supp. 2d 202 (D. Mass. 2009) ...................4, 20

*FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975 (N.D. Cal. 2010) ................................................19

*FTC v. Think Achievement Corp.*, 144 F.Supp.2d 1013 (N.D. Ind. 2000) .................................19

*FTC v. Transnet Wireless Corp.*, 506 F.Supp.2d 1247 (S.D.Fla.2007)................................19, 20

*Janvey v. Adams*, 588 F.3d 831 (5th Cir.2009)...........................................................................20

*SEC v. American Capital Investments, Inc.*, 98 F. 3d 1133 (9th Cir. 1996)..............................24

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir.1998) ..........................................................................20

*SEC v. Cherif*, 933 F.2d 403 (7th Cir.1991) ...............................................................................18

*SEC v. Colello*, 139 F.3d 674 (9th Cir.1998)...............................................................................18

*SEC v. George*, 426 F.3d 786 (6th Cir.2005)...............................................................................19

*SEC v. Ross*, 504 F.3d 1130 (9th Cir.2007)...............................................4, 20, 21, 22, 23, 24

*SEC v. Universal Financial*, 760 F. 2d 1034 (9th Cir.1985) .......................................................24

*TW Elec. Service v. Pacific Elec. Contractors*, 809 F. 2d 626 (9th Cir. 1987) .........................18

*U.S. Commodity Futures Trading Com'n v. Schiera*, No. CV05 2660 CAS, 2006 WL
    4586786, *6 (S.D.Cal. Dec. 11, 2006)................................................................................20

**Rules**

Fed. R. Civ. P. 64.............................................................................................................................2

Fed. R. Civ. P. 56.....................................................................................................................17, 18

**TABLE OF EXHIBITS**

Exhibit 1        Kerry Johnson November 29, 2013 Declaration

Exhibit 2        Barbara Johnson November 29, 2013 Declaration

Exhibit 3        Sharla Johnson November 29, 2013 Declaration

Exhibit 4        Scott Leavitt November 29, 2013 Declaration

# STATEMENT OF UNDISPUTED MATERIAL FACTS

## *Relief Defendant Kerry Johnson*

Relief Defendant Kerry Johnson is the father of Defendant Jeremy Johnson and the husband of Relief Defendant Barbara Johnson.  *See* DE 830, amended complaint at ¶ 362; Relief Defendants' Answer at ¶ 362; DE 1239-3, K. Johnson 7/14/11 Depo. 19:6-11; 21:22-22:1.  He is the president of Relief Defendant KV Electric, Inc. and a general partner of Relief Defendant KB Family Partnership.  *See* DE 830, amended complaint at ¶¶ 373, 376; *see also*, DE 1239-1, K. Johnson 8/1/13 Depo., 7:21-8:1; DE 1239-3, K. Johnson 7/14/11 Depo. 19:14-20:24; 32:22-35:24; DE 1239-8, KV Electric 30(b)(6) Depo. 9:12-15; 13:7-19; DE 1239-6, KB Family Ltd. Partnership Depo. 5:19-25.

Since 1998, Kerry Johnson has provided personal services in connection with the operation and management of Jeremy Johnson's various business ventures.  *See* DE 1239-1, K. Johnson 8/1/13 Depo., 46:14-48:1.  For example, Kerry Johnson is a licensed airplane and helicopter pilot and has provided professional pilot services to Jeremy Johnson, IWorks, and IWorks' related entities for more than six years in total.  *See* Exh. 1, Decl. of Kerry Johnson at ¶ 5.

Between the years 2002 and 2004, Kerry Johnson worked approximately 600 total hours as a pilot for IWorks.  *See id.* at ¶ 6.  In addition to those 600, he also was on-call 24 hours a day, 7 days a week.  *See id.*  During that time, Kerry Johnson flew an Aerostar N69MF airplane to various locations as requested by Jeremy Johnson and other IWorks representatives.  *See id.* at ¶ 7.  Later, between August of 2007 and mid-2009, Kerry Johnson provided at least 110 hours of 24/7 on-call pilot service for IWorks and Jeremy Johnson.  *See id.* at ¶ 8.  During such time, he piloted a Piper Cheyenne LS400.  *See id.* at ¶ 8.

7

In addition to actual flight time, when he was not in the air Kerry Johnson spent a significant amount of time assisting IWorks and its employees.  *See id*. at ¶ 9.  For example, whenever Kerry Johnson would pilot an aircraft to a given location for IWorks, he would accompany the IWorks representatives to the jobsite and would assist with whatever tasks might be needed.  (Kerry Johnson's willingness to help with whatever was needed at a given location was significantly more helpful than other professional pilots, who would stay with the aircraft or handle personal matters while on layover for IWorks trips).  *Id*. at ¶ 11.  In addition, when Kerry Johnson was at home in Utah, he also spent time managing and maintaining the aircraft, arranging for maintenance of the aircraft, and providing training for other pilots.[4]  *See id*. at ¶ 11.

