# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | **CV-02203-MMD-GWF** |
| **Plaintiff,** | |
| v. | |
| **JEREMY JOHNSON, individually, as officer of Defendants I Works, Inc.; Cloud Nine, Inc.; CPA Upsell, Inc.; Elite Debit, Inc.; Internet Economy, Inc.; Market Funding Solutions, Inc.; and Success Marketing, Inc.; as a member of Defendant Network Agenda LLC; and as the *de facto* principal of numerous Defendant Shell Companies; I WORKS, INC., et al.,** | |
| **Defendants.** | |

## STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS SCOTT MUIR, BIG BUCKS PRO, INC., BLUE NET PROGRESS, INC., BOLT MARKETING, INC., BUSINESS LOAN SUCCESS, INC., CS PROCESSING, INC., GGL REWARDS, INC., HIGHLIGHT MARKETING, INC., MIST MARKETING, INC., NET DISCOUNTS, INC., OPTIMUM ASSISTANCE, INC., RAZOR PROCESSING, INC., AND SIMCOR MARKETING, INC.

On December 21, 2010, Plaintiff, the Federal Trade Commission ("FTC" or "Commission")

filed a redacted Complaint for permanent injunction and other relief pursuant to Section 13(b) of

the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 917(c) of the

Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), alleging that defendants Jeremy

Johnson, Duane Fielding, Andy Johnson, Loyd Johnston, Scott Leavitt, Scott Muir, Bryce Payne,

Kevin Pilon, Ryan Riddle, Terrason Spinks, I Works, Inc., Anthon Holdings Corp., Cloud Nine

Marketing, Inc., CPA Upsell, Inc., Elite Debit, Inc., Employee Plus, Inc., Internet Economy, Inc.,

Market Funding Solutions, Inc., Network Agenda, LLC, Success Marketing, Inc., Big Bucks Pro, Inc., Blue Net Progress, Inc., Blue Streak Processing, Inc., Bolt Marketing, Inc., Bottom Dollar, Inc., Bumble Marketing, Inc., Business First Inc., Business Loan Success, Inc., Cold Bay Media, Inc., Costnet Discounts, Inc., CS Processing, Inc., Cutting Edge Processing, Inc., Diamond J Media, Inc., Ebusiness First, Inc., Ebusiness Success, Inc., Ecom Success, Inc., Excess Net Success, Inc., Fiscal Fidelity, Inc., Fitness Processing, Inc., Funding Search Success, Inc., Funding Success, Inc., GG Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Hooper Processing, Inc., Internet Business Source, Inc., Internet Fitness, Inc., Jet Processing, Inc., JRB Media, Inc., Lifestyles For Fitness, Inc., Mist Marketing, Inc., Money Harvest, Inc., Monroe Processing, Inc., Net Business Success, Inc., Net Commerce, Inc., Net Discounts, Inc., Net Fit Trends, Inc., Optimum Assistance, Inc., Power Processing, Inc., Premier Performance, Inc., Pro Internet Services, Inc., Razor Processing, Inc., Rebate Deals, Inc., Revive Marketing, Inc., Simcor Marketing, Inc., Summit Processing, Inc., The Net Success, Inc., Tranfirst, Inc., Tran Voyage, Inc., Unlimited Processing, Inc., and xCel Processing, Inc., have engaged in violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 907(c) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E ("Reg E"), 12 C.F.R. § 205.10(b), in connection with the marketing and sale of Internet-based information products and services. The Commission and defendants Scott Muir and Big Bucks Pro, Inc., Blue Net Progress, Inc., Bolt Marketing, Inc., Business Loan Success, Inc., CS Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Mist Marketing, Inc., Net Discounts, Inc., Optimum Assistance, Inc., Razor Processing, Inc., and Simcor Marketing, Inc. (hereafter "Muir defendants"), have agreed to the entry of, and request the Court to enter, this Stipulated Final Order for Permanent Injunction and

Monetary Judgment as to the Muir defendants ("Order"), to resolve all matters of dispute in this action between them.

**THEREFORE, IT IS STIPULATED, AGREED, AND ORDERED**

as follows:

1. This Court has jurisdiction over the subject matter of this case and over the Muir defendants;

2. Venue is proper in this District under 28 U.S.C.§ 1391(b) and (c) and 15 U.S.C. § 53(b);

3. The activities alleged in the Complaint are in or affecting "commerce" as that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44;

4. The Complaint states a claim upon which relief may be granted under Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b); under Section 918(c) of EFTA, 15 U.S.C. § 1693o(c); and Reg E, 12 C.F.R. § 1005.10(b);

5. The Muir defendants have entered into this Order freely and without coercion, and they acknowledge that they have read the provisions of this Order and are prepared to abide by them;

6. This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law;

7. The Muir defendants waive all rights to seek appellate review or otherwise challenge or contest the validity of this Order and waive and release any claim they may have against the Commission, its employees, representatives, or agents, and the Receiver and the Receiver's employees, representatives, or agents;

8. The Muir defendants agree that this Order does not entitle them to seek or to obtain attorney's fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. §

2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996), and the Muir defendants further waive any right to attorney's fees that may arise under said provision of law;

9.     Defendant Scott Muir filed a petition for relief under Chapter 7 of the Bankruptcy Code on December 9, 2011. *In re Scott Wallace Muir*, No. 11-37432 (Bankr. D. Utah) ("Bankruptcy Case"). Plaintiff's prosecution of this action, including the entry of a money judgment and the enforcement of a judgment other than a money judgment obtained in this action, are actions to enforce the Plaintiff's police or regulatory powers. As a result, if the Bankruptcy Case is pending as of the date of entry of this Order, then these actions are excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4);

10.    The Muir defendants neither admit nor deny any allegations in the Complaint. Only for purposes of this action, the Muir defendants admit the facts necessary to establish jurisdiction and as otherwise specifically stated in this Order;

11.    This Order is remedial in nature and no portion of any payments paid herein shall be deemed or construed as payment of a fine, damages, penalty, or punitive assessment; and

12.    Entry of this Order is in the public interest.

## ORDER

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.   **"Affiliate Network"** means any Person who provides any Muir defendant with Marketing Affiliates for an Affiliate Program or whom any Muir defendant contracts with as a Marketing Affiliate to promote any Product.

2.  **"Affiliate Program(s)"** means any arrangement under which any Muir defendant pays, offers to pay, or provides or offers to provide any form of consideration to any third party to:  (1) provide any Muir defendant or their Clients with, or refer to any Muir defendant or their Clients, potential or actual customers; or (2) otherwise market, advertise, or offer for sale any Product on behalf of any Muir defendant or their Clients.

3.  **"Asset"** means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including, but not limited to asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Muir defendant, including, but not limited to, such reserve funds held by payment processors, credit card processors, banks or other financial institutions.

4.  **"Assists others"** or **"Assisting others"** means providing assistance or support to any person or entity, including, but not limited to, providing any of the following services:  (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any promotional material; (3) providing names of, or assisting in the generation of, potential customers; (4) verifying, processing, fulfilling, or arranging for the fulfillment of orders; (5) hiring, recruiting, or training personnel; (6) performing promotional or marketing services of any kind; or (7) processing or arranging for processing of credit cards, debit cards, Automated Clearinghouse ("ACH") debits, remotely-created checks, or payments through any other system.

5.   **"Clear and Conspicuous"** or **"Clearly and Conspicuously"** means:

    a.   In print communications, the message shall be presented in a manner that stands out from the accompanying text, so that it is sufficiently prominent, because of its type size, contrast to the background against which it appears, location, or other characteristics, for an ordinary consumer to notice, read, and comprehend it in relation to any claim it may be modifying;

    b.   In communications made through an electronic medium (such as television, video, radio, and interactive media such as the Internet, online services, mobile services and software), the message shall be presented simultaneously in both the audio and visual portions of the communication.  In any communication presented solely through visual or audio means, the message shall be made through the same means in which the communication is presented.  In any communication disseminated by means of an interactive electronic medium such as software, the Internet, online services, or mobile services, a disclosure must be unavoidable and presented prior to the consumer incurring any financial obligation.  Any audio message shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it in relation to any claim it may be modifying.  Any visual message shall be presented in a manner that stands out in the context in which it is presented, so that it is sufficiently prominent, because of its size and shade, contrast to the background against which it appears, length of time it appears on the screen, and its location, for an ordinary consumer to notice, read, and comprehend it in relation to any claim it may be modifying; and

c.  Regardless of the medium used to disseminate it, the message shall be in understandable language and syntax.  Nothing contrary to, inconsistent with, or in mitigation of the message shall be used in any communication.

6.  "**Client**" means any third party to which any Muir defendant provides any of the services listed in the definition of Assisting others.

7.  "**Continuity Program**" means any plan, arrangement, or system under which a consumer is periodically charged to maintain a service or periodically receive any Product, including, but not limited to, access to a "member only" website.

8.  "**Corporate Defendants**" means IWorks, Inc., Anthon Holdings Corp., Cloud Nine Marketing, Inc., CPA Upsell, Inc., Elite Debit, Inc., Employee Plus, Inc., Internet Economy, Inc., Market Funding Solutions, Inc., Network Agenda, LLC, Success Marketing, Inc., Big Bucks Pro, Inc., Blue Net Progress, Inc., Blue Streak Processing, Inc., Bolt Marketing, Inc., Bottom Dollar, Inc., Bumble Marketing, Inc., Business First Inc., Business Loan Success, Inc., Cold Bay Media, Inc., Costnet Discounts, Inc., CS Processing, Inc., Cutting Edge Processing, Inc., Diamond J Media, Inc., Ebusiness First, Inc., Ebusiness Success, Inc., Ecom Success, Inc., Excess Net Success, Inc., Fiscal Fidelity, Inc., Fitness Processing, Inc., Funding Search Success, Inc., Funding Success, Inc., GG Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Hooper Processing, Inc., Internet Business Source, Inc., Internet Fitness, Inc., Jet Processing, Inc., JRB Media, Inc., Life Styles for Fitness, Inc., Mist Marketing, Inc., Money Harvest, Inc., Monroe Processing, Inc., Net Business Success, Inc., Net Commerce, Inc., Net Discounts, Inc., Net Fit Trends, Inc., Optimum Assistance, Inc., Power Processing, Inc., Premier Performance, Inc., Pro Internet Services, Inc., Razor Processing, Inc., Rebate Deals, Inc., Revive Marketing, Inc., Simcor Marketing, Inc., Summit Processing, Inc., The Net Success, Inc., Tranfirst, Inc.,

Tran Voyage, Inc., Unlimited Processing, Inc., and xCel Processing, Inc., and by whatever other names each may be known, and any subsidiaries, affiliates, any fictitious business entities or business names created or used by these entities, or any of them, and their successors and assigns.

9. **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, Internet sites, Webpages, Mobile Apps, Websites, electronic correspondence, including e-mail and instant messages, photographs, audio and video recordings, contracts, accounting data, advertisements (including, but not limited to, advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, and other data compilations from which information can be obtained and translated.  A draft or non-identical copy is a separate document within the meaning of the term.

10. **"Endorsement"** means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization), which message consumers are likely to believe reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser.

11. **"Endorser"** means the party whose opinions, beliefs, findings, or experience the Endorsement appears to reflect, and may be an individual, group or institution.

12. **"Express Verifiable Authorization"** means:

a.   Express written authorization by the customer, which includes the customer's signature, and shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law;

b.   Express oral authorization which is audio-recorded and made available upon request to the customer, and the customer's bank or other billing entity, and which evidences clearly both the customer's authorization of payment for the Products that are the subject of the transaction and the customer's receipt of all of the following information:

(i)   An accurate description, clearly and conspicuously stated, of the Products for which payment authorization is sought;

(ii)   The number of debits, charges, or payments (if more than one);

(iii)   The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(iv)   The amount(s) of the debit(s), charge(s), or payment(s);

(v)   The customer's name;

(vi)   The customer's billing information, identified with sufficient specificity such that the customer understands what account will be used to collect payment for the Products that are the subject of the transaction;

(vii)   A telephone number for customer inquiry that is answered during normal business hours; and

(viii)   The date of the customer's oral authorization; or

c.    Written confirmation of the transaction, identified in a Clear and Conspicuous manner as such on the outside of the envelope, sent to the customer via first class mail prior to the submission for payment of the customer's billing information, and that includes all of the information contained in b(i)-(vii) above and a Clear and Conspicuous statement of the procedures by which the customer can obtain a refund in the event the confirmation is inaccurate; *provided,* however, that this means of authorization shall not be deemed verifiable in instances in which Products are offered in a transaction involving a free-to-pay conversion and Preacquired Account Information.

13. "**Financial Institution**" means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)). An institution that is significantly engaged in financial activities is a Financial Institution.

14. "**Forced Upsell**" means the automatic bundling of any additional Product with the purchase of a Primary Product. For purposes of this Order, a Forced Upsell shall include, but not be limited to, any bundled additional Product from which consumers cannot opt-out, as well as any Upsell that uses a pre-checked checkbox.

15. "**Grant Product**" means any Product, including a plan or program, that is represented, directly or by implication, to assist a consumer in any manner in obtaining a grant or similar financial assistance from the government or any other source.

16. "**In Close Proximity**" shall mean for any communication presented solely through visual means: on the same webpage, online service page, mobile device screen, or other electronic page, and immediately adjacent to the cost-related claim and viewable in conjunction with the cost-related claim in such a manner that the communication is viewable without requiring the

consumer to scroll up, down, or sideways, or otherwise adjust their browser window or mobile

device window in any way.  Representations or disclosures in response to cost-related claims that

are accessed or displayed through hyperlinks, pop-ups, interstitials, or other means are NOT "In

Close Proximity."

17. **"Individual Defendants"** means Jeremy Johnson, Duane Fielding, Andy Johnson, Loyd

Johnston, Scott Leavitt, Scott Muir, Ryan Riddle, and Terrason Spinks, individually, collectively,

or in any combination.

18. **"Investment Opportunity"** means anything, tangible or intangible, including a program or

plan, that is offered for sale, sold, or traded based wholly or in part on representations, either

express or implied, about past, present, or future income, earnings, profit, or appreciation.

19. **"IWorks Defendant(s)"** means the Corporate Defendants and the Individual Defendants,

individually, collectively, or in any combination.

20. **"Marketing Affiliate"** means any person or entity, including third-party marketers and

Affiliate Networks, who participates in an Affiliate Program.

21. **"Material,"** in the context of the advertising, marketing, promotion, offering for sale, or sale

of any Product, means likely to affect a person's choice of, or conduct regarding, a Product.

22. **"Material Connection"** means any relationship that materially affects the weight or

credibility of any Endorsement and that would not be reasonably expected by consumers.

23. **"Material Fact"** means any statement that is likely to affect a person's choice of, or conduct

regarding, a Product.

24. **"Merchant Account"** means any account with an acquiring bank or other Financial

Institution, service provider, payment processor, independent sales organization, or other entity

that enables an individual, a business, or other organization to accept payments of any kind.

25. **"Muir corporate defendants"** means Big Bucks Pro, Inc., Blue Net Progress, Inc., Bolt Marketing, Inc., Business Loan Success, Inc., CS Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Mist Marketing, Inc., Net Discounts, Inc., Optimum Assistance, Inc., Razor Processing, Inc., and Simcor Marketing, Inc., individually, collectively, or in any combination.

26. **"Muir defendants"** means Scott Muir, Big Bucks Pro, Inc., Blue Net Progress, Inc., Bolt Marketing, Inc., Business Loan Success, Inc., CS Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Mist Marketing, Inc., Net Discounts, Inc., Optimum Assistance, Inc., Razor Processing, Inc., and Simcor Marketing, Inc., individually, collectively, or in any combination.

27. **"Negative Option Feature"** means, in an offer or agreement to sell or provide any Product, a provision under which the customer's silence or failure to take an affirmative action to reject a Product or to cancel the agreement is interpreted by the seller or provider as acceptance of the offer.

28. **"Plaintiff"** or **"Commission"** or **"FTC"** means the Federal Trade Commission.

29. **"Preacquired Account Information"** means any information that enables a seller to cause a charge to be placed against a consumer's account without obtaining the account number directly from the consumer during the transaction pursuant to which the account will be charged.

30. **"Primary Product"** means the chief or principal Product that is the subject of the marketing materials or sales offers.

31. **"Product"** means products, goods, and services, and includes online memberships.

32. **"Representatives"** means any Muir defendant's agents, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, and those persons in active concert or participation with any Muir defendant, who receive actual notice of this Order by personal service or otherwise.

33. **"Sensitive Personal Information"** means nonpublic information concerning an individual consumer, including, but not limited to: Social Security number, in whole or in part; credit and/or debit card information, in whole or in part, including credit and/or debit card number, expiration date, and transaction detail records; Financial Institution account information or transaction records, in whole or in part, including the ABA routing number, account number, check number, and transaction detail records; and account information or transaction records relating to nontraditional payment systems, such as any telecommunications billing system, PayPal, and BillMeLater.

34. **"Upsell"** shall mean any Product that is offered to the consumer at the time the consumer purchases the Primary Product.

35. The words "**and**" and "**or**" shall be understood to have both conjunctive and disjunctive meanings.

## I.

## CONDUCT PROHIBITIONS

**IT IS THEREFORE ORDERED** that the defendant Scott Muir, whether acting directly or through any officer, agent, servant, employee, sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, is hereby permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell, or Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;

B. Holding any ownership or other financial interest in any business entity that engages in or Assists others in the advertising, marketing, promoting, offering for sale, or selling any Product

as a Forced Upsell;

C. Serving as an officer, director, or manager of any business entity, unless Defendant Muir actually controls, participates in, or has knowledge of the daily operations of that entity;

D. Acting as a signatory on any account for any business entity unless Defendant Muir controls, participates in, or has knowledge of the daily operations of that entity; and

E. Applying for any Merchant Account for any business entity unless Defendant Muir controls, participates in, or has knowledge of the daily operations of that business entity.

Provided further, nothing in this Order shall be construed as an exception to this Section I.

## II.

## PROHIBITED PRACTICES

**IT IS FURTHER ORDERED** that:

A. In connection with the advertising, marketing, promotion, offering for sale, or sale of any Product, the Muir defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device are hereby restrained and enjoined from:

    1.  Making or Assisting others in making, either directly or indirectly, expressly or by implication, any false or misleading statement or representation of Material Fact;

    2.  Misrepresenting or Assisting others in misrepresenting, either directly or indirectly, expressly or by implication:

        a.  That government grants are generally available to individuals to pay personal expenses;

        b.  That consumers will be able to find government grants to pay personal expenses using materials provided by, marketed by, or advertised by any Muir defendant;

c.   That consumers who purchase an Investment Opportunity provided by, marketed by, or advertised by any Muir defendant are likely to make money;

d.   The income, earnings, profits, or sales volume likely to be achieved from an Investment Opportunity;

e.   Any Material aspect of a Continuity Program or of a Negative Option Feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s);

f.   The total cost to purchase, receive, or use, and the quantity of, any Product that is the subject of the sales offer;

g.   The risks associated with a Product, including that a Product is Risk-Free, Low Risk, or otherwise results in no obligation to the consumer;

h.   Any Material restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

i.   Any Material aspect of the performance, efficacy, nature, or central characteristics of any Product that is the subject of the sales offer;

j.   Any Material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

k.   The status of any user or Endorser of a Product, including, but not limited to, misrepresenting that the user or Endorser is an independent user or ordinary, unbiased consumer of the Product, or

l.   That consumer Endorsements reflect typical consumer experiences with a

Product;

3.  Failing to disclose Clearly and Conspicuously:

   a.  The total cost to purchase, receive, or use any Product that is the subject of the sales offer;

   b.  The total cost to purchase, receive, or use any Product in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

   c.  The total cost to purchase, receive, or use any Product subject to the sales offer, in equal or greater size and prominence, and In Close Proximity to, any cost related claim including, but not limited to, any claim that the Product is "free," has a minimal cost, or is being offered on a trial basis or at an introductory or limited time reduced cost;

   d.  All Material terms and conditions of any Negative Option Feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s);

   e.  All Material terms and conditions of any Negative Option Feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s) in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

f.   All Material terms and conditions of any Continuity Plan;

g.   All Material terms and conditions of any Continuity Plan in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

h.   All Material terms and conditions of any Continuity Plan or Negative Option Feature in equal or greater size and prominence, and In Close Proximity to, any cost related claim including, but not limited to, any claim that a product is "free" or "no cost," if a cost related claim is made in the course of advertising, offering for sale, or otherwise marketing any Product; and

i.   All Material terms and conditions of any Continuity Program or Negative Option Feature in equal or greater size and prominence, and In Close Proximity to, any claim about risks associated with a Product, including claims that a Product is Risk Free, Low Risk, or otherwise results in no obligation to the consumer, if such claim is made in the course of advertising, offering for sale, or otherwise marketing any Product;

4.   Failing to disclose Clearly and Conspicuously any other Material information, including, but not limited to:

a.   The quantity of any Product that is the subject of the sales offer;

b.   Any Material term or condition including, but not limited to, any restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

c.   Any Material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for any Product including, but not limited to, if there is a policy of not making refunds, cancellations, exchanges, or repurchases;

d.  That Endorsers received funds or some other benefit, directly or indirectly, from any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement including, but not limited to, if Endorsers received funds or some other benefit from a non profit charitable fund that is directly or indirectly associated with any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement, provided that, this provision shall not apply where (1) the Endorser is an expert or Person known to a significant portion of the viewing public, and (2) the endorsement appears in an advertisement where payment would be ordinarily expected by viewers; and

e.  Any Material Connection, when one exists, between any user or Endorser and any other individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product;

B.  The Muir defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device are hereby restrained and enjoined from charging or debiting a consumer's bank, credit, or other financial account, or otherwise assessing charges to a consumer, without first obtaining the consumer's Express Verifiable Authorization; and

C.  In connection with applying for or maintaining Merchant Accounts, the Muir defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device are hereby permanently restrained and enjoined from:

1.  Making or Assisting others in making, expressly or by implication, any false or misleading statement or representation including, but not limited to, any statement or

representation concerning the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind; or

2. Failing to disclose to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind any material information related to a Merchant Account including, but not limited to, the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, and any connection between the owner, manager, director, or officer of the applicant for or holder of a Merchant Account and any third person who has been or is placed in a Merchant Account monitoring program, had a Merchant Account terminated by a payment processor or a Financial Institution, or has been fined or otherwise disciplined in connection with a Merchant Account by a payment processor or a Financial Institution.

### III

### PROHIBITION AGAINST VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, or sale of any Product, the Muir defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby permanently restrained and enjoined from:

A.  Engaging in any recurring debiting of a consumer's account without first obtaining a valid written pre-authorization for preauthorized electronic fund transfers from the consumer's account, which pre-authorization is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, as more fully set out in Section 1005.10 of the Consumer Financial Protection Bureau's Official Staff Commentary to Regulation E, 12 C.F.R. § 1005.10(b) (5) and (6), Supp. I;

B.  Engaging in any recurring debiting of a consumer's account without first providing a copy of a valid written pre-authorization to the consumer for preauthorized electronic fund transfers from the consumer's account, which copy is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, as more fully set out in Section 1005.10 of the Consumer Financial Protection Bureau's Official Staff Commentary to Regulation E, 12 C.F.R. § 1005.10(b)(5) and (6), Supp.I; and

C.  Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain a written authorization for preauthorized electronic fund transfers, as required in Section 1005.10(b)(7) of Consumer Financial Protection Bureau's Official Staff Commentary to Regulation E.

## IV.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that monetary judgment is entered in favor of the Commission and against the Muir defendants, jointly and severally, in the amount of **Two Million Five Hundred Eighty-Seven Thousand Three Hundred Thirteen Dollars and Ninety-Nine Cents ($2,587,313.99)**, which represents the total unreimbursed consumer injury caused by the Muir defendants' practices alleged in the Complaint, *provided however*, full payment of the foregoing amount shall be suspended: based on the general unsecured claim distribution in the amount of **One Thousand Two Hundred Twenty-Four Dollars and Seventy-Seven Cents ($1,224.77)**, previously received by the Commission in the Bankruptcy Case; upon satisfaction of the obligations set forth in paragraphs A, B and C of this Section; and subject to the conditions set forth in paragraphs D, E, F, and G of this Section:

A. Effective upon the entry of this Order, the Muir defendants shall surrender to the Commission all control, title, dominion, and interest in all Assets of the Muir corporate defendants, including all funds held in any Muir corporate defendant account, and all Muir corporate defendant Assets in the possession of the Receiver.

B. Within ten (10) days of entry of this Order, the Receiver shall cause all Muir corporate defendants' frozen funds previously transferred to the Receiver, to be forwarded to the Commission in a manner as the Commission may direct;

C. Defendant Muir shall, within ten (10) days of entry of this Order, execute such documents as necessary to transfer titles or possession of all Muir corporate defendant Assets in the possession of the Receiver;

D. Defendant Muir agrees:

1.   That the judgment ordered by Subsection A of this Section is not dischargeable in bankruptcy;

2.   To the filing by the Commission in his Bankruptcy Case of a:

a.      Complaint to Determine Nondischargeability of Debt Owed in the form attached as Attachment A; and

b.      Stipulation for Entry of Stipulated Judgment for Nondischargeability of Debt owed to the Federal Trade Commission in the form attached as Attachment B, which defendant Muir has executed concurrently with this Order, determining that the judgment ordered by Subsection A of this Section, including the conditions set forth in paragraphs G and H of this Section, are excepted from discharge pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. §523(a)(2)(A);

E.  All funds paid to the Commission pursuant to this Order shall be deposited into an account administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress, and any attendant expenses for the administration of such equitable relief.  In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to I Works Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. The Muir defendants shall have no right to challenge the Commission's choice of remedies under this Section.  The Muir defendants shall have no right to contest the manner of distribution chosen by the Commission;

F.  The Muir defendants relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law.  The Muir defendants shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise;

G.  The Commission's agreement to this Order is expressly premised upon:  (1) the truthfulness, accuracy, and completeness of the Muir defendants' sworn financial statements and supporting documents submitted to the Commission, as well as all subsequent addenda thereto, all of which the Muir defendants assert were truthful, accurate, and complete at the time they were submitted; and (2) the truthfulness, accuracy, and completeness of each Muir defendant's testimony at any asset deposition.  The Muir defendants and the Commission stipulate that the Muir defendants' financial statements and supporting documents and testimony, if any, provide the basis for the Assets listed in this Order and include material information upon which the Commission relied in negotiating and agreeing to this Order.  The Muir defendants and the Commission stipulate that the Commission has relied on the truthfulness, accuracy, and completeness of the Muir defendants' financial statements and supporting documents and any testimony in agreeing to the terms of this Order and that the Commission would not have entered into this Order but for the truthfulness, accuracy, and completeness of the Muir defendants' financial statements and supporting documents and any testimony;

H.  If, upon motion by the Commission, this Court finds that a Muir defendant has failed to disclose any material Asset or materially misstated the value of any Asset in the financial statements or related documents described above, or in their testimony at any asset deposition, or has made any other material misstatement or omission in the financial statements or related documents described above, or in their testimony at an asset deposition, then as to that Muir defendant and defendant Muir, this Order shall be reopened and suspension of the judgment shall

be lifted for the purpose of requiring payment of monetary relief in the amount of **Two Million**

**Five Hundred Eighty-Seven Thousand Three Hundred Thirteen Dollars and Ninety-Nine**

**Cents ($2,587,313.99)**, less the sum of any amounts paid to the Commission pursuant to this

Section IV. *Provided, however,* that in all other respects this Order shall remain in full force and

effect, unless otherwise ordered by the Court;

I.   Upon any reinstatement of the monetary judgment, the Court shall make an express

determination that the monetary judgment shall be immediately due and payable as to that Muir

defendant and defendant Muir.  The Commission shall be entitled to interest on the judgment,

computed from the day of entry of this Order, at the rate prescribed by 18 U.S.C. § 1961, as

amended, on any outstanding amounts not paid.  The Commission shall be permitted to execute

on the judgment immediately after the reinstatement of the monetary judgment and engage in

discovery in aid of execution;

J.   Proceedings instituted under this Section are in addition to, and not in lieu of, any other civil

or criminal remedies that may be provided by law, including any other proceedings the

Commission may initiate to enforce this Order;

K.  The Muir defendants agree that they will not, whether acting directly or through any sole

proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division,

or other entity submit to any federal or state tax authority any return, amended return, or other

official document that takes a deduction for, or seeks a tax refund or other favorable treatment

for, any payment by any Muir defendant pursuant to this Order.  The Muir defendants further

stipulate that they will not seek a credit or refund of any kind for federal or state taxes or

penalties for tax years 2006 to 2010.  However, if any Muir defendant should otherwise obtain a

credit or refund of any federal or state taxes or penalties paid for tax years 2006 to 2010, then

such Muir defendant shall promptly pay the Commission the amount of such credit or refund, together with any interest that the Muir defendant has earned in connection with any such credit or refund.

## V.

## BAN ON USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that the Muir defendants and their Representatives are permanently restrained and enjoined from:

A.  Disclosing to any third party, using, or benefitting from consumer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), or would otherwise allow the accessing of a charge against a consumer's account, of any person which the IWorks Defendants obtained prior to entry of this Order in connection with the advertising, marketing, promotion, or offering of any Products;

B.  Failing to provide to the Receiver such consumer information in all forms that is in any Muir defendants' possession, custody, or control within five (5) business days after entry of this Order.

C.  Failing to dispose of such consumer information in all forms that is in any Muir defendants' possession, custody, or control within fifteen (15) days after entry of this Order.  Disposal shall be by means that protect against unauthorized access to the consumer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the consumer information cannot practicably be read or reconstructed.

*Provided, however,* that consumer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## VI.

### LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze against the Assets of the Muir corporate defendants pursuant to Section VI of the Preliminary Injunction entered by this Court on February 10, 2011, shall be lifted for the sole purpose of transferring funds to the Commission pursuant to Section IV of this Order, and the asset freeze shall be dissolved upon transfer of all such funds.

## VII.

### COMPLETION OF RECEIVERSHIP

**IT IS ORDERED** that the Receiver appointed by this Court's Preliminary Injunction entered on February 10, 2011, Robb Evans & Associates, is hereby appointed Receiver for the Muir corporate defendants for the purpose of taking the necessary steps to wind down the businesses and affect the dissolution of the Muir corporate defendants, liquidate their Assets, and pay any net Assets to the FTC to satisfy the monetary judgment entered by this Order. The Receiver shall be the agent of this Court and shall be accountable directly to this Court. In carrying out these duties, the Receiver is authorized and directed to:

A.  Take any and all steps that the Receiver concludes are appropriate to wind down the Muir corporate defendants;

B.  Take any and all steps necessary or advisable to locate and liquidate all Assets of the Muir corporate defendants, cancel the Muir corporate defendants' contracts, collect on amounts owed to the Muir corporate defendants, and take such other steps as may be necessary to terminate and dissolve the Muir corporate defendants efficiently;

C.  Provide the FTC, upon request, with any business records of the Muir corporate defendants that:  (i) identify customers from whom the Muir corporate defendants collected payments, including the most recent known address, telephone number, and the amount of any fees paid by such customers; and (ii) identify customers who received refunds from the Muir corporate defendants and the amount of the refunds;

D.  Continue to exercise full control of the Muir corporate defendants and continue to collect, marshal, and take custody, control and possession of all the funds, property, premises, accounts, documents, mail, and other Assets of, or in the possession or under the control of, the Muir corporate defendants, wherever situated, the income and profits therefrom, and all sums of money now or hereafter due or owing to the Muir corporate defendants, with full power to collect, receive and take possession of all goods, chattels, rights, credits, monies, effects, lands, leases, books and records, limited partnership records, work papers, and records of accounts, including computer-maintained information, contracts, financial records, monies on hand in banks and other financial institutions, and other papers and documents of other individuals, partnerships or corporations whose interests are now held by or under the direction, possession, custody or control of the Muir corporate defendants (collectively, the "Muir Receivership Estate");

E.  Dispose of, or arrange for the disposal of, the records of the Muir corporate defendants no later than six months after the case is closed or the Court's approval of the Receiver's final report as to all remaining I Works Defendants, except that:

1.  To the extent that such records are reasonably available, the Receiver shall arrange for records sufficient to ascertain the funds that an individual consumer paid to the Muir

corporate defendants, and any refunds provided to individual consumers, to be retained

for a minimum of two years from the entry of this Order, and

2.   If state or local law regulating the Muir corporate defendants' business requires the

retention of particular records for a specified period, the Receiver shall arrange for such

records to be disposed of after the specified period has expired. To safeguard the privacy

of consumers, records containing personal financial information shall be shredded,

incinerated, or otherwise disposed of in a secure manner.  For records that must be

retained, the Receiver may elect to retain records in their original form, or to retain

photographic or electronic copies;

F.   Continue to perform all acts necessary or advisable to complete an accounting of the Assets

of the Muir corporate defendants, and prevent unauthorized transfer, withdrawal, or

misapplication of the Muir corporate defendants' Assets;

G.   Make payments and disbursements from the Muir Receivership Estate that are necessary or

advisable for carrying out the directions of, or exercising the authority granted by, this Order.

The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation

incurred by the Muir corporate defendants prior to the date of entry of the Temporary

Restraining Order in this action, except payments that the Receiver deems necessary or advisable

to secure and liquidate Assets of the Muir corporate defendant, such as rental payments or

payment of liens;

H.   Enter into contracts and purchase insurance as advisable or necessary;

I.   Perform all incidental acts that the Receiver deems to be advisable or necessary, which

include retaining, hiring, or dismissing any employees, independent contractors, and agents as

the Receiver deems advisable or necessary in the performance of duties and responsibilities under the statutory authority granted by this Order;

J.   Continue to institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

K.   Continue to defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Muir corporate defendants, as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

L.   Issue subpoenas to obtain documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the Muir Receivership Estate;

M.   Continue to maintain one or more bank accounts as designated depositories for funds of the Muir corporate defendants not disbursed to the FTC pursuant to Section IV of this Order, and make all payments and disbursements from the Muir Receivership Estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

N.   Continue to maintain accurate records of all receipts and expenditures that he makes as Receiver; and

O.   Continue to cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## VIII.

## COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver,

including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Muir corporate defendants. The Receiver must not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## IX.

### RECEIVER'S FINAL REPORT AND DISBURSEMENT OF ASSETS OF THE MUIR CORPORATE DEFENDANTS

**IT IS FURTHER ORDERED** that:

A.  The Receiver shall liquidate the Assets of the Muir corporate defendants as soon as practicable. No later than sixty (60) days from the date of the entry of this Order, the Receiver shall file and serve on the parties a report (the "Final Report on the Muir Corporate Defendants") to the Court that details the steps taken to dissolve the Muir Receivership Estate.  The Final Report on the Muir Corporate Defendants shall include an accounting of the Muir Receivership Estate's finances and total Assets and a description of what other actions, if any, must be taken to wind-down the Receivership.  The Receiver shall mail copies of the Final Report on the Muir Corporate Defendants to all known creditors of the Muir corporate defendants with a notice stating that any objections to paying any Assets of the Muir corporate defendants to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within thirty (30) days of the mailing of the Final Report on the Muir Corporate Defendants.  If subsequent actions (such as the completion of tax returns or further actions to recover funds for the Muir Receivership Estate) are appropriate, the Receiver shall file an additional report or reports ("Supplemental Report") describing the subsequent actions and a subsequent application for the

payment of fees and expenses related to the subsequent acts.

B.      The Court will review the Final Report on the Muir Corporate Defendants and any objections to the Final Report on the Muir Corporate Defendants and, absent a valid objection, will issue an order directing the Receiver to: (1) pay the reasonable costs and expenses of administering the Muir Receivership Estate, including the compensation of the Receiver and the Receiver's personnel authorized by Section VIII (Compensation of Receiver) of this Order or other orders of this Court, and the actual out-of-pocket costs incurred by the Receiver in carrying-out his duties; and (2) pay all remaining funds to the FTC as partial satisfaction of the judgment.

C.      With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a Supplemental Report.  If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve fund after the payments of fees and expenses approved by the Court in response to such a supplemental application, all funds remaining in the reserve fund shall be immediately paid to the FTC or its designated agent.

## X.

## TERMINATION OF THE RECEIVERSHIP

**IT IS FURTHER ORDERED** that upon completion by the Receiver of the tasks set forth in this Order, the Receivership over the Muir corporate defendants shall be dissolved and the Receiver discharged.

## XI.

## MONITORING BY THE MUIR DEFENDANTS

**IT IS FURTHER ORDERED** that, for a period of twelve (12) years from the date of entry of this Order, the Muir defendants, and their Representatives, in connection with the advertising, marketing, promoting, offering for sale, selling or provision of any Products on or through the Internet, the World Wide Web, or any web page or website, are hereby restrained and enjoined from failing to:

A.  Obtain contact information from any prospective Marketing Affiliate or Client.  In the case of a natural person, the Muir defendants shall obtain the prospective Marketing Affiliate's or Client's first and last name, physical address, country, telephone number, e-mail address, date of birth, and complete bank account information as to where payments are to be made.  In the case of business entities, the Muir defendants shall obtain the first and last name, physical address, country, telephone number, e-mail address, and date of birth for the natural person who owns, manages, or controls the prospective Marketing Affiliate or Client, and complete bank account information as to where payments are to be made;

B.  Require each Affiliate Network to obtain from its Marketing Affiliates and maintain the identifying information set forth in Subsection A of this Section prior to the Marketing Affiliate's or Affiliate Network's participation in any Muir defendant's Affiliate Program;

C.  Provide each prospective Marketing Affiliate or Client prior to such prospective Marketing Affiliate's acceptance into any Muir defendant's Affiliate Program or any Muir defendant providing services to a prospective Client:  (1) a copy of this Order; and (2) a Clear and Conspicuous statement in writing that engaging in acts or practices prohibited by this Order will

result in immediate termination of any Marketing Affiliate or Client and forfeiture of all monies

received from or owed to the Marketing Affiliate or Client;

D.  Obtain from each prospective Marketing Affiliate or Client prior to such prospective

Marketing Affiliate's acceptance into any Muir defendant's Affiliate Program or any Muir

defendant providing services to a prospective Client a signed and dated statement acknowledging

receipt of this Order and expressly agreeing to comply with this Order;

E.  Routinely monitor any marketing materials, including websites, emails, and pop-ups used by

each Marketing Affiliate to advertise, promote, market, offer for sale, or sell any Muir

defendant's Product(s);

F.  Routinely monitor any marketing materials, including websites, emails, and pop-ups used by

each Client to advertise, promote, market, offer for sale, or sell any Product(s) for which any

Muir defendant is providing services;

G.  Promptly and completely investigate any complaints received by any Muir defendant through

any source to determine whether any Marketing Affiliate or Client is engaging in acts or

practices prohibited by this Order;

H.  Review the sales websites for each Marketing Affiliate advertising, promoting, marketing,

offering for sale, or selling any Muir defendant's Product(s) at least once every thirty (30) days

to determine whether any Marketing Affiliate is engaging in acts or practices prohibited by this

Order;

I.   Review the sales websites advertising, promoting, marketing, offering for sale, or selling

each Client's Product for which the Muir defendant provides services, at least once every thirty

(30) days to determine whether any Client is engaging in acts or practices prohibited by this

Order;

J.  Immediately halt the processing of any payments or charges generated by any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order;

K.  Fully refund, within five (5) business days of discovery, any consumer whose account any Muir defendant has processed a charge against whose sale originated from any Marketing Affiliate or Client that is discovered to have engaged in, or is engaging in, acts or practices prohibited by this Order since the date of the Muir defendant's most recent review of the Marketing Affiliate's or Client's marketing materials, including the Marketing Affiliate's or Client's websites; and

L.  Terminate, immediately, any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order and cease payments to any such person.

*Provided, however*, that this Section does not authorize or require the Muir defendants to take any action that violates any federal, state, or local law.

## XII.

## COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's First Amended Complaint [DE 830] or related to the location of Assets or business records of any I Works Defendant, the Muir defendants shall cooperate in good faith with the FTC and appear at such places and times as the FTC shall reasonably request, after three (3) business days written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC.  Furthermore, Muir agrees to accept service of subpoenas from the FTC, and appear and provide truthful

testimony in any trial, deposition, or other proceeding, or produce or authenticate, if possible, any documents, related to or associated with the transactions or the occurrences that are the subject of the Complaint, pursuant to such subpoenas.

## XIII.

### ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that the Muir defendants shall obtain acknowledgments of receipt of this Order:

A.  Each of the Muir defendants, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.  For twelve (12) years after entry of this Order, defendant Muir for any business that defendant Muir, individually or collectively with any other I Works Defendant, is the majority owner or directly or indirectly controls, and each Muir corporate defendant, must deliver a copy of this Order to:   (1) all principals, officers, directors, and managers; (2) all employees, agents, and Representatives who participate in the type of conduct related to the subject matter of the Order; (3) all third-party facilitators such as list brokers, telemarketers or any entity related to the obtaining or use of a Merchant Account; and (4) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel. To all others, delivery must occur before they assume their responsibilities.

C.  From each individual or entity to which any Muir defendant delivered a copy of this Order that Muir defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## XIV.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that the Muir defendants shall make timely submissions

to the Commission:

A. One year after entry of this Order, each Muir defendant must submit a compliance report,

sworn under penalty of perjury:

    1.  Each Muir defendant must: (a) designate at least one telephone number and an email,

physical, and postal address as points of contact, which representatives of the FTC may

use to communicate with them; (b) identify all of that defendant's businesses by all of

their names, telephone numbers, and physical, postal, email, and Internet addresses; (c)

describe the activities of each business, including the products and services offered, the

means of advertising, marketing, and sales, and the involvement of any other IWorks

Defendant (which each Muir defendant must describe if he or she knows or should know

due to his or her own involvement); (d) describe in detail whether and how that defendant

is in compliance with each Section of this Order; and (e) provide a copy of each Order

Acknowledgment obtained pursuant to this Order, unless previously  submitted to the

Commission; and

    2.  Additionally, defendant Muir must:  (a) identify all telephone numbers and all

physical, postal, email and Internet addresses, including all residences; (b) identify all

business activities, including any business for which defendant Muir performs services

whether as an employee or otherwise and any entity in which defendant Muir has any

ownership interest; and (c) describe in detail his involvement in each such business,

including title, role, responsibilities, participation, authority, control, and any ownership;

B.      For twelve (12) years following entry of this Order, defendant Muir must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

1.   Defendant Muir must report any change in: (a) any designated point of contact; or (b) the structure of any entity that such defendant has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; and

2.   Additionally, defendant Muir must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such defendant performs services whether as an employee or otherwise and any entity in which such defendant has any ownership interest or otherwise has direct or indirect control, and identify the business's name, physical address, and Internet address, if any;

C.      Each Muir defendant must submit to the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against him or it within fourteen (14) days of its filing;

D.  Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 18 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:_____ " and supplying the date, signatory's full name, title (if applicable), and signature; and

E.  Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  FTC v. SCOTT MUIR, BIG BUCKS PRO, INC., BLUE NET PROGRESS, INC., BOLT MARKETING, INC., BUSINESS LOAN SUCCESS, INC., CS PROCESSING, INC., GGL REWARDS, INC., HIGHLIGHT MARKETING, INC., MIST MARKETING, INC., NET DISCOUNTS, INC., OPTIMUM ASSISTANCE, INC., RAZOR PROCESSING, INC., AND SIMCOR MARKETING, INC.  X110011.

## XV.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that the Muir defendants must create certain records for twelve (12) years after entry of the Order, and retain each such record for five (5) years. Specifically, each Muir corporate defendant and defendant Muir, for any business in which defendant Muir, individually or collectively with any other IWorks defendant, is a majority owner or directly or indirectly controls, must maintain the following records:

A.  Accounting records showing the revenues from all Products sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.  Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.  Customer files obtained after entry of this Order showing the names, addresses, telephone numbers, dollar amounts paid, refunds and chargebacks issued, and the quantity and description of Products purchased;

D.  Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E.  All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

F.  A copy of each advertisement, marketing email, banner advertisement, pop-up advertisement, mobile advertisement, web page, direct mail piece, telemarketing script, text advertisement, or other marketing material.

*Provided, however*, nothing in this Section shall relieve any Muir defendant of any responsibility under the Section entitled "Monitoring by the Muir Defendants" above.

## XVI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring defendant Muir's compliance with this Order:

A.  Within fourteen (14) days of receipt of a written request from a representative of the Commission, defendant Muir must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69;

B.  For matters concerning this Order, the Commission is authorized to communicate directly with defendant Muir.  Defendant Muir must permit representatives of the Commission to interview any employee or other person affiliated with defendant Muir who has agreed to such an interview.  The person interviewed may have counsel present; and

C.  The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to defendant Muir or any individual or entity affiliated with defendant Muir, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XVII.

### SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another.  If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XVIII.

### RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

The parties, and their respective counsel, hereby consent to the terms and conditions of the Order as set forth above and consent to the immediate entry thereof.

**SO ORDERED,** this __5th__ day of __April__, 201_4_, at __10:22 p.__.n., Pacific Time.

United States District Judge

**STIPULATED AND AGREED TO BY:**

For Defendants

Date: 3/24/14

Scott Muir
*Individually and for Big Bucks Pro, Inc., Blue Net Progress, Inc., Bolt Marketing, Inc., Business Loan Success, Inc., CS Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Mist Marketing, Inc., Net Discounts, Inc., Optimum Assistance, Inc., Razor Processing, Inc., and Simcor Marketing, Inc.*

Date: 3/21/14

D. Neal Tomlinson, Esq.
Karl O. Riley, Esq.
Snell & Wilmer, LLP
3883 Howard Hughes Pkwy., Suite 1100
Las Vegas, NV 89169
*Attorneys for defendant Scott Muir, Big Bucks Pro, Inc., Blue Net Progress, Inc., Bolt Marketing, Inc., Business Loan Success, Inc., CS Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Mist Marketing, Inc., Net Discounts, Inc., Optimum Assistance, Inc., Razor Processing, Inc., and Simcor Marketing, Inc. and the Fielding Defendants*

1

For Plaintiff Federal Trade Commission:

2

Date: 3-31-14

Collot Guerard
3   J. Ronald Brooke, Jr.
Janice L. Kopec
4   Dotan Weinman
Attorneys for Plaintiff
5   Federal Trade Commission
600 Pennsylvania Avenue, NW
6   Room 286
Washington, DC 20580
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# ATTACHMENT A

Michael P. Mora (IL 6199875)
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
Telephone: (202) 326-3373
Facsimile: (202) 326-2558
mmora@ftc.gov

---

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

---

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. 11-37432 |
| Scott Wallace Muir & | ) | (a Chapter 7 Case) |
| Lynette Holmes Muir, | ) | Judge Joel T. Marker |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Federal Trade Commission, | ) | Adv. Proceeding No. _____ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Scott Wallace Muir, | ) | |
| | ) | |
| Defendant. | ) | |

---

### COMPLAINT FOR NONDISCHARGEABILITY OF DEBT

---

Plaintiff Federal Trade Commission ("FTC" or "Commission") brings this adversary

proceeding pursuant to 11 U.S.C. § 523(a)(2)(A) and (c), seeking an order determining that a

judgment obtained by the FTC against Defendant Scott Wallace Muir ("Defendant" or "Muir") is

excepted from discharge.

1

JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523.

2.      Venue in the District of Utah is proper under 28 U.S.C. § 1409(a).

3.      This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

BACKGROUND

4.      This Adversary Proceeding relates to *In re Scott Wallace Muir & Lynette Holmes Muir,* Case No. 11-37432 (Chapter 7), now pending in this Court.   The Commission is a creditor with a general unsecured claim against Defendant pursuant to a Judgment and Final Order ("District Court Judgment") entered in the United States District Court for the District of Nevada ("District Court") on _____ , in the case styled *FTC v. Jeremy Johnson, et al.*, Case No. 2:10-cv-02203-RLH -GWF (D. Nev.) ("Enforcement Action").   A copy of the District Court Judgment is attached as FTC Exhibit 1 and incorporated by reference.

5.      On February 25, 2013, the FTC filed an Amended Complaint in the Enforcement Action against Defendant Muir, his nephew Jeremy Johnson ("Johnson"), eight other individuals, I Works, Inc., and 60 other corporations for engaging in a far-reaching Internet scheme that made more than $275 million by luring consumers into deceptive "trial" memberships, and bogus government-grant and money-making schemes.   Since 2006, Muir and his co-defendants generated more than $350 million in sales and caused more than $289 million in unreimbursed

2

consumer injury.   *See generally*, Amended Complaint ¶ ¶ 4-440.   A copy of the Amended

Complaint is attached as FTC Exhibit 2 and incorporated by reference.

6.      The District Court Judgment includes a money judgment in favor of the

Commission and against Defendant in the principal amount of $2,588,313.00.   District Court

Judgment ¶ ___.   Based upon financial statements and supporting documents provided by

Defendant to the FTC, enforcement of the money judgment has been suspended.   The money

judgment may be reinstated by the District Court in accordance with ¶ ___ therein.

<u>PLAINTIFF</u>

7.      The FTC is an independent agency of the United States Government created by

statute.   15 U.S.C. §§ 41-58.   The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

which prohibits unfair or deceptive acts or practices in or affecting commerce.

8.      The FTC is authorized to initiate federal district court proceedings, by its own

attorneys, to enjoin violations of the FTC Act, and to secure such equitable relief as may be

appropriate in each case, including rescission or reformation of contracts, restitution, the refund

of monies paid, and the disgorgement of ill-gotten monies.   15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B),

and 57b.

<u>DEFENDANT</u>

9.      Defendant Scott Wallace Muir is the titular owner and officer of at least 12 shell

companies that Muir and his co-defendants established to act as fronts on applications to obtain

new merchant accounts.   These shell companies included his co-defendants Big Bucks Pro, Blue

Net Progress, Bolt Marketing, Business Loan Success, CS Processing, GGL Rewards, Highlight

Marketing, Mist Marketing, Net Discounts, Optimum Assistance, Razor Processing, and Simcor Processing.

<u>MUIR'S AND HIS CO-DEFENDANTS' COURSE OF CONDUCT</u>

10.     The FTC incorporates ¶ ¶ 4-440 of the Amended Complaint in the Enforcement Action by reference.   Muir and his co-defendants operated as a common enterprise while engaging in the deceptive acts and practices set forth below.   Muir and his co-defendants conducted the business practices described below through an interrelated network of companies that had common ownership, business functions, employees, and office locations; that commingled funds; and that shared one another's marketing materials.   Muir formulated, directed, controlled, had the authority to control, or participated in the acts and practices of his corporate co-defendants.

11.     Muir and his co-defendants lured consumers into "trial" memberships for bogus government-grant and money-making schemes, and then repeatedly charged monthly fees for these and other memberships the consumers never ordered.

12.     The operation used websites that pitched various money-making programs or touted the availability of government grants to pay personal expenses. The websites offered "free" information at no risk and ask consumers to provide their credit or debit card numbers to pay a small shipping and handling fee such as $1.99.   But when consumers provided their billing information, Muir and his co-defendants charged them a hefty one-time fee of up to $129.95 and monthly recurring fees of up to $59.95 for the advertised programs, and other monthly fees for unrelated programs.

13.     This scheme caused more than 500,000 consumers to seek chargebacks – reversals of charges to their credit cards or debits to their bank accounts.   The high number of chargebacks landed Muir and his co-defendants in VISA's and MasterCard's chargeback monitoring programs, resulted in millions of dollars in fines for excessive chargebacks, and prevented Muir and his co-defendants from getting access to the credit card and debit card billing systems using their own names.   To keep the scheme going, Muir and his co-defendants deceived banks into giving them continued access to these billing systems by creating 51 shell companies with figurehead officers, and by providing the banks with false "clean" versions of their websites.

14.     On behalf of I Works, Muir obtained merchant accounts in the name of one or more shell companies so that defendants could continue to process the credit and debit card charges for defendants' deceptive scheme from consumers.   Muir had signatory authority over at least 12 accounts at three different banks, all of which are titled in the name of shell companies.

15.     The sum of the revenues earned by the 12 corporate co-defendants that Muir owned and controlled, and compensation paid to him from the massive common enterprise composed of Muir and all of his co-defendants, through his co-defendant Employee Plus, is $2,588, 313.00, the amount of the District Court Judgment against Muir.

## COUNT I
### (NONDISCHARGEABLE DEBT FOR MONEY OBTAINED BY
### FALSE PRETENSES, FALSE REPRESENTATIONS OR ACTUAL FRAUD)

16.     The Commission repeats and realleges the allegations set forth in ¶¶ 4-440 of the Amended Complaint in the Enforcement Action, and ¶¶ 4-15 above.

17.     In numerous instances, in connection with the marketing and sale of grant-related products or services, Defendant represented, in concert with his co-defendants, directly or indirectly, expressly or by implication, that consumers using their grant product were likely to find and obtain government grants to pay personal expenses.

18.     The representation set forth in ¶ 17 of this Complaint is false, misleading, and/or was not substantiated at the time the representation was made because consumers using Defendant's grant product were unlikely to find and obtain government grants to pay personal expenses.

19.     Therefore, Defendant's representation set forth in ¶ 17 of this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

20.     In numerous instances, in connection with the marketing and sale of make-money products or services, Defendant represented, in concert with his co-defendants, directly or indirectly, expressly or by implication, to consumers that consumers were likely to earn substantial income such as $200 - $943 or more per day by using products marketed and sold by them.

21.     The representation set forth in ¶ 20 of this Complaint was false, misleading, and/or was not substantiated at the time the representation was made because consumers using Defendant's and his co-defendants' make-money products were not likely to earn substantial income such as $200 - $943 or more per day.

22.     Therefore, Defendant's representation set forth in ¶ 20 of this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

23.     In numerous instances, in connection with the marketing and sale of various products or services, including grant and make-money products, Defendant represented, in concert with his co-defendants, directly or indirectly, expressly or by implication, that their offers were free or risk-free.

24.     In truth and in fact, Defendant's and his co-defendants' offers were not free or risk-free.   Consumers who provided their billing information to pay a nominal fee were likely to be enrolled in Negative Option Plans for a core product and billed high one-time and recurring amounts if they did not cancel during undisclosed or poorly disclosed trial memberships of limited duration.   Defendant and his co-defendants also immediately enrolled consumers into Forced Upsells with high monthly fees.

25.     Therefore, Defendant's representations as set forth in ¶ 23 of this Complaint constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

26.     In numerous instances, in connection with the marketing and sale of various products or services, including products that purported to enable consumers to obtain government grants for personal expenses and products that purported to enable consumers to earn money, Defendant and his co-defendants represented that consumers needed to pay only a nominal amount, such as $1.99 or $2.99, for a shipping and handling fee.

7

27.     In numerous instances in which Defendant and his co-defendants made the representation set forth in ¶ 26 of this Complaint, they failed to disclose, or disclose adequately, to consumers, material terms and conditions of their offer, including:

A. that they enrolled consumers in Negative Option Plans for not only the product or service that was the subject of the advertised offer, but for other products or services as well;

B. the amount of the one-time and recurring charges and the frequency and duration of the recurring charges associated with the Negative Option Plans;

C. that consumers must cancel the Negative Option Plans within a limited period to avoid the one-time and recurring charges;

D. the period during which consumers must cancel the Negative Option Plans in order to avoid one-time and recurring charges;

E. that each Negative Option Plan must be cancelled separately and the procedure for cancelling the Plans.

28.     Defendant's failure to disclose, or disclose adequately, the material information described in ¶ 27 above, in light of the representation described in ¶ 26 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

29.     In connection with the marketing and sale of grant-related products or services, Defendant and his co-defendants represented, directly or indirectly, expressly or by implication, that consumers who used their grant product were likely to obtain grants such as those obtained by consumers in the testimonials appearing on websites advertising their grant product.

8

30.     The representation set forth in ¶ 29 of this Complaint was false or was not substantiated at the time the representation was made because consumers who uses Defendant's and his co-defendants' grant product were not likely to obtain grants such as those obtained by consumers in the testimonials appearing on websites advertising their grant product.

31.     Therefore, Defendant's representations set forth in ¶ 29 above constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

32.     In numerous instances in connection with the marketing and sale of various products or services, including products to obtain government grants to pay personal expenses and make-money opportunities, Defendant and his co-defendants represented that the positive articles and other web pages about their grant and make-money opportunities were independent reviews that reflected the opinions of unbiased consumers who successfully used their products or services.

33.     In truth and in fact, the positive articles and other web pages were not independent reviews reflecting the opinions of unbiased consumers. The positive articles and other web pages were created by Defendant, his co-defendants, and their agents.

34.     Therefore, Defendant's representation set forth in Paragraph 32 of this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

35.     In numerous instances in connection with the marketing and sale of various products or services, including products to obtain government grants to pay personal expenses

and make-money opportunities, Defendant and his co-defendants or their agents created and posted hundreds of positive articles and other web pages about their products or services.

36.     In numerous instances in connection with the positive articles and other web pages described in ¶ 35 above, Defendant represented, in concert with his co-defendants, directly or indirectly, expressly or by implication, that these postings reflected endorsements from individuals who have successfully used their products or services.

37.     In numerous instances in connection with the representation set forth in ¶ 36, Defendant and his co-defendants have failed to disclose, or disclose adequately, that they or their agents created and posted the positive articles and other web pages.

38.     Defendant's failure to disclose, or to disclose adequately, the material information set forth in ¶ 37 above, in light of the representation described in ¶ 36 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

39.     Defendant's activities described above were conducted with knowledge of the falsity of the representations, or with reckless disregard of the truth or falsity of the representations.

40.     Defendant injured consumers by knowingly making false or misleading representations to consumers.   These misrepresentations were material to consumers in the course of deciding to pay Defendant, and consumers' reliance on Defendant's misrepresentations was justifiable.

41.     The total amount of the monies Defendant obtained from consumers by his misrepresentations was at least $2,588, 313.00, the amount of the judgment against Defendant in the Enforcement Action.

42.     Defendant is jointly and severally liable with his co-defendants in the Enforcement Action for these misrepresentations.

43.     Consequently, the District Court Judgment against Defendant is a debt for money, property, or services obtained by false pretenses, false representations or actual fraud, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Plaintiff requests that the Court enter an order:

(a)     Determining that the judgment against Defendant under the District Court Judgment in the Enforcement Action in the amount of $ 2,588, 313.00, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

(b)     Providing that, as set forth in the District Court Judgment, the enforcement of judgment against Defendant shall be suspended, subject to reinstatement by the District Court in accordance with ¶ ___; and

(c)     Granting Plaintiff such other and further relief as this case may require and the Court

deems just and proper.

Date:   _____, 2014                          Respectfully submitted,

                                                 /s/ Michael P. Mora
                                                 Michael P. Mora (IL 6199875)
                                                 Federal Trade Commission
                                                 600 Pennsylvania Ave., N.W.
                                                 Washington, D.C. 20580
                                                 Telephone: (202) 326-3373
                                                 Facsimile: (202) 326-2558
                                                 mmora@ftc.gov
                                                 *Counsel for FTC*

                                                 DAVID B. BARLOW
                                                 United States Attorney (#13117)
                                                 DANIEL D. PRICE
                                                 Assistant United States Attorney (#2646)
                                                 185 South State Street, Suite 300
                                                 Salt Lake City, UT    84111
                                                 Tel. (801)524-5682
                                                 daniel.price2@usdoj.gov
                                                 *Local Counsel for FTC*

# ATTACHMENT B

Michael P. Mora (IL 6199875)
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
Telephone: (202) 326-3373
Facsimile: (202) 326-2558
mmora@ftc.gov
_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH
_____

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. 11-37432 |
| Scott Wallace Muir & | ) | (a Chapter 7 Case) |
| Lynette Holmes Muir, | ) | Judge Joel T. Marker |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Federal Trade Commission, | ) | Adv. Proceeding No. _____ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Scott Wallace Muir, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MOTION FOR ENTRY OF STIPULATED JUDGMENT FOR
NONDISCHARGEABILITY OF DEBT**
_____

1.   On December 21, 2010, the FTC filed a complaint in the United States District Court for

the District of Nevada, *FTC v. Jeremy Johnson*, *et al.*, Case No. CV-02203-MMD-GWF,

against various defendants, including debtor Scott Muir.

1

2. On _____, the FTC and Scott Muir entered into a settlement, which was memorialized by a Stipulated Final Order for Permanent Injunction and Monetary Judgment ("Settlement"). A copy of the Stipulated Final Order for Permanent Injunction and Monetary Judgment is attached hereto as Exhibit A.

3. Pursuant to the Settlement, Plaintiff Federal Trade Commission ("FTC or Commission") filed a Complaint to Determine Nondischargeability of Debt under Section 523 of the Bankruptcy Code, 11 U.S.C. 523 (the "Complaint") on _____, 2014.

4. Debtor Scott Muir has waived service of the Summons and Complaint.

5. Debtor Scott Muir neither admits nor denies the allegations in the Complaint.

6. Pursuant to the Settlement, Debtor Scott Muir agrees to the entry of the Stipulated Judgment for Nondischargeability of Debt filed concurrently herewith.

/

/

/

/

/

/

/

/

/

2

7. Accordingly, the FTC respectfully requests that the Court enter the Stipulated Judgment.

Date: 2/3 , 2014

Respectfully submitted,

/s/ Michael P. Mora
Michael P. Mora (IL 6199875)
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
Telephone: (202) 326-3373
Facsimile: (202) 326-2558
mmora@ftc.gov
*Counsel for FTC*

DAVID B. BARLOW
United States Attorney (#13117)
DANIEL D. PRICE
Assistant United States Attorney (#2646)
185 South State Street, Suite 300
Salt Lake City, UT   84111
Tel. (801)524-5682
daniel.price2@usdoj.gov
*Local Counsel for FTC*

So stipulated:

Date: 2/3/14 , 2014

Scott Wallace Muir
618 Draper Heights Way
Draper, UT 84020
Debtor

3

Michael P. Mora (IL 6199875)
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
Telephone: (202) 326-3373
Facsimile: (202) 326-2558
mmora@ftc.gov

_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

_____

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. 11-37432 |
| Scott Wallace Muir & | ) | (a Chapter 7 Case) |
| Lynette Holmes Muir, | ) | Judge Joel T. Marker |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Federal Trade Commission, | ) | Adv. Proceeding No. _____ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Scott Wallace Muir, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## ORDER GRANTING MOTION FOR ENTRY OF STIPULATED JUDGMENT FOR
## NONDISCHARGEABILITY OF DEBT

_____

1

This matter came before the Court upon the FTC's Motion for Entry of Stipulated Judgment for Nondischargeability of Debt.   The Court finds that good cause exists to grant the relief requested in the Motion.   Accordingly, it is

ORDERED and ADJUDGED that:

1.      The Motion is GRANTED;

2.      (a)   The judgment against Defendant under Section _____ of the District Court Judgment (as defined in the Stipulation) in the amount of $2,587,313.99 is excepted from discharge under 11 U.S.C. § 523(a)(2)(A); and

        (b) Under Sections _____ of the District Court Judgment, the judgment is suspended, subject to reinstatement by the District Court.


-------------------------------------END OF DOCUMENT-------------------------------------------

2