1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FEDERAL TRADE COMMISSION,

                          Plaintiff,

     v.

JEREMY JOHNSON, et al.,

                        Defendants.

Case No. 2:10-cv-02203-MMD-GWF

ORDER

## I.    SUMMARY

This Order addresses the release of funds held in receivership for use to defend a parallel criminal case. Before the Court is Jeremy Johnson ("Johnson") and Loyd Johnson's ("Lloyd") motion for release of funds and request for a *Monsanto* hearing ("Motion"). (Dkt. no. 1620.) Both the Federal Trade Commission ("FTC") and the Court-appointed receiver ("Receiver") have filed briefs opposing the Motion. (Dkt. nos. 1628, 1629.) Defendants have filed replies to both responses. (Dkt. nos. 1630, 1631.)[1] Defendants have also moved for an expedited hearing. (Dkt. no. 1622.) For the reasons discussed below, the Motion is denied.

---

[1] Defendants' reply to the FTC's response appears to be identical to Defendants' initial Motion, with several new, unexplained, attachments. (Dkt. no 1630.) Cognizant of Defendants' pro se status, the Court will attempt to make sense of the attachments, but cautions Defendants against filing duplicative briefs and unexplained exhibits in the future.

## II.    BACKGROUND

### A.    The Civil Case

The FTC brought this suit on December 21, 2010, against Jeremy Johnson, Loyd Johnston, and numerous other individuals and entities alleging that Defendants engaged in fraudulent online business activities that deceptively enrolled unwitting consumers into memberships for products or services, then charged their credit cards or debit funds without consumer authorization or knowledge. (Dkt. nos. 1, 42.)

On February 10, 2011, the Court entered a preliminary injunction ("PI Order") against Defendants and appointed a receiver to manage the approximately $300 million of disputed funds the Commission alleges belongs to consumers defrauded by Defendants. (Dkt. no. 130.) The Court found that Defendants have likely engaged in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b). The Court further found that the FTC will likely prevail on the merits in this action, that the FTC sufficiently established a likelihood of irreparable harm to consumers in the absence of an injunction order to protect consumer assets involved in Defendants' scheme, and the public interest weighed in favor of immediate court action. Accordingly, the Court issued the preliminary injunction and appointed Robb Evans as the permanent receiver to collect and manage the subject assets. The PI Order identified the Defendants whose assets constitute the receivership estate: all assets of Jeremy Johnson, the named Corporate Defendants and certain Receivership Defendants. (*Id.* at 15-17.) The Court subsequently issued a Clarifying Order to clarify and confirm entities that are considered Receivership Defendants and assets that are deemed property of the receivership estate or Receivership Property. (Dkt. no. 897.) The Clarifying Order confirms that all entities and assets owned by Jeremy Johnson are deemed Receivership Property. (*Id.*) Lloyd Johnson is not covered under the PI Order or the Clarifying Order.

///

The Court subsequently granted partial summary judgment in favor of the FTC on two counts — counts II and VI — relating to deceptive acts or practices in connection with grant membership websites in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and one count — count X — for violation of Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b) as it relates to three of Defendant IWorks' customers.  (Dkt. no. 1586.) The Court established a framework for resolving the remaining websites. (*Id*.; dkt. no. 1599.) Trial is set to begin on January 19, 2016. (Dkt. no. 1602.)

**B.    The Criminal Case**

About six months after the filing of the FTC's civil complaint, the United States indicted Defendants Jeremy Johnson and IWorks with one count of mail fraud in a complaint filed in the District of Utah on June 10, 2011 ("the Criminal Case"). *See* Indictment, *United States v. Johnson*, No. 2:11-cr-00501-DN-PMW (D. Utah June 15, 2011), ECF No. 2. On March 6, 2013, a grand jury in the District of Utah returned a superseding indictment adding as defendants Scott Leavitt, Bryce Payne, Ryan Riddle, and Loyd Johnston, and charging criminal defendants with 85 new charges of bank fraud, wire fraud, money laundering, and conspiracy. *See* Superseding Indictment, *United States v. Johnson*, No. 2:11-cr-00501-DN-PMW (D. Utah Mar. 6, 2013), ECF No. 211. Trial is set for February 1, 2016. *See* Minute Order, *United States v. Johnson*, No. 2:11-cr-00501-DN-PMW, ECF No. 586 (D. Utah Aug. 7, 2015).

**C.    Requests for Release of Funds**

This Court denied an earlier request for release of funds filed by Johnson on June 6, 2011. (Dkt. no. 244.) In August 2012, the court in the Criminal Case denied Johnson's motion for the release of funds and a *Monsanto* hearing. The court held that the Utah District Court lacked jurisdiction over this Court's preliminary injunction, and that the proper forum for determining whether a *Monsanto* hearing was warranted is this Court. (Dkt. no. 1630-5.)

///

1    About two years later, on June 23, 2015, Defendants filed the most recent motion

2    for release of funds, asking this Court to grant a *Monsanto* hearing and to release

3    frozen assets for reasonable living expenses. (Dkt. no. 1620 at 20.) The next day,

4    Defendants filed a motion requesting an expedited hearing, citing the upcoming trial in

5    the Criminal Case and a disclosure deadline set for July 10, 2015, as the request for

6    their emergency request. (Dkt. no. 1622.) They failed to explain the reason for the delay

7    in bringing the Motion.

8    **III.    DISCUSSION**

9    The PI Order and the Clarifying Order do not cover Lloyd, who is not subject to

10   any asset freeze. The Court thus agrees with the FTC that Lloyd cannot have any claim

11   for release of funds held in the receivership estate.

12   The Court's earlier order evaluated Johnson's request in the context of the

13   Court's discretionary authority to release frozen funds for living expenses or attorney

14   fees for this case. (Dkt. no. 244.) Johnson's current request is slightly different. Johnson

15   now seeks a court order allowing a portion of the funds frozen in this civil case to be

16   used for his defense in his Criminal Case. Because this question involves a

17   constitutionally guaranteed right to counsel in a criminal matter, a different legal

18   framework applies.

19   It is clear that a criminal defendant does not have a Sixth Amendment right to

20   use illegally obtained funds to hire an attorney. *Caplin & Drysdale v. United States*, 491

21   U.S. 617, 630 (1989). In *United States v. Monsanto*, 491 U.S. 600 (1989), a companion

22   case to *Caplin & Drysdale*, the Supreme Court held that a defendant was not entitled to

23   unfreeze seized assets before a trial in order to pay for counsel as long as the assets

24   were seized pursuant to some finding of probable cause. 491 U.S. at 615.[2] *Monsanto*

25

26            [2]On remand, the Second Circuit concluded that the continuation of an order
     restraining assets that might otherwise be used to retain counsel required a pre-trial
27   hearing in order to determine whether any of the funds were, in fact, untainted. *United
     States v. Monsanto*, 924 F.2d 1186, 1203 (2d Cir. 1991), cert. denied, 112 S.Ct. 382
28   (1991).

1    dealt with the pre-trial seizure of assets in a criminal proceeding under 21 U.S.C.
2    853(e), which empowers courts to enter pre-trial restraining orders or injunctions to
3    preserve forfeitable property while criminal proceedings are pending. "That
4    determination has two parts, reflecting the requirements for forfeiture under federal law:
5    There must be probable cause to think (1) that the defendant has committed an offense
6    permitting forfeiture, and (2) that the property at issue has the requisite connection to
7    that crime." *Kaley v. United States*, 134 S. Ct. 1090, 1095 (2014).

8         The Ninth Circuit, interpreting *Caplin* and *Monsanto*, has recognized two
9    exceptions to the general rule that a defendant may not use assets frozen pursuant to
10   21 U.S.C. 853(e) to pay for counsel. First, "those who lack the means to hire counsel
11   may have a cognizable complaint if they are not provided with court appointed counsel."
12   *United States v. Unimex, Inc.*, 991 F.2d 546, 549 (9th Cir. 1993). And second, a
13   defendant may have a valid complaint involving "specific instances of abuse." *Id.* at 550

14        The government argues that, even though a right to counsel in a parallel criminal
15   case is involved, the Court must apply the same standard it applied when considering a
16   preliminary injunction. (Dkt. no. 1628 at 3-4.) While neither the Supreme Court nor the
17   Ninth Circuit have explicitly extended the *Monsanto* framework to assets frozen in
18   parallel civil proceedings, some courts have recognized that the same analysis should
19   apply.[3] *See, e.g., Commodity Futures Trading Comm'n v. Walsh*, No. 09 CR 722
20   (MGC), 2010 WL 882875, at *2 (S.D.N.Y. Mar. 9, 2010).

21        This Court agrees with these courts' reasoning. Allowing the government to
22   circumvent the narrowed exceptions recognized in *Monsanto* and *Unimex* by seizing
23   assets in parallel civil cases would undermine the important protections guaranteed
24   under the Sixth Amendment. While there are distinctions between pre-trial asset seizure
25   pursuant to 21 U.S.C. 853(e) and asset freeze pursuant to a preliminary injunction order

26

27        [3]The FTC did not cite to any case where the court declined to extend the
28   *Monsanto* framework to assets frozen in parallel civil proceedings. The Court found no
     such authority in its research.

1   in a parallel civil case, those distinctions are not substantial enough to disregard
2   application of the protections afforded under *Monsanto*.  In this case, for example, the
3   government did not have to prove the seized assets were connected to the crimes
4   charged in the Criminal Case. Instead, this Court found that the FTC was likely to
5   prevail on the merits of its claims and there was good cause to believe that the Court's
6   ability to grant relief would be frustrated unless an injunction was issued. (Dkt. no 130 at
7   4.) There has never been a determination of probable cause linking the assets held in
8   the receivership estate with the offenses in the Criminal Case, and such a probable
9   cause analysis was a key part of the Supreme Court's reasoning in *Monsanto.*
10  *Monsanto*, 491 U.S. at 616.

11       In sum, the Court finds that the *Monsanto* and *Unimex* framework applies to this
12  parallel civil case. To access the assets held in receivership, Johnson must show either
13  that he has been deprived of counsel or that the government has engaged in specific
14  abusive tactics. *Unimex, Inc.*, 991 F.2d at 549.  Assuming Johnson satisfies one of the
15  two exceptions, the Court may grant him a *Monsanto* hearing if his motion presents
16  sufficient evidence that he is unable to hire counsel with non-frozen funds and there is
17  reason to believe that some of the frozen assets may be unrelated to fraud and
18  available for use.  The Court does not reach the latter analysis because Johnson cannot
19  meet either of the exceptions.

20       **A.**   Johnson's Appointed Counsel

21       Johnson is represented by a court appointed attorney in his Criminal Case. (Dkt.
22  no. 1620 at 3.) Therefore, he does not, and cannot, argue that the PI Order establishing
23  the receivership estate entirely deprived him of his right to counsel in his Criminal Case.
24  Instead, Johnson frames his argument as a denial of his right to counsel of choice. This
25  argument, however, was addressed directly in *Caplin*: "The [Sixth] Amendment
26  guarantees defendants in criminal cases the right to adequate representation, but those
27  who do not have the means to hire their own lawyers have no cognizable complaint so
28  long as they are adequately represented by attorneys appointed by the courts." 491

U.S. at 624. *See also Unimex*, 991 F.2d at 549. Thus, to the extent Johnson argues that he has a right to access seized assets to retain private counsel of his choice in his Criminal Case, Johnson's constitutional right to counsel is not implicated because he has appointed counsel.

Johnson's argument may be more appropriately construed as alleging a denial of his right to adequate counsel. For example, Johnson argues that due to lack of funds, he is unable to adequately prepare rebuttals for the government's witnesses, access evidence, and hire experts and investigators. (Dkt. no. 1620 at 11.)  The government responds that Johnson and various individuals working on his behalf, including his criminal defense team and corporate counsel, have had frequent access to all of the electronic data at issue. Therefore any claim that he needs to hire experts to access said data is false. (Dkt. no. 1628 at 5.)

It is unclear why Johnson would need experts and investigators to obtain the impeachment evidence he describes. If Johnson believes he is being prevented from accessing evidence in the government's or the Receiver's possession, he may petition the Court for relief on those specific matters. Additionally, Johnson does not explain why he, rather than his appointed counsel, needs "skilled investigators" to interview witnesses.  More importantly, Johnson failed to identify any barriers to his appointed counsel requesting funding under the Criminal Justice Act to undertake the tasks he enumerated.  Johnson has not presented sufficient information for the Court to evaluate, let alone find, that his appointed counsel cannot adequately represent him without accessing assets held in the receivership estate pursuant to the PI Order.

### B.    Specific Instances of Abuse

Johnson argues that the government "filed the parallel proceedings to strategically manipulate the courts … and deny [him his] right to counsel." (Dkt. no. 1620 at 4.) Specifically, he argues that the government has taken advantage of the lower evidentiary burdens required to obtain a civil asset freeze in order to hinder his criminal defense, and that it knowingly filed actions in separate jurisdictions to further

1  complicate the case. (*Id.* at 4-5) He further argues that millions of dollars of assets were

2  improperly seized. (*Id.* at 13.) The Court finds that Johnson's allegations of abusive

3  tactics are tenuous.

4        First and foremost, the Court rejects Johnson's argument that assets were

5  improperly seized. Assets are held in the receivership estate pursuant to the Court's PI

6  Order. (Dkt. no. 130.) The PI Order appointed the Receiver and gave him authority to

7  collect and manage the Receivership Property subject to court supervision. While some

8  of the Receiver's actions have been rigorously challenged by Defendants, including

9  Johnson, the Court has not found that the Receiver has violated the PI Order or

10 engaged in abusive tactics in managing the Receivership Property.

11       As to Johnson's claim that the filing of parallel proceedings in separate

12 jurisdictions amounts to abusive tactics, the Court finds his contention to be

13 unsupported. As an initial matter, the Court does not disagree with the general

14 contention that obtaining an asset freeze in a civil case and then criminally prosecuting

15 a defendant in a different jurisdiction may create significant hurdles, and may have the

16 effect of preventing a defendant from using frozen funds for a legal defense without ever

17 establishing probable cause that the funds were related to the underlying crimes.

18 However, this general contention does not compel a finding of abuse when viewed in

19 the context of this case, particularly given the Court's rulings and the posture of this

20 case. The FTC initiated this action on December 21, 2010. (Dkt. no. 1.) The Court

21 issued a temporary restraining order and set a hearing on the FTC's motion for

22 preliminary injunction. (Dkt. nos. 44, 50.) Following a hearing, the Court issued the PI

23 Order on February 10, 2011. Two years later, on March 19, 2013, after extensive

24 briefing and a hearing, the Court granted the motion to clarify the injunction. (Dkt. nos.

25 884, 897.)  The Court subsequently granted summary judgment in favor of the FTC on

26 three counts, again after extensive briefing and a hearing. (Dkt. no. 1586.)  At this stage

27 of the proceedings, the Court has not only determined that the FTC can demonstrate

28 likelihood of success on the merits but has determined liability on three counts.

1    Accordingly, Johnson cannot show that the FTC engaged in abusive tactics by filing this

2    action, or that his assets were seized in this case without due process, sufficient to meet

3    the second exception for a *Monsanto* hearing.

4    **IV.    CONCLUSION**

5         The Court notes that the parties made several arguments and cited to several

6    cases not discussed above. The Court has reviewed these arguments and cases and

7    determines that they do not warrant discussion as they do not affect the outcome of the

8    Motion.

9         It is therefore ordered that Jeremy Johnson and Loyd Johnson's motion for

10   release of funds and request for a *Monsanto* hearing (dkt. no. 1620) is denied.

11   Defendants' motion for an expedited hearing (dkt. no. 1622) is denied as moot.

12
13       DATED THIS 2nd day of December 2015.

14                                                          _____
15                                                          MIRANDA M. DU
                                                            UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28