UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

JEREMY JOHNSON, *et al.*,

     Defendants.

2:10-CV-02203-MMD-GWF

## STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANT RYAN RIDDLE

On December 21, 2010, Plaintiff, the Federal Trade Commission ("FTC" or "Commission") filed a redacted Complaint for permanent injunction and other relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 917(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), alleging that defendants Ryan Riddle, IWorks, Inc., and numerous other individuals and corporate entities (collectively, "IWorks Defendants") engaged in violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 917(c) of EFTA, and Section 205.10(b) of Regulation E ("Reg E"), 12 C.F.R. § 205.10(b), in connection with the marketing and sale of Internet-based products and services.

The Court issued a Temporary Restraining Order [ECF No. 44] against the IWorks Defendants and, following a hearing, entered a Preliminary Injunction Order [ECF No. 130] against them.

On February 25, 2013, the Commission filed its First Amended Complaint ("Amended Complaint") [ECF 830], adding eight relief defendants.

Stipulated Final Order as to Ryan Riddle

1

1         On March 31, 2015, the Court granted partial summary judgment to the FTC [ECF 1586]

2    on Counts II, IV, V, VI, and X of the Amended Complaint with respect to certain sales websites.

3    On December 21, 2015, the Court granted summary judgment to the FTC [ECF 1794] on

4    additional sales websites with respect to Counts II, IV, V, and/or VI of the Amended Complaint.

5    On December 31, 2015, the Court issued a third summary judgment order [ECF 1818] finding

6    that: 1) the Corporate Defendants acted as a common enterprise; 2) the Corporate Defendants

7    were liable for violations of the FTC Act even if the representations were made on websites

8    hosted or created by third parties; and 3) defendants Jeremy Johnson and Ryan Riddle were

9    personally liable for the Corporate Defendants' violations.

10        The Commission and Ryan Riddle stipulate to the entry of this Stipulated Final Order for

11   Permanent Injunction and Monetary Judgments as to Ryan Riddle ("Order") to resolve all

12   matters in dispute in this action between them.

13        **THEREFORE, IT IS STIPULATED, AGREED, AND ORDERED** as follows:

14   1.    This Court has jurisdiction over this matter.

15   2.    The Amended Complaint charges that Ryan Riddle participated in deceptive and unfair

16         acts or practices in violation of Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§

17         45(a) and 53(b); under Section 917(c) of EFTA, 15 U.S.C. § 1693o(c); and Reg E, 12

18         C.F.R. § 205.10(b).

19   3.    Ryan Riddle neither admits nor denies any of the allegations in the Amended Complaint,

20         except as specifically stated in this Order.  Only for purposes of this action, Ryan Riddle

21         admits the facts necessary to establish jurisdiction.

Stipulated Final Order as to Ryan Riddle

4.    Ryan Riddle waives any claim that he may have under the Equal Access to Justice Act,

28 U.S.C. § 2412, concerning the prosecution of this action through the date of this

Order, and agrees to bear his own costs and attorney fees.

5.    Ryan Riddle waives and releases any claims that he may have against the Commission,

the Receiver and their agents that relate to this action.

6.    Ryan Riddle and the Commission waive all rights to appeal or otherwise challenge or

contest the validity of this Order.

## ORDER

### DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.    **"Affiliate Network"** means any person who provides Ryan Riddle with Marketing

Affiliates for an Affiliate Program or whom Ryan Riddle contracts with as a Marketing Affiliate

to promote any Product.

2.    **"Affiliate Program(s)"** means any arrangement under which Ryan Riddle pays, offers to

pay, or provides or offers to provide any form of consideration to any third party to: (1) provide

Ryan Riddle or his Clients with, or refer to Ryan Riddle or his Clients, potential or actual

customers; or (2) otherwise market, advertise, or offer for sale any Product on behalf of Ryan

Riddle or his Clients.

3.    **"Assists Others"** or **"Assisting Others"** means providing assistance or support to any

person, including providing any of the following services:  (1) performing customer service

functions including receiving or responding to consumer complaints; (2) formulating or

providing, or arranging for the formulation or provision of, any promotional material; (3)

providing names of, or assisting in the generation of, potential customers; (4) verifying,

Stipulated Final Order as to Ryan Riddle

3

processing, fulfilling, or arranging for the fulfillment of orders; (5) hiring, recruiting, or training personnel; (6) performing promotional or marketing services of any kind; or (7) processing or arranging for processing of credit cards, debit cards, Automated Clearinghouse (ACH) debits, remotely-created checks, or payments through any other system.

4.      **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

   a.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

   b.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

   c.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

   d.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

e.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

f.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

g.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

h.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

5.    **"Client"** means any third party to which Ryan Riddle provides any of the services listed in the definition of Assisting Others.

6.    "Commission" or **"FTC"** means the Federal Trade Commission.

7.    **"Continuity Program"** means any plan, arrangement, or system under which a consumer is periodically charged to maintain a service or periodically receive any Product including access to a "member only" website.

8.    **"Corporate Defendants"** means:

| | |
|---|---|
| 1) Anthon Holdings Corp. | 32) Internet Economy, Inc. |
| 2) Big Bucks Pro, Inc. | 33) Internet Fitness, Inc. |
| 3) Blue Net Progress, Inc. | 34) IWorks, Inc. |
| 4) Blue Streak Processing, Inc. | 35) Jet Processing, Inc. |
| 5) Bolt Marketing, Inc. | 36) JRB Media, Inc. |
| 6) Bottom Dollar, Inc. | 37) LifeStyles for Fitness, Inc. |
| 7) Bumble Marketing, Inc. | 38) Market Funding Solutions, Inc. |
| 8) Business First Inc. | 39) Mist Marketing, Inc. |
| 9) Business Loan Success, Inc. | 40) Money Harvest, Inc. |
| 10) Cloud Nine Marketing, Inc. | 41) Monroe Processing, Inc. |
| 11) Cold Bay Media, Inc. | 42) Net Business Success, Inc. |

Stipulated Final Order as to Ryan Riddle

| | |
|---|---|
| 12) Costnet Discounts, Inc. | 43) Net Commerce, Inc. |
| 13) CPA Upsell, Inc. | 44) Net Discounts, Inc. |
| 14) CS Processing, Inc. | 45) Net Fit Trends, Inc. |
| 15) Cutting Edge Processing, Inc. | 46) Network Agenda, LLC |
| 16) Diamond J Media, Inc. | 47) Optimum Assistance, Inc. |
| 17) Ebusiness First, Inc. | 48) Power Processing, Inc. |
| 18) Ebusiness Success, Inc. | 49) Premier Performance, Inc. |
| 19) Ecom Success, Inc. | 50) Pro Internet Services, Inc. |
| 20) Elite Debit, Inc. | 51) Razor Processing, Inc. |
| 21) Employee Plus, Inc. | 52) Rebate Deals, Inc. |
| 22) Excess Net Success, Inc. | 53) Revive Marketing, Inc. |
| 23) Fiscal Fidelity, Inc. | 54) Simcor Marketing, Inc. |
| 24) Fitness Processing, Inc. | 55) Success Marketing, Inc. |
| 25) Funding Search Success, Inc. | 56) Summit Processing, Inc. |
| 26) Funding Success, Inc. | 57) The Net Success, Inc. |
| 27) GG Processing, Inc. | 58) Tranfirst, Inc. |
| 28) GGL Rewards, Inc. | 59) Tran Voyage, Inc. |
| 29) Highlight Marketing, Inc. | 60) Unlimited Processing, Inc. |
| 30) Hooper Processing, Inc. | 61) xCel Processing, Inc. |
| 31) Internet Business Source, Inc. | |

9.      **"Endorsement"** means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization), which message consumers are likely to believe reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser.

10.     **"Endorser"** means the party whose opinions, beliefs, findings, or experience the message appears to reflect, and may be an individual, group or institution.

11.     **"Express Verifiable Authorization"** means:

   a.     Express written authorization by the customer, which includes the customer's signature, and shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law;

Stipulated Final Order as to Ryan Riddle

6

b.      Express oral authorization which is audio-recorded and made available upon request to the customer, and the customer's bank or other billing entity, and which evidences clearly both the customer's authorization of payment for the goods or services that are the subject of the transaction and the customer's receipt of all of the following information:

(i)  An accurate description, Clearly and Conspicuously stated, of the goods or services for which payment authorization is sought;

(ii) The number of debits, charges, or payments (if more than one);

(iii) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(iv) The amount(s) of the debit(s), charge(s), or payment(s);

(v) The customer's name;

(vi) The customer's billing information, identified with sufficient specificity such that the customer understands what account will be used to collect payment for the goods or services that are the subject of the transaction;

(vii) A telephone number for customer inquiry that is answered during normal business hours; and

(viii) The date of the customer's oral authorization; or

c.      Written confirmation of the transaction, identified in a Clear and Conspicuous manner as such on the outside of the envelope, sent to the customer via first class mail prior to the submission for payment of the customer's billing information, and that includes all of the information contained in b(i)-(vii) above and a Clear and Conspicuous statement of the procedures by which the customer can obtain a refund in the event the confirmation is inaccurate; *provided however*, that this means of authorization shall not

Stipulated Final Order as to Ryan Riddle

be deemed verifiable in instances in which goods or services are offered in a transaction

involving a free-to-pay conversion and preacquired account information.

12.     **"Financial Institution"** means any institution the business of which is engaging in

financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12

U.S.C. § 1843(k)).  An institution that is significantly engaged in financial activities is a

Financial Institution.

13.     **"Forced Upsell"** means the automatic bundling of any additional Product with the

purchase of a Primary Product.  For purposes of this Order, a Forced Upsell shall include any

bundled additional Product from which consumers cannot opt out, as well as any Upsell that uses

a pre-checked checkbox.

14.     **"Grant Product"** means any Product, including a plan or program, that is represented,

directly or by implication, to assist a consumer in any manner in obtaining a grant or similar

financial assistance from the government or any other source.

15.     **"In Close Proximity"** means for any communication presented solely through visual

means:  on the same webpage, online service page, mobile device screen, or other electronic

page, and immediately adjacent to the cost-related claim and viewable in conjunction with the

cost-related claim in such a manner that the communication is viewable without requiring the

consumer to scroll up, down, or sideways, or otherwise adjust their browser window or mobile

device window in any way.  Representations or disclosures in response to cost-related claims that

are accessed or displayed through hyperlinks, pop-ups, interstitials, or other means are NOT "In

Close Proximity."

Stipulated Final Order as to Ryan Riddle

8

16.   **"Investment Opportunity"** means anything, tangible or intangible, including a program or plan, that is offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, earnings, profit, or appreciation.

17.   **"IWorks Defendant(s)"** means the Corporate Defendants and Jeremy Johnson, Duane Fielding, Andy Johnson, Loyd Johnston, Scott Leavitt, Scott Muir, Bryce Payne, Kevin Pilon, Ryan Riddle, and Terrason Spinks, individually, collectively, or in any combination.

18.   **"Marketing Affiliate"** means any person or entity, including third-party marketers and Affiliate Networks, who participates in an Affiliate Program.

19.   **"Material"** means likely to affect a person's choice of, or conduct regarding, a Product.

20.   **"Merchant Account"** means any account with an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

21.   **"Negative Option Feature"** means, in an offer or agreement to sell or provide any Product, a provision under which the customer's silence or failure to take an affirmative action to reject a Product or to cancel the agreement is interpreted by the seller or provider as acceptance of the offer.

22.   **"Primary Product"** means the chief or principal Product that is the subject of the marketing materials or sales offers.

23.   **"Product"** means products, goods, and services, and includes online memberships.

24.   **"Receiver"** means Robb Evans & Associates, the receiver appointed by the Court's Preliminary Injunction entered on February 10, 2011 [ECF 130].

25.   **"Sensitive Personal Information"** means nonpublic information concerning an individual consumer including:  Social Security number, in whole or in part; credit and/or debit

1    card information, in whole or in part, including credit and/or debit card number, expiration date,

2    and transaction detail records; Financial Institution account information or transaction records, in

3    whole or in part, including the ABA routing number, account number, check number, and

4    transaction detail records; and account information or transaction records relating to

5

6    nontraditional payment systems, such as any telecommunications billing system, PayPal, and

7    BillMeLater.

8    26.    "**Upsell**" means any Product that is offered to the consumer at the time the consumer

9    purchases the Primary Product.

10                             **I.**

11                     **CONDUCT PROHIBITIONS**

12

13        **IT IS THEREFORE ORDERED** that Ryan Riddle and his agents, employees, and

14    attorneys, and all other persons in active concert or participation with Ryan Riddle who receive

15    actual notice of this Order, whether acting directly or indirectly, are hereby permanently

16    restrained and enjoined from:

17       A.     Advertising, marketing, promoting, offering for sale, or selling any Grant Product or

18

19              Assisting Others engaged in advertising, marketing, promoting, offering for sale, or

20              selling any Grant Product;

21       B.     Advertising, marketing, promoting, offering for sale, or selling any Investment

22              Opportunity or Assisting Others engaged in advertising, marketing, promoting,

23

24              offering for sale, or selling any Investment Opportunity; *provided, however*, that the

25              prohibition against Assisting Others shall not apply to Ryan Riddle in his duties as a

26              non-supervisor or non-manager of any publicly-traded company in which Ryan

27              Riddle:

28

1. owns one (1) percent or less of the outstanding common shares or preferred shares;

   or

2. in any way exercises control over one (1) percent or less of the outstanding common

   shares or preferred shares;

C.    Advertising, marketing, promoting, offering for sale, or selling any Product in which

consumers will be entered into a Continuity Program or that has a Negative Option

Feature, or Assisting Others engaged in advertising, marketing, promoting, offering

for sale, or selling any Product in which consumers will be entered into a Continuity

Program or that has a Negative Option Feature; *provided, however,* that the

prohibition against Assisting Others shall not apply to Ryan Riddle in his duties as a

non-supervisor or a non-manager of any:

1.  publicly-traded company in which Ryan Riddle:

    (a) owns one (1) percent or less of the outstanding common shares or preferred

    shares; or

    (b) in any way exercises control over one (1) percent or less of the outstanding

    common shares or preferred shares;

2.  public utility such as electricity, natural gas, water, or sewage; or

3.  federal, state, or local government agency;

D.    Advertising, marketing, promoting, offering for sale, or selling any Product as a

Forced Upsell, or Assisting Others engaged in advertising, marketing, promoting,

offering for sale, or selling any Product as a Forced Upsell;

E.    Holding any ownership or other financial interest in any business entity that:

1.  Engages in or Assists Others in the advertising, marketing, promoting, offering

Stipulated Final Order as to Ryan Riddle

for sale, or selling of any Grant Product;

2. Engages in or Assists Others in the advertising, marketing, promoting, offering for sale, or selling of any Investment Opportunity; *provided, however*, that this prohibition shall not apply to any publicly-traded company in which Ryan Riddle:

(a) owns one (1) percent or less of the outstanding common shares or preferred shares; or

(b) in any way exercises control over one (1) percent or less of the outstanding common shares or preferred shares;

3. Engages in or Assists Others in the advertising, marketing, promoting, offering for sale, or selling any Product in which consumers will be entered into a Continuity Program or that has a Negative Option Feature; *provided, however*, this prohibition shall not apply to any publicly-traded company in which Ryan Riddle:

(a) owns one (1) percent or less of the outstanding common shares or preferred shares; or

(b) in any way exercises control over one (1) percent or less of the outstanding common shares or preferred  shares; or

4. Engages in or Assists Others in the advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;

F.   Serving as an officer, director, or manager of any business entity, unless Ryan Riddle actually controls, participates in, or has knowledge of the daily operations of that entity;

G.   Acting as a signatory on any account for any business entity unless Ryan Riddle

Stipulated Final Order as to Ryan Riddle

12

controls, participates in, or has knowledge of the daily operations of that entity; and

H.   Applying for any Merchant Account for any business entity unless Ryan Riddle controls, participates in, or has knowledge of the daily operations of that business entity.

## II.

## PROHIBITED PRACTICES

**IT IS FURTHER ORDERED** that:

A.   Ryan Riddle and his agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Product, are hereby permanently restrained and enjoined from:

1.   Making or Assisting Others in making, either directly or indirectly, expressly or by implication, any false or misleading statement or representation of any statement that is likely to affect a person's choice of, or conduct regarding, a Product;

2.   Misrepresenting or Assisting Others in misrepresenting, either directly or indirectly, expressly or by implication:

   a.   That consumers who purchase an Investment Opportunity provided by, marketed by, or advertised by, Ryan Riddle are likely to make money;

   b.   The income, earnings, profits, appreciation, or sales volume likely to be achieved from an Investment Opportunity;

   c.   Any Material aspect of a Continuity Program or of a Negative Option Feature including the fact that the customer's account will be charged unless

Stipulated Final Order as to Ryan Riddle

the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s);

d. The total cost to purchase, receive, or use, and the quantity of, any Product that is the subject of the sales offer;

e. The risks associated with a Product, including that a Product is risk-free, low risk, or otherwise results in no obligation to the consumer;

f. Any Material restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

g. Any Material aspect of the performance, efficacy, nature, or central characteristics of any Product that is the subject of the sales offer;

h. Any Material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

i. The status of any user or Endorser of a Product, including misrepresenting that the user or Endorser is an independent user or ordinary, unbiased consumer of the Product; or

j. That consumer Endorsements reflect typical consumer experiences with a Product;

3. Failing to disclose Clearly and Conspicuously:

a. The total cost to purchase, receive, or use any Product that is the subject of the sales offer;

b. The total cost to purchase, receive, or use any Product in equal or greater size and prominence, and In Close Proximity to, any request that consumers

1  provide their name, address, telephone number, email address, or any

2  Sensitive Personal Information;

3  c. The total cost to purchase, receive, or use any Product subject to the sales

4  offer, in equal or greater size and prominence, and In Close Proximity to,

5  any cost-related claim including any claim that the Product is "free," has a

6  minimal cost, or is being offered on a trial basis or at an introductory or

7  limited-time reduced cost;

8

9  d. All Material terms and conditions of any Negative Option Feature including

10  the fact that the customer's account will be charged unless the customer

11  takes an affirmative action to avoid the charge(s), the date(s) the charge(s)

12  will be submitted for payment, and the specific steps the customer must take

13  to avoid the charge(s);

14

15  e. All Material terms and conditions of any Negative Option Feature including

16  the fact that the customer's account will be charged unless the customer

17  takes an affirmative action to avoid the charge(s), the date(s) the charge(s)

18  will be submitted for payment, and the specific steps the customer must take

19  to avoid the charge(s) in equal or greater size and prominence, and In Close

20  Proximity to, any request that consumers provide their name, address,

21  telephone number, email address, or any Sensitive Personal Information;

22

23  f. All Material terms and conditions of any Continuity Plan;

24

25  g. All Material terms and conditions of any Continuity Plan in equal or greater

26  size and prominence, and In Close Proximity to, any request that consumers

27

28

Stipulated Final Order as to Ryan Riddle

provide their name, address, telephone number, email address, or any

Sensitive Personal Information;

h.  All Material terms and conditions of any Continuity Plan or Negative

Option Feature in equal or greater size and prominence, and In Close

Proximity to, any cost-related claim including any claim that a product is

"free" or "no cost," if a cost-related claim is made in the course of

advertising, offering for sale, or otherwise marketing any Product; and

i.  All Material terms and conditions of any Continuity Program or Negative

Option Feature in equal or greater size and prominence, and In Close

Proximity to, any claim about risks associated with a Product, including

claims that a Product is risk-free, low risk, or otherwise results in no

obligation to the consumer, if such claim is made in the course of

advertising, offering for sale, or otherwise marketing any Product;

4.  Failing to disclose Clearly and Conspicuously any other Material information

including:

a.  The quantity of any Product that is the subject of the sales offer;

b.  Any Material term or condition including any restrictions, limitations, or

conditions to purchase, receive, or use any Product that is the subject of the

sales offer;

c.  Any Material aspect of the nature or terms of a refund, cancellation,

exchange, or repurchase policy for any Product including if there is a policy

of not making refunds, cancellations, exchanges, or repurchases;

Stipulated Final Order as to Ryan Riddle

16

d.  That Endorsers received funds or some other benefit, directly or indirectly, from any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement including if Endorsers received funds or some other benefit from a non-profit charitable fund that is directly or indirectly associated with any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement, *provided that*, this provision shall not apply where (1) the Endorser is an expert or person known to a significant portion of the viewing public, and (2) the endorsement appears in an advertisement where payment would be ordinarily expected by viewers; and

e.  Any relationship that materially affects the weight or credibility of any Endorsement and that would not be reasonably expected by consumers, when one exists, between any user or Endorser and any other individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product;

B.  Ryan Riddle and his agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Product, are hereby permanently restrained and enjoined from charging or debiting a consumer's bank, credit, or other financial account, or otherwise assessing charges to a consumer, without first obtaining the consumer's Express Verifiable Authorization; and

Stipulated Final Order as to Ryan Riddle

C.  In connection with applying for or maintaining Merchant Accounts, Ryan Riddle and his agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

1.  Making or Assisting Others in making, expressly or by implication, any false or misleading statement or representation including any statement or representation concerning the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind; or

2.  Failing to disclose to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind any Material information related to a Merchant Account including the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, and any connection between the owner, manager, director, or officer of the applicant for or holder of a Merchant Account and any third person who has been or is placed in a Merchant Account monitoring program, had a Merchant Account terminated by a payment processor or a Financial Institution, or has been fined or otherwise disciplined in connection with a Merchant Account by a payment processor or a Financial Institution.

Stipulated Final Order as to Ryan Riddle

### III.

### PROHIBITION AGAINST VIOLATION OF THE
### ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that Ryan Riddle and his agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Product, are hereby permanently restrained and enjoined:

A.   Engaging in any recurring debiting of a consumer's account without first obtaining a valid written pre-authorization for preauthorized electronic fund transfers from the consumer's account, which pre-authorization is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b) (5) and (6), Supp. I;

B.   Engaging in any recurring debiting of a consumer's account without first providing a copy of a valid written pre-authorization to the consumer for preauthorized electronic fund transfers from the consumer's account, which copy is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b) (5) and (6), Supp. I; and

C.   Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain a written authorization for preauthorized electronic fund transfers, as required

in Section 205.10(b)(7) of the Federal Reserve Board's Official Staff Commentary to Regulation E.

## IV.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.      Judgement in the amount of Two Hundred Eighty Million Nine Hundred Eleven Thousand Eight Hundred Seventy Dollars and 36 cents (**$280,911,870.36**) is entered in favor the Commission against Ryan Riddle as equitable monetary relief.

B.      Upon all asset transfers referenced in Subsection C below, the remainder of the judgment is suspended, subject to the Subsections below.

C.      Immediately upon entry of this Order, Ryan Riddle is ordered to surrender to the Commission all control, title, dominion, and interest in the following assets:

   1.  All interest he has in funds in any accounts in the name of Corporate Defendants.

   2.  All cash held by the Receiver; and

   3.  All property owned by or titled to the Corporate Defendants including any real, personal, or intellectual property, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Corporate Defendants.

Stipulated Final Order as to Ryan Riddle

D.      To the extent they are not already in the possession of the Receiver, Ryan Riddle shall deliver possession to the Receiver of the assets identified in Section IV.C.

E.      The Receiver shall, as soon as practicable, commence the sale of the unliquidated assets identified in Section IV.C. and surrendered pursuant to this Order using a commercially-reasonable procedure.  The Receiver shall hold the surrendered assets, and the proceeds from the sale of the unliquidated assets, for future transfer in accordance with further instructions from the Court.

F.      The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Ryan Riddle's sworn financial statement and related documents (collectively, "financial representations") submitted to the Commission, namely:

        1.   The Financial Statements of Ryan Riddle signed on March 29, 2016.

G.      The suspension of the judgment will be lifted as to Ryan Riddle if, upon motion by the Commission, the Court finds that Ryan Riddle failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representation above.

H.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to Ryan Riddle in the amount of **$280,911,870.36** (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Amended Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

I.      Ryan Riddle relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.  Ryan

Stipulated Final Order as to Ryan Riddle

Riddle also relinquishes dominion and all legal and equitable right, title, and interest (if any such dominion, right, title, or interest exists) in any of the assets in the possession or control of the Receiver.

J.      The facts alleged in the Amended Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

K.      The facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

L.      Ryan Riddle acknowledges that his Social Security Number, which he previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

M.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the IWorks Defendants' practices alleged in the Amended Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Riddle has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

Stipulated Final Order as to Ryan Riddle

1
2
3
4

## V.

### BAN ON USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Ryan Riddle and his agents, employees, and

attorneys, and all other persons in active concert or participation with any of them, who receive

actual notice of this Order, are permanently restrained and enjoined from:

A.      Disclosing to any third party, using, or benefitting from consumer information, including

the name, address, telephone number, e-mail address, Social Security number, other identifying

information, or any data that enables access to a consumer's account (including a credit card,

bank account, or other financial account), or would otherwise allow the assessing of a charge

against a consumer's account, of any person which the IWorks Defendants obtained prior to

entry of this Order in connection with the advertising, marketing, promotion, or sale of any

Product;

B.      Failing to provide to the Receiver such consumer information in all forms that is in Ryan

Riddle's possession, custody, or control within five (5) business days after entry of this Order;

and

C.      Failing to dispose of such consumer information in all forms that is in Ryan Riddle's

possession, custody, or control within fifteen (15) days after entry of this Order.  Disposal shall

be by means that protect against unauthorized access to the consumer information, such as by

burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media,

to ensure that the consumer information cannot practicably be read or reconstructed.

Stipulated Final Order as to Ryan Riddle

*Provided, however*, that consumer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## VI.

## MONITORING BY RYAN RIDDLE

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Ryan Riddle and his agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, selling, or provision of any Products on or through the Internet, the World Wide Web, or any web page or website, are hereby permanently restrained and enjoined from failing to:

A.      Obtain contact information from any prospective Marketing Affiliate or Client.  In the case of a natural person, Ryan Riddle shall obtain the prospective Marketing Affiliate's or Client's first and last name, physical address, country, telephone number, e-mail address, date of birth, and complete bank account information as to where payments are to be made.  In the case of business entities, Ryan Riddle shall obtain the first and last name, physical address, country, telephone number, e-mail address, and date of birth for the natural person who owns, manages, or controls the prospective Marketing Affiliate or Client, and complete bank account information as to where payments are to be made;

B.      Require each Affiliate Network to obtain from its Marketing Affiliates and maintain the identifying information set forth in Subsection A of this Section prior to the Marketing Affiliate's or Affiliate Network's participation in Ryan Riddle's Affiliate Program;

Stipulated Final Order as to Ryan Riddle

C.      Provide each prospective Marketing Affiliate or Client prior to such prospective Marketing Affiliate's acceptance into Ryan Riddle's Affiliate Program or Ryan Riddle providing services to a prospective Client:  (1) a copy of this Order; and (2) a Clear and Conspicuous statement in writing that engaging in acts or practices prohibited by this Order will result in immediate termination of any Marketing Affiliate or Client and forfeiture of all monies received from or owed to the Marketing Affiliate or Client;

D.      Obtain from each prospective Marketing Affiliate or Client prior to such prospective Marketing Affiliate's acceptance into Ryan Riddle's Affiliate Program or prior to Ryan Riddle providing services to a prospective Client a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order;

E.      Routinely monitor all marketing materials, including websites, e-mails, and pop-ups used by each Marketing Affiliate to advertise, promote, market, offer for sale, or sell any Product(s) of Ryan Riddle;

F.      Routinely monitor all marketing materials, including websites, e-mails, and pop-ups used by each Client to advertise, promote, market, offer for sale, or sell any Product(s) for which Ryan Riddle provides services;

G.      Promptly and completely investigate all complaints received by Ryan Riddle through any source to determine whether any Marketing Affiliate or Client is engaging in acts or practices prohibited by this Order;

H.      Review the sales websites for each Marketing Affiliate advertising, promoting, marketing, offering for sale, or selling any Ryan Riddle Product(s) at least once every thirty (30) days to determine whether any Marketing Affiliate is engaging in acts or practices prohibited by this Order;

Stipulated Final Order as to Ryan Riddle

1     I.      Review the sales websites advertising, promoting, marketing, offering for sale, or selling

2  each Client's Product for which Ryan Riddle provides services at least once every thirty (30) days

3  to determine whether any Client is engaging in acts or practices prohibited by this Order;

4     J.      Immediately halt the processing of any payments or charges generated by any Marketing

5  Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this

6  Order;

7

8     K.     Fully refund, within five (5) business days of discovery, any consumer whose account

9  Ryan Riddle has processed a charge against whose sale originated from any Marketing Affiliate

10  or Client that is discovered to have engaged in, or is engaging in, acts or practices prohibited by

11  this Order since the date of Ryan Riddle's most recent review of the Marketing Affiliate's or

12  Client's marketing materials, including the Marketing Affiliate's or Client's websites; and

13

14     L.      Terminate, immediately, any Marketing Affiliate or Client that has engaged in, or is

15  engaging in, acts or practices prohibited by this Order and cease payments to any such person.

16        *Provided, however*, that this Section does not authorize or require Ryan Riddle to take any

17  action that violates any federal or state law.

18

19                            **VII.**

20            **COOPERATION WITH FTC COUNSEL**

21        **IT IS FURTHER ORDERED** that, in connection with this action or any subsequent

22  investigations related to or associated with the transactions or the occurrences that are the subject

23  of the FTC's Amended Complaint or related to the location of assets or business records of any

24  IWork's Defendant, Ryan Riddle shall cooperate in good faith with the FTC and appear at such

25  places and times as the FTC shall reasonably request, after three (3) business days written notice,

26

27  for interviews, conferences, pretrial discovery, review of documents, and for such other matters

28

Stipulated Final Order as to Ryan Riddle

1    as may be reasonably requested by the FTC.  If requested in writing by the FTC, Ryan Riddle

2    shall appear and provide truthful testimony in any trial, deposition, or other proceeding, or

3    produce or authenticate, if possible, any documents, related to or associated with the transactions

4    or the occurrences that are the subject of the Amended Complaint, without the service of a

5    subpoena.

6

7                                         VIII.

8                          **ORDER ACKNOWLEDGMENTS**

9         **IT IS FURTHER ORDERED** that:

10   A.       Ryan Riddle, within seven (7) days of entry of this Order, must submit to the

11   Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

12   B.       For eight (8) years after entry of this Order, Ryan Riddle, for any business that he

13

14   individually or collectively with any other IWorks Defendant is the majority owner or controls

15   directly or indirectly, must deliver a copy of this Order to:  (1) all principals, officers, directors,

16   and LLC managers and members; (2) all employees, agents, and representatives who participate

17   in conduct related to the subject matter of this Order; and (3) any business entity resulting from

18

19   any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must

20   occur within seven (7) days of entry of this Order for current personnel.  For all others, delivery

21   must occur before they assume their responsibilities.

22   C.       From each individual or entity to which Ryan Riddle delivered a copy of this Order, Ryan

23

24   Riddle must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this

25   Order.

26

27

28

Stipulated Final Order as to Ryan Riddle

## IX.

## <u>COMPLIANCE REPORTING</u>

**IT IS FURTHER ORDERED** that Ryan Riddle make timely submissions to the Commission:

A.      One year after entry of this Order, Ryan Riddle must submit a compliance report, sworn under penalty of perjury:

1.      Ryan Riddle must:  (a) identify the primary physical, postal, and e-mail address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with him; (b) identify all of Ryan Riddle's businesses by all of their names, telephone numbers, and physical, postal, e-mail, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other IWorks Defendant (which Ryan Riddle must describe if he knows or should know due to his own involvement); (d) describe in detail whether Ryan Riddle is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Ryan Riddle must:  (a) identify all telephone numbers and all physical, postal, e-mail and Internet addresses, including all residences; (b) identify all business activities, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such business, including his title, role, responsibilities, participation, authority, control, and any ownership.

Stipulated Final Order as to Ryan Riddle

28

B.       For eight (8) years after entry of this Order,  Ryan Riddle must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

        1.       Ryan Riddle must report any change in:  (a) any designated point of contact; or (b) any entity in which Ryan Riddle has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

        2.       Additionally, Ryan Riddle must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.       Ryan Riddle must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against him within fourteen (14) days of its filing.

D.       Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.       Unless otherwise directed by a representative of the Commission in writing, all submissions to the Commission pursuant to this Order must be e-mailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement,

Stipulated Final Order as to Ryan Riddle

Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW,

Washington, DC 20580. The subject line must begin: *FTC v. Jeremy Johnson, et al*—Ryan

Riddle, X-11-0011.


## X.

## **RECORDKEEPING**

   **IT IS FURTHER ORDERED** that Ryan Riddle must create certain records for eight (8)

years after entry of the Order, and to retain each such record for five (5) years. Specifically,

Ryan Riddle, for any business that he, individually or collectively with any other IWorks

Defendant, is a majority owner or controls directly or indirectly, must create and retain the

following records:

A.     Accounting records showing the revenues from all goods and services sold, all costs

incurred in generating those revenues, and the resulting net profit or loss;

B.     Personnel records showing, for each person providing services, whether as an employee

or otherwise, that person's: name, addresses, and telephone numbers; job title or position; dates

of service; and (if applicable) the reason for termination;

C.     Records of all consumer complaints and refund requests, whether received directly or

indirectly, such as through a third party, and any response;

D.     All records necessary to demonstrate full compliance with each provision of this Order,

including all submissions to the Commission; and

E.     Non-duplicate copies of any advertisement or other marketing material, including web

pages, pop ups, e-mail advertisements, and any audio files related to them.

Stipulated Final Order as to Ryan Riddle

Nothing in this Section shall relieve Ryan Riddle of any responsibility under the Section entitled "Monitoring by Ryan Riddle."

## XI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Ryan Riddle's compliance with this Order, including the financial representations upon which the judgment was suspended:

A.      Within fourteen (14) days of receipt of a written request from a representative of the Commission, Ryan Riddle must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69;

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Ryan Riddle.  Ryan Riddle must permit representatives of the Commission to interview any employee or other person affiliated with him who has agreed to such an interview.  The person interviewed may have counsel present;

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Ryan Riddle, or to any entity in which he has any ownership interest, or any individual or entity affiliated with Ryan Riddle, without the necessity of identification or prior notice.  Nothing in this Order limits the

Stipulated Final Order as to Ryan Riddle

Commission's lawful use of compulsory process pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1; and

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Ryan Riddle, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681(b)(1).

**XII.**

**RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED,** this 21st day of July, 2016 , at 6:03 PM Pacific Daylight Time.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

Stipulated Final Order as to Ryan Riddle

**STIPULATED AND AGREED TO BY:**

**For Ryan Riddle**

Ryan Riddle, *pro se*

Date: May 31st, 2016

**For Plaintiff Federal Trade Commission:**

Collot Guerard
J. Ronald Brooke, Jr.
Dotan Weinman
Roberto Anguizola
Jody Goodman
Attorneys for Plaintiff
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop CC-8528
Washington, DC 20580

Date:
July 12, 2016

Stipulated Final Order as to Ryan Riddle

33