Kerry Johnson individually provided other professional services to IWorks and Jeremy Johnson.  *See id*. at ¶ 12.  From approximately 2004 until the end of 2010, Kerry Johnson advised Jeremy Johnson about classic collector cars, including which cars were the best investments for Jeremy's purchase.  *See id*. at ¶¶ 13-14.  After Jeremy Johnson would purchase the vehicles, Kerry Johnson maintained and worked on them.  Specifically, Kerry Johnson performed an overhaul on the engines of a 1972 Chevelle SS 454 and a 1952 Ford Sedan flathead V8.  *See id*. at ¶ 13.  Kerry Johnson also conducted repairs on a 1961 Cadillac, a 1957 Chevy BelAir and a 1960 Lincoln Continental.  Kerry Johnson conducted most of the repairs in his shop located behind his home in Santa Clara, Utah.  *See id*. at ¶ 13.

---

[4] Relief Defendant Zibby Flight and Defendant CPA Upsell (two of the IWorks-related entities who owned the planes that Kerry Johnson flew) ultimately hired three other pilots to replace the services of Kerry Johnson.  *See* Exh. 4, Declaration of Scott Leavitt at ¶ 4.  Employee Plus, the payroll entity for IWorks, paid approximately $176,928.71 for pilot services between February of 2008 and December of 2010.  *See id*. at ¶ 5.  Additionally, between April of 2009 and July of 2010, CPA Upsell paid pilot Scott Rye a total of $125,538.34.  *See id*. at ¶ 6.

At the time Kerry Johnson rendered services to IWorks, including the private pilot and classic car consultant services, he expected that he would receive payment in the future in the event the IWorks was financially successful.  *See id.* at ¶ 14.  His understanding was based upon conversations with his son Jeremy Johnson, and his own experience as a small business owner in which he rendered services without pay in consideration for future payment from the business.  *See id.* at ¶ 15.

Consistent with his expectation, in 2009 Employee Plus paid $697,500 in wages to Kerry Johnson to compensate Kerry Johnson for the more than six years of work Kerry Johnson had performed on IWorks and Jeremy Johnson's behalf as a pilot for airplanes flown on IWorks' behalf and as a classic car consultant.  *See* FTC amended complaint ¶ 364.b; Receiver Complaint at ¶ 19; Receiver First Report at p. 17; Exh. 1, Declaration of Kerry Johnson at ¶ 16; DE 1239-1, K. Johnson 8/1/13 Depo. 78:9-79-15; DE 1242-9, Employee Plus 2009 W-2 (Depo. Exh. 382).

Kerry Johnson also rendered professional consulting services on Jeremy Johnson's behalf in connection with Jeremy Johnson's acquisition of an interest in an oil refinery located in Wyoming.  *See* DE 1239-1, Kerry Johnson 8/1/13 Depo. 40:18-43:23; 83:1-88:24; see Exh. 1, Declaration of Kerry Johnson at ¶¶ 17-21; DE 1238-8, Jeremy Johnson 9/5/13 Depo. 25:10-33:7.  For approximately one year, Kerry Johnson worked as an electrical consultant for Jeremy Johnson, including engineering a lightning protection system and a ground grid system, as well as investigating the purchase of an oil cracker.  *Id.*  Jeremy Johnson asked Kerry Johnson to perform the work to investigate whether the oil refinery was a good investment for Jeremy Johnson to purchase.  *Id.*

One of the issues Kerry Johnson investigated was profitability relating to the refining process.   *See* DE 1239-1, Kerry Johnson 8/1/13 Depo. 83:21-85:4.   Kerry Johnson recommended that the refinery sell excess by-product called "bottoms" instead of hauling the material away as hazardous waste.   Kerry Johnson investigated possibilities to sell the material for manufacture as chewing gum or asphalt.   *Id.*   He also looked into purchasing an oil "cracker," which would allow the refinery to further refine the materials into diesel fuel.   *Id.*

Another issue Kerry Johnson was investigating was regarding repeated shutdowns the refinery was experiencing.   *See* DE 1239-1, Kerry Johnson 8/1/13 Depo. 85:18-86:24. Kerry determined that the oil refinery required mechanical systems to dissipate electricity coming into the system, either through a lightning strike or static electricity.   *Id.*   Kerry Johnson designed a ground grid and worked with a contractor to develop a lightning protection system for the refinery, which he believed would address the repeated shut downs the refinery was experiencing.   *Id.*

To compensate Kerry Johnson for the extensive work he performed in evaluating the electrical functionality and viability of the refinery, Jeremy Johnson acquired a 10% ownership interest in the refinery on Kerry's behalf and in Kerry's name.   *See* DE 1239-1, 8/1/13 Kerry Johnson Depo. 87:2-88-:14; 91:19-92:3; DE 1238-8, Jeremy Johnson 9/5/2013 Depo. 29:23. Kerry Johnson later received $750,000 when his interest in the oil refinery was bought out.   *Id.* The $750,000 that Kerry Johnson received in exchange for one year of work was commensurate with the compensation Kerry has received for other work Kerry has performed through his electrical company KV Electric.   *See* DE 1239-1, Kerry Johnson 8/1/13 Depo. 88:15-90:7.

### ***Relief Defendant Barbara Johnson***

Relief Defendant Barbara Johnson is the mother of Defendant Jeremy Johnson and the wife of Relief Defendant Kerry Johnson.  *See* amended complaint at ¶ 362; Relief Defendants' Answer at ¶ 362.  She is the secretary of Relief Defendant KV Electric, Inc. and a general partner in Relief Defendant KB Family Partnership.  *See* DE 830, amended complaint at ¶¶ 373, 376; *see also*, DE 1238-6, B. Johnson 7/31/13 Depo., 10:11-15; 14:9-14; DE 1239-8, KV Electric 30(b)(6) Depo. 9:12-15; 13:7-19; DE 1239-6, KB Family Ltd. Partnership Depo. 5:19-25.

Starting in 2002 and until 2003, Barbara Johnson worked at IWorks for approximately one year.  *See* DE 1238-6, B. Johnson 7/31/13 Depo., 20:1-25; Exh. 2, Barbara Johnson Declaration at ¶ 4.  During that time, she did not receive compensation for her services.  *See* DE 1238-6, B. Johnson 7/31/13 Depo., 21:1-6.  The services she performed included preparing mailings and managing customer lists.  *See id.* at pp. 20:17-21.  She worked approximately 35 to 40 hours per week at IWorks in the years 2002 to 2003.  *See* Exh. 2, Declaration of Barbara Johnson at ¶ 6.  When she worked at IWorks in 2002 and 2003, she understood that IWorks was a small business startup that was financially unable to pay her but which needed her help in order to succeed.  *See* Exh. 2, Declaration of Barbara Johnson at ¶ 7.  Barbara Johnson understood and expected that if IWorks became a success in the future, she would receive back-pay compensation to make up for the time and effort she contributed at the ground floor during the company's formative years.  *See* Exh. 2, Declaration of Barbara Johnson at ¶¶ 8-10.

As she expected, once IWorks became profitable, Defendant Employee Plus paid $77,500 to Barbara Johnson in 2009 to compensate her for the work she performed at IWorks in 2002 and 2003.  *See* FTC amended complaint ¶ 366; Receiver Complaint ¶ 20; Receiver First

Report at p. 17; DE 1238-6, B. Johnson 7/31/13 Depo. 23:17-24:16; DE 1242-10, B. Johnson 2009 Employee Plus W-2 (Depo. Exh. 383).   Defendant Employee Plus was the payroll processing entity for IWorks.  *See* FTC amended complaint at ¶ 45.  The payments Barbara Johnson received in 2009 were paid in exchange for services she rendered to IWorks in 2002 and 2003.  *See* Exh. 2, Declaration of Barbara Johnson at ¶¶ 9-10.

### *Relief Defendant KV Electric, Inc.*

KV Electric, Inc. ("KV Electric") is a Utah corporation owned and operated by Kerry and Barbara Johnson.  *See* amended complaint at ¶ 373; Relief Defendants' Answer at ¶ 373; DE 1239-8, KV Electric 7/31/13 30(b)(6) Depo. at 9:6-15.  KV Electric has been in the business of electrical contracting for about 29 years.  *See* DE 1239-8, KV Electric 30(b)(6) Depo., 9:6-11; DE 1239-3, K. Johnson 7/14/11 Depo. 19:14-20:24.  KV Electric currently has about 15 employees and at its largest size in the mid-1990's, KV Electric employed 120 people.  *See* DE 1239-8, KV Electric 30(b)(6) Depo. 17:8-15.

Although the FTC originally alleged that between January 20, 2008 and June 21, 2010, KV Electric received at least $807,505.90 in "gratuitous transfers" from Relief Defendant Zibby, LLC (*see* amended complaint at ¶ 375), after three depositions of Kerry Johnson and a F.R.C.P. 30(b)(6) deposition of KV Electric, Inc., the FTC now only seeks disgorgement of $305,000 from KV Electric.  *See* DE 1279 at pp. 31-41*;* DE 1279-1 at pp. 41-43.

### *Relief Defendant KB Family Limited Partnership*

KB Family Limited Partnership was formed as a Utah partnership in August of 1996 in connection with Kerry and Barbara Johnson's estate planning.  *See* DE 1239-3, K. Johnson 7/14/11 Depo. 32:22-35:24; DE 1239-6, KB Family Partnership 30(b)(6) Depo. 6:7-16.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ***Relief Defendant Sharla Johnson***

Starting in 2000 and until her first daughter was born in 2003, Sharla Johnson worked at IWorks helping with data entry, maintaining corporate books and accounting, and assisting with other office tasks on an as-needed basis.  *See* DE 1239-4, S. Johnson 7/30/13 Depo. 28:10-29:20; 146:8-10; 22:6-8.  When Sharla started working at IWorks, it only had approximately four employees.  *Id.*  Sharla Johnson worked full-time at IWorks between 2000 and 2003 on an approximately 40-hour work week.  *See* Exh. 3, Declaration of Sharla Johnson at ¶ 4.  After Sharla Johnson had her child and stopped working in 2003, IWorks hired Scott Leavitt on a full-time basis to serve as its bookkeeper.  *See* DE 1239-9, S. Leavitt 2/1/11 Deposition 11:2-7; 149:18-150:18; DE 1239-10, S. Leavitt 9/6/13 Depo. 8:22-9:12; Exh. 3, Sharla Johnson Declaration at ¶ 10.

Sharla Johnson knew that IWorks had insufficient financial ability in those early stages to compensate her contemporaneously for her services.  *See* Exh. 3, Sharla Johnson Declaration at ¶¶ 6-9.  She was nonetheless willing to work without being paid at that time in hopes of building a successful business for her husband and family.  *Id.*  She also knew there was risk that the company might not be financially successful.  *Id.*  She assumed that, in such event, she would not be compensated for my time and services.  *Id.*  Even so, based on discussions with her husband Jeremy Johnson that occurred in 2000 to 2003, she knew and understood that if and when IWorks was successful in its business endeavors in the future, she would be compensated for her time, effort, energy, and assumption of risk inherent in working without pay for a startup company such as IWorks.  *Id* at ¶ 8.

As such compensation for her work at IWorks in 2000 through 2003, Defendant Employee Plus paid Sharla Johnson $149,704 in 2006, $151,575 in 2007, $211,551 in 2008, and

$130,309 in 2009.  *See* FTC amended complaint ¶ 361.c; DE 1239-4, S. Johnson Depo. 143:14146:10; DE 1263-1, FTC Exh. 1725, Tyndall Declaration at ¶. 21. All of the payments issued by IWorks through Employee Plus to Sharla Johnson were paid to compensate Sharla for the work she had performed at IWorks in 2002.  *See* Exh. 3, Declaration of Sharla Johnson at ¶ 13.

### *FTC's Motion for Summary Judgment*

The FTC filed its motion for summary judgment against Relief Defendants on November 26, 2013.  *See* DE 1279 at pp. 31-41.  The FTC seeks an order "requiring Zibby to disgorge $13,568,474; Zibby Flight to disgorge $2,495,000; Orange Cat to disgorge $5,105,348.65; KB Family to disgorge $1,700,000; KV Electric to disgorge $305,000; Sharla Johnson to disgorge $4,448,139; and Barbara and Kerry Johnson to disgorge $4,460,451."  *See* DE 1279 at p. 41.

The following table summarizes the disgorgement relief sought by the FTC in its motion and in its proposed findings of fact, and conclusions of law.  As noted in the table, there are numerous instances in which the FTC is attempting to obtain double recovery, i.e., to disgorge the same monies from multiple Relief Defendants.  In other words, in instances where money was initially transferred from IWorks and then re-transferred amongst the Relief Defendants, the FTC is seeking the value of both transfers rather than only the original transfer.

| RELIEF DEFENDANT | AMOUNT | FTC ALLEGED BASIS FOR DISGORGEMENT | CITATION - FTC MSJ DOCKET ENTRY NO. 1279 | AMOUNT OF DUPLICATION |
|---|---|---|---|---|
| Zibby, LLC | $13,568,474 | IWorks capital contributions including funds for acquisition of 529 Woodsview Circle | PP. 31-32, 41 | |

| RELIEF DEFENDANT | AMOUNT | FTC ALLEGED BASIS FOR DISGORGEMENT | CITATION - FTC MSJ DOCKET ENTRY NO. 1279 | AMOUNT OF DUPLICATION |
|---|---|---|---|---|
| | | | | |
| Zibby Flight, LLC | $2,495,000 | IWorks distributions of $2,495,000 | PP. 32-33, 41 | |
| Orange Cat Investments, LLC | $5,105,348.65 | IWorks distributions of $5,105,348.65 | PP. 33, 41 | |
| KB Family | $1,700,000 | $1.7 million from home equity line of credit | PP. 34-35, 41 | **$1.7 million**<br><br>Sharla Johnson transferred $1.7 million to KB Family from a home equity line of credit she obtained that was secured by the 529 Woodsview circle.<br><br>The FTC is already seeking disgorgement of value of the 529 Woodsview house from Zibby, LLC, the entity that paid for the house's construction and the real property it was built on. |
| Sharla Johnson | $4,448,139 | Zibby transferred title of 529 Woodsview Circle house valued at least $3,829,000<br><br>$619,139 from IWorks/Employee Plus<br><br>Two IWorks checks | PP. 36, 41 | **$3,829,000**<br><br>Zibby transferred the 529 Woodsview Circle house to Sharla Johnson on December 2, 2009.<br><br>Zibby, LLC paid for the house's construction and real |

| RELIEF DEFENDANT | AMOUNT | FTC ALLEGED BASIS FOR DISGORGEMENT | CITATION - FTC MSJ DOCKET ENTRY NO. 1279 | AMOUNT OF DUPLICATION |
|---|---|---|---|---|
| | | totaling $41,000 in 2010 | | property.<br><br>The FTC is already seeking disgorgement of value of the 529 Woodsview house from Zibby, because the FTC is seeking disgorgement of all capital contributions Zibby used to construct the house and purchase the real property. |
| Kerry and Barbara Johnson | $4,460,451 | $321,295 in cash transfers from IWorks and Vowells<br><br>Barbara received $77,500 from IWorks through Employee Plus<br><br>Kerry received $697,500 from IWorks through Employee Plus<br><br>Gift of 79 1000-ounce silver bars, which were exchanged for precious metals of same value, which were liquidated for $475,544.67 and $1,035,765.05 on two different sale dates<br><br>$750,000 proceeds | PP. 37-39, 41 | |

16

| RELIEF DEFENDANT | AMOUNT | FTC ALLEGED BASIS FOR DISGORGEMENT | CITATION - FTC MSJ DOCKET ENTRY NO. 1279 | AMOUNT OF DUPLICATION |
|---|---|---|---|---|
| | | from sale in interest in oil refinery<br><br>$102,526 payment from Zibby to Guardian Title to help Barbara and Kerry reacquire Santa Clara, Utah home | | **$102,526**<br><br>The FTC is already seeking disgorgement of all of Zibby's capital, including the $102,526 it issued to pay off the mortgage on the Johnson residence. |
| KV Electric | $305,000 | Kerry Johnson individually transferred $305,000 that is traceable to sale of precious metals that Jeremy Johnson gifted to Kerry and Barbara Johnson | PP. 35, 41 | **$305,000**<br><br>The FTC is already seeking disgorgement of the liquidated value of the silver bars directly from Kerry Johnson. |

### STANDARD FOR FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment."  *TW Elec. Service v. Pacific Elec. Contractors*, 809 F. 2d 626, 631 (9th Cir. 1987).  "Instead, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (*quoting* Fed.R.Civ.P. 56(e)).  Thus, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'"  *Id.* (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).  A failure to do so mandates judgment in the moving party's favor.  *Id.*

**ARGUMENT**

**I.     THE FTC HAS NOT, AND CANNOT, ESTABLISH AS A MATTER OF LAW THE ABSENCE A LEGITIMATE CLAIM OF INTEREST IN THE TRANSFERRED ASSETS.**

The FTC asserts a single claim for relief against Relief Defendants entitled "Disgorgement of the Assets Held by Relief Defendants in Constructive Trust for the Benefit of Consumers."  *See generally*, amended complaint DE 830 at ¶¶ 480-484.  With respect to the specific assets or funds addressed in this motion, the Court should grant summary judgment because the FTC has not met its burden of proving the complete absence of a legitimate claim of entitlement by the particular relief defendant(s).

**a.  Legal standard applicable to equitable disgorgement claims against nominal parties such as Relief Defendants here.**

"A nominal defendant is a person who 'holds the subject matter of the litigation in a subordinate or possessory capacity *as to which there is no dispute*.'"  *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir.1998) (*quoting SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir.1991) (emphasis

added)).  "The paradigmatic nominal defendant is 'a trustee, agent, or depositary ... [who is] joined purely as a means of facilitating collection.'"  *Id*.  Such a person may be joined in an enforcement action "to aid the recovery of relief," provided that he "has no ownership interest in the property which is the subject of litigation."  *SEC v. George*, 426 F.3d 786, 798 (6th Cir.2005) (internal quotation marks omitted).

As noted above, to seek disgorgement of funds from a nominal "relief" defendant, the FTC's burden is to prove that 1) the named defendants actually violated the Act, 2) the assets the FTC seeks to disgorge are specifically traceable to the violations, and 3) the relief defendants have no legitimate claim to the funds at issue.  *See e.g. Colello*, *supra* at 677 ("...the creditor plaintiff must show that the nominal defendant has received ill gotten funds and that he does not have a legitimate claim to those funds."); *Ross*, *supra* at 1142 (same); *see also*, *Smith v. SEC*, 653 F.3d 121, 128 (2nd Cir.2011) ("'The burden rests with the Commission to show that the funds in the possession of the [relief defendant] are ill-gotten.'") (alterations in original) (*quoting FTC v. Bronson Partners, LLC*, 674 F.Supp.2d 373, 392 (D.Conn.2009)); *FTC v. Think Achievement Corp.*, 144 F.Supp.2d 1013, 1020 (N.D. Ind. 2000) (disgorgement of a relief defendant's funds only allowed if relief defendant possesses no legitimate claim); *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1009 (N.D. Cal. 2010) *aff'd* 475 F. App'x 106 (9th Cir. 2012) (same); *FTC v. Transnet Wireless Corp.*, 506 F.Supp.2d 1247, 1273 (S.D.Fla.2007) (same).

Because the FTC bears the burden of proof on this element, it must establish as a matter of law (among other things) the absence of any consideration, or provision of services, or other means by which the recipient can legitimately claim to have earned, or to have an interest in, the asset.  (As noted above, the FTC must establish this element as a matter of law in order to avoid

dismissal of the specific claim, because if there is evidence of a viable "claim" as to a particular asset, then the party is entitled to have that evidence evaluated, and ownership/interest ultimately decided, in plenary proceedings, not truncated "relief defendant" proceedings.)

The FTC's burden includes the elimination of any claim of consideration, because relief defendants who have provided some form of consideration in return for the proceeds of alleged fraud are beyond the reach of the district court's disgorgement remedy. *See Ross, supra* at 1141-1142; *Janvey v. Adams*, 588 F.3d 831, 834-835 (5th Cir.2009) (creditors whose loans were repaid by defendant in SEC enforcement action had sufficient legitimate ownership of the funds so as to preclude being treated as relief defendants); *CFTC v. Kimberlynn Creek Ranch, Inc*., 276 F.3d 187, 192 (4th Cir.2002) ("[R]eceipt of funds as payment for services rendered to an employer constitutes one type of ownership interest that would preclude proceeding against the holder of the funds as a [relief] defendant."); *Transnet Wireless Corp*., *supra*, 506 F.Supp.2d at 1273 ("Nothing on the record indicates that [relief defendant] had a legitimate claim to the funds; [relief defendant] did not provide any services to either company to warrant the payments."); *U.S. Commodity Futures Trading Com'n v. Schiera*, No. CV05 2660 CAS, 2006 WL 4586786, *6 (S.D.Cal. Dec. 11, 2006) ("The Relief Defendants did not provide services to or on behalf of the Corporate Defendants and do not have a legitimate claim to the funds."); *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir.1998) (same); *see also FTC v. Direct Marketing Concepts, Inc*., 648 F. Supp. 2d 202, 222-223 (D. Mass. 2009) (Refusing to order disgorgement of assets where FTC failed to prove that relief defendant wife of named defendant received ill-gotten gains or the absence of a legitimate claim to the monies; "A legitimate claim may be established if the relief defendant can demonstrate that he provided some services as consideration for the identified monies."); *FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119

(D. Conn. 2008) (denying summary judgment to FTC on claims against relief defendants where FTC failed to show lack of legitimate claim); *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 392 (D. Conn. 2009) (denying FTC's sought disgorgement from relief defendant where "[t]he monies Sandra Howard received from H & H for services performed on behalf of Bronson were legitimately paid in consideration for her services.").

### b. The relief defendants have "presumptive title" and therefore a legitimate claim of ownership to the transferred funds.

With respect to the assets identified in this motion, the claims must be dismissed because the relief defendants have adduced affirmative evidence in support of a claim of consideration for the assets. *See Ross, supra* at 1142 (where person provided services and has a legitimate claim, disgorgement is only available if that person actually violated the law).

Kerry, Barbara, and Sharla Johnson all provided extensive employment services to IWorks. As is common in the early stages of a business, they knew that compensation would be deferred. All of the payments issued to Kerry, Barbara and Sharla by Employee Plus were paid to compensate them for these services, which were undisputedly provided.

Kerry acted as a private pilot, an aircraft manager, investment car consultant, and a personal assistant while on pilot jobs. Accordingly, Mr. Johnson has shown presumptive title to and a legitimate claim of ownership of the $697,500 transferred to him by Employee Plus. Kerry also provided highly specialized consultation regarding the lighting protection grid and other electrical components of the Wyoming oil refinery that Jeremy Johnson was considering purchasing. As such, Kerry has shown presumptive title to and a legitimate claim of ownership of the $750,000 that was generated from the sale of his interest in the refinery, which Jeremy Johnson had purchased for Kerry Johnson in exchange for Kerry's services on evaluating

productivity and profitability, investigating the purchase of the oil cracker, and designing electrical grounding and a lightning protection system.

Similarly, Barbara and Sharla Johnson also provided services in exchange for the payments issued to them.  Barbara Johnson handled secretarial and office responsibilities when IWorks was a mere startup.  Sharla Johnson likewise handled IWorks' bookkeeping, human resources, and data entry during the business's critical early stages.  Both Sharla and Barbara contributed their effort, time, and energy to a brand new company with the expectation and anticipation that should the company become successful, they would ultimately be compensated for their services.  Based upon such, Barbara Johnson and Sharla Johnson have shown presumptive title to and a legitimate claim of ownership of the $75,500 and $643,099, respectively, transferred to them by Employee Plus.

Because the Court should conclude that the Relief Defendants have shown evidence of "presumptive title" and a legitimate claim of ownership to the transferred funds, including: $75,500 to Barbara Johnson, $1,447,500 to Kerry Johnson, and $643,099 to Sharla Johnson.  At best, the FTC might attempt to raise a dispute of fact regarding whether the Relief Defendants have shown a legitimate claim of interest.  However, that would, in itself, demonstrate the inappropriateness of relying on "relief defendant" status to obtain a final ruling on the dispute, because the FTC may not employ summary proceedings to name as relief defendants someone who has "presumptive title" of the property at issue.  *See Ross*, 504 F.3d at 1138.  Rather, to adjudicate actual ownership of the property, there must be *in personam* jurisdiction arising in addition to an actual basis for liability of the party holding presumptive title.  *Id*.  The Ninth Circuit recognized as much in *Ross*, *supra*.  *Ross* arose from an ancillary proceeding filed by a receiver in relation to a securities fraud lawsuit filed by the Securities and Exchange

22

Commission.  The court-appointed receiver sought an order that certain property titled in the names of various non-parties was subject to disgorgement and successfully obtained a disgorgement order from the district court.  *Id*. at 1134-1135.

The Ninth Circuit reversed because the receiver and district court had improperly utilized the relief defendant designation to disgorge funds from a party who possessed a legitimate claim to the transferred monies.  *Id*. at 1141-1143.  Bustos, the party subjected to the disgorgement order, contended that he had a legitimate claim to the commissions at issue in the disgorgement order because he provided employment services in exchange for the monies.  The receiver failed to show that "Bustos h[eld] any funds in trust for the defendant in the underlying action, … or that he received fraudulent transfers from the receivership entity[.]"  *Id*.

Similarly there was "no evidence that he was a mere puppet holding an account into which [the receivership entity] funneled its fraudulent earnings."  *Id*.  Rather, "Bustos appear[ed] to be no different from any other employee or vendor: he received compensation in return for services rendered."  *Id*.  Based upon such, the Ninth Circuit held that Bustos "ha[d] presumptive title to those commissions[.]"  The Ninth Circuit thus concluded that, unless the receiver could prove that Bustos had not rendered services for the commissions (i.e. that he had no legitimate claim or presumptive title), disgorgement was available as a remedy "only by showing that Bustos has himself violated the securities laws."  *Id*.

In this case, Kerry Johnson, Barbara Johnson, Sharla Johnson, KB Family Partnership, and KV Electric "received compensation in return for services rendered," and therefore they "have presumptive title to those [payments] [.]"  *Id.*  For that reason, they are not mere "custodian[s] or trustee[s]."  *Id.*  Rather, they are owners of property that is legitimately their own.  Consequently, they are not properly named as relief defendants or nominal parties with

23

respect to those assets. Simply put, the Constitution does not permit the use of "the nominal defendant designation to deprive one whose only plausible basis for liability is a violation of the securities [or FTC] laws of either his right to full and formal service of process or his right to fully litigate the question of his own liability under the securities [or FTC] laws." *Id*. at 1142.

Relief Defendants here have shown *prima facie* evidence a legitimate claim to the funds at issue and the FTC cannot prove the contrary as a matter of law. Therefore, the Relief Defendants are not properly designated as relief defendants or mere nominal parties and the Court lacks authority to adjudicate actual ownership of the property at issue. Summary judgment is warranted on such basis alone.

Even if the Court concluded that it possessed jurisdiction to adjudicate the actual ownership of the asset, the Court should nonetheless grant summary judgment because Relief Defendants have been prejudiced by the FTC's use of summary proceedings to name them as nominal parties. The Ninth Circuit has recognized that constitutional due process does not permit the use of summary proceedings to adjudicate actual ownership of specific property where those proceedings cause a nominal party to suffer prejudice. *See e.g. SEC v. American Capital Investments, Inc*., 98 F. 3d 1133, 1146-1147 (9th Cir. 1996); *SEC v. Universal Financial*, 760 F. 2d 1034 (9th Cir.1985) (district court may not adjudicate actual ownership if nominal parties do not receive the same "process they would have received in a plenary suit").

Relief Defendants have been prejudiced by the use of summary proceedings in this case. Relief Defendants have been hauled into Court in a foreign jurisdiction with which it is undisputed they have no minimum contacts. And before they were even named as parties, served with process, or given any formal notice and opportunity to be heard, some of their property was seized and sold. *See* DE 227 (motion for sale order); DE 288 (order granting sale

order).  Likewise, before they were even named as parties, served with process, or given any formal notice and opportunity to be heard, the Receiver claimed that some of the relief defendants' property was subject to the Court's preliminary injunction and related asset freeze. *See* DE 580, Receiver's motion to clarify.

And although the FTC finally named them as nominal parties (on the last possible date for doing so under the scheduling order), the prejudice to Relief Defendants is ongoing. Naming Relief Defendants as parties and serving them with process does not negate the fact that Relief Defendants are being called upon to defend themselves in a foreign state to which they have no contacts.  Moreover, Relief Defendants had no opportunity to present their position on the terms of the preliminary injunction and related asset freeze despite the FTC and Receiver's position that it binds Relief Defendants and their property.  And though they have been deposed on multiple occasions (Relief Defendant Kerry Johnson alone has been deposed three times), Relief Defendants were not afforded the opportunity to participate in the same period and scope of discovery as actual defendants.

Perhaps most importantly, the FTC has repeatedly contended that Relief Defendants are not even entitled to a trial on the merits of the disgorgement claim against them.  It is axiomatic that, if the FTC were to name Relief Defendants as full-fledged defendants in a plenary case, a trial would be the cornerstone of constitutional due process.

The use of summary proceedings to adjudicate Relief Defendants' actual ownership of the funds and transfers outlined herein is not allowed because Relief Defendants are prejudiced and have been deprived of the breadth of procedural protections that would inure to them in a normal case.  Summary judgment is warranted on such basis.

**II.     IN ANY EVENT, THE MAXIMUM LIABILITY OF THE RELIEF DEFENDANTS IS THE TOTAL SUM TO WHICH THE FTC CLAIMS IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

The FTC filed its motion for summary judgment against Relief Defendants on November 26, 2013.  *See* DE 1279 at pp. 31-41.  The FTC seeks an order "requiring Zibby to disgorge $13,568,474; Zibby Flight to disgorge $2,495,000; Orange Cat to disgorge $5,105,348.65; KB Family to disgorge $1,700,000; KV Electric to disgorge $305,000; Sharla Johnson to disgorge $4,448,139; and Barbara and Kerry Johnson to disgorge $4,460,451."  *See* DE 1279 at pp. 41.

Irrespective of the Court's resolution of the other issues identified herein, the Court should order that the maximum liability of the Relief Defendants, if any, is the amount to which the FTC claims that it can obtain judgment as a matter of law and which it has outlined in its motion for summary judgment.  Therefore, to the extent the Relief Defendants received payments or transfers beyond those claimed amounts, the FTC either has acknowledged the existence of a legitimate claim or concurs that there is a genuine dispute of material fact as to the right of ownership.  As a result, Relief Defendants are entitled to full constitutional proceedings to decide the ultimate rights to their property, including the right to be heard on the preliminary injunction and the related asset freeze, complete discovery, and all other the protections of the Federal Rules of Evidence and Civil Procedure.

## CONCLUSION

Based upon the foregoing, Relief Defendants respectfully request this Honorable Court grant their motion for partial summary judgment, and rule that because Relief Defendants have shown *prima facie* evidence of a legitimate claim of ownership of $75,500 transferred to Barbara Johnson, $1,447,500 transferred to Kerry Johnson, and $643,099 transferred to Sharla

Johnson, Relief Defendants may not be named as mere nominal parties and their actual ownership of those funds may not be adjudicated through summary proceedings such as those utilized by the FTC here.  Additionally, any judgment must avoid double recovery by providing for a credit for each defendant with respect to payments on duplicative judgments.

DATED this 29th day of November, 2013.

**CHRISTENSEN & JENSEN, P.C**.

/s/  Karra J. Porter
Karra J. Porter
Kelly H. Macfarlane
Phillip E. Lowry, Jr.
Sarah E. Spencer
15 West South Temple, Suite 800
Salt Lake City, Utah 84101

*Attorneys for Relief Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of **RELIEF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** was served to the following via the Court's CM/ECF system this 29th day of November, 2013:

Collot Guerard
J. Ronald Brooke, Jr.
Janice L. Kopec
Dotan Weinman
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW, Room 288
Washington, DC  20580

Blaine T. Welsh
Assistant United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, NV  89101
    *Attorneys for Plaintiff Federal Trade Commission*

Edward D Boyack
401 North Buffalo Drive, Suite 202
Las Vegas, NV 89145
    *Attorney for defendants Terrason Spinks and Jet Processing*

D. Neal Tomlinson
Jennifer R. Hargis
Karl O. Riley
Chad Fears
Brian Reeve
SNELL & WILMER, LLP
3883 Howard Hughes Pkwy., Suite 1100
Las Vegas, NV 89169
    *Attorneys for defendants Scott Muir, Big Bucks Pro, Inc., Blue Net Progress,*
    *Inc., Bolt Marketing, Inc., Business Loan Success, Inc., CS Processing, Inc.,*
    *GGL Rewards, Inc., Highlight Marketing, Inc., Mist Marketing, Inc., Net*
    *Discounts, Inc., Optimum Assistance, Inc., Razor Processing, Inc., and Simcor*
    *Marketing, Inc.; Duane Fielding, Anthon Holdings Corp., and Network Agenda*
    *LLC; and Andy Johnson*

Gary Owen Caris
Lesley Anne Hawes
MCKENNA LONG & ALDRIDGE LLP
300 South Grand Avenue, 14th Floor
Los Angeles, CA 90071
    *Attorneys for the Receiver*

Jeanette Swent
Jared C. Bennett
OFFICE OF THE UNITED STATES ATTORNEY
185 South State Street, Suite 300
Salt Lake City, UT  84111
        *Attorneys for Intervener United States of America*

Jeremy Johnson
529 S. Woods View Circle
St. George, UT 84770
        *Defendant (Pro se)*

Jacob A. Reynolds, Esq.
HUTCHISON & STEFFEN, LLC
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
        *Attorneys for Todd Vowell Parties*

And via email or First Class mail postage prepaid to:

Loyd Johnston
2988 Kings Court Lane
Washington, Utah 84780
        *Defendant (Pro se)*

Scott Leavitt
2271 Southgate Hills Drive
St. George, UT 84770

Ryan Riddle
446 East 1410 South
Washington, UT  84780
        *Defendant (Pro se)*

Jason Vowell
# 19688081 Satellite Prison Camp Tucson
PO Box 24549
Tucson, AZ  85734

_____
Legal Secretary, CHRISTENSEN & JENSEN