UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

JEREMY JOHNSON, *et al.*,

    Defendants.

2:10-CV-02203-MMD-GWF

**STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS JEREMY JOHNSON; BLUE STREAK PROCESSING, INC.; BUSINESS FIRST, INC.; CLOUD NINE MARKETING, INC.; COLD BAY MEDIA, INC.; CPA UPSELL, INC.; DIAMOND J MEDIA, INC.; EBUSINESS FIRST, INC.; EBUSINESS SUCCESS, INC.; ECOM SUCCESS, INC.; ELITE DEBIT, INC.; FUNDING SUCCESS, INC.; HOOPER PROCESSING, INC.; I WORKS, INC.; INTERNET ECONOMY, INC.; INTERNET FITNESS, INC.; MARKET FUNDING SOLUTIONS, INC.; MONEY HARVEST, INC.; MONROE PROCESSING, INC.; NET COMMERCE, INC.; PREMIER PERFORMANCE, INC.; PRO INTERNET SERVICES, INC.; REVIVE MARKETING, INC.; SUCCESS MARKETING, INC.; SUMMIT PROCESSING, INC.; TRANFIRST, INC.; TRAN VOYAGE, INC.; and UNLIMITED PROCESSING, INC.**

On December 21, 2010, Plaintiff, the Federal Trade Commission ("FTC" or "Commission") filed a redacted Complaint for permanent injunction and other relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 917(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), alleging that defendants Jeremy Johnson, IWorks, Inc., and numerous other individuals and corporate entities (collectively, "Defendants") engaged in violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 917(c) of EFTA, and Section 205.10(b) of Regulation E ("Reg E"), 12 C.F.R. § 205.10(b), in connection with the marketing and sale of Internet-based products and services.

The Court issued a Temporary Restraining Order [DE 44] against Defendants and, following a hearing, entered a Preliminary Injunction Order [DE 130] against them.

On February 25, 2013, the Commission filed its First Amended Complaint ("Amended Complaint") [DE 830], adding eight relief defendants.

On March 31, 2015, the Court granted partial summary judgment to the FTC [DE 1586] on Counts II, IV, V, VI, and X of the Amended Complaint with respect to certain sales websites. On December 21, 2015, the Court granted summary judgment to the FTC [DE 1794] on additional sales websites with respect to Counts II, IV, V, and/or VI of the Amended Complaint. On December 31, 2015, the Court issued a third summary judgment order [DE 1818], finding that: 1) the Corporate Defendants acted as a common enterprise; 2) the Corporate Defendants were liable for violations of the FTC Act even if the representations were made on websites hosted or created by third parties; and 3) defendants Jeremy Johnson and Ryan Riddle were personally liable for the Corporate Defendants' violations. In the Summary Judgment Orders, there was no finding as to the extent of equitable relief or other alleged harm attributable to these violations.

The Commission and defendants Jeremy Johnson; Blue Streak Processing, Inc.; Business First, Inc.; Cloud Nine Marketing, Inc.; Cold Bay Media, Inc; CPA Upsell, Inc.; Diamond J Media, Inc.; Ebusiness First, Inc.; EBusiness Success, Inc.; eCom Success, Inc.; Elite Debit, Inc.; Funding Success, Inc.; Hooper Processing, Inc.; IWorks, Inc.; Internet Economy, Inc.; Internet Fitness, Inc.; Market Funding Solutions, Inc.; Money Harvest, Inc.; Monroe Processing, Inc.; Net Commerce, Inc.; Premier Performance, Inc.; Pro Internet Services, Inc.; Revive Marketing, Inc.; Success Marketing, Inc.; Summit Processing, Inc.; TranFirst, Inc.; Tran Voyage, Inc.; and Unlimited Processing, Inc. (collectively, the "IWorks Settling Defendants") have voluntarily resolved the aforementioned claims and, pursuant to that voluntary resolution stipulate to the

entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS STIPULATED, AGREED, AND ORDERED** as follows:

1. This Court has jurisdiction over the subject matter of this case and the parties.

2. Venue is proper as to all parties in the District of Nevada under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

3. The activities alleged in the Amended Complaint are or were in or affecting "commerce", as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4. The Amended Complaint states a claim upon which civil relief could be granted against the IWorks Settling Defendants under Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b); Section 917(c) of EFTA, 15 U.S.C. § 1693o(c); and Reg E, 12 C.F.R. § 205.10(b).

5. The IWorks Settling Defendants have entered into this Order freely and without coercion, and they acknowledge that they have read the provisions of this Order and are prepared to abide by them.

6. The IWorks Settling Defendants waive all rights to seek appellate review or otherwise challenge or contest the validity of this Order and waive and release any claim they may have against the Commission, its employees, representatives, or agents, and the Receiver and the Receiver's employees, representatives, or agents.

7. The IWorks Settling Defendants neither admit nor deny any of the allegations in the Amended Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

8.  The IWorks Settling Defendants waive any claim that they may have under the Equal

Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action

through the date of this Order, and agree to bear their own costs and attorney fees.

9.  This Order is remedial in nature and shall not be construed as payment of a fine, penalty,

punitive assessment or forfeiture.

10.  Entry of this Order is in the public interest.

## ORDER

### DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.  **"Affiliate Network"** means any Person who provides any of the IWorks Settling

Defendants with Marketing Affiliates for an Affiliate Program or whom any of the IWorks

Settling Defendants contracts with as a Marketing Affiliate to promote any Product.

2.  **"Affiliate Program(s)"** means any arrangement under which any of the IWorks Settling

Defendants pays, offers to pay, or provides or offers to provide any form of consideration to any

third party to: (1) provide any of the IWorks Settling Defendants or a Client of any of the IWorks

Settling Defendants with, or refer to any of the IWorks Settling Defendants or a Client of any of

the IWorks Settling Defendants, potential or actual customers; or (2) otherwise market, advertise,

or offer for sale any Product on behalf of any of the IWorks Settling Defendants or a Client of

any of the IWorks Settling Defendants.

3.  **"Asset"** means any legal or equitable interest in, right to, or claim to, any real, personal,

or intellectual property, including chattel, goods, instruments, equipment, fixtures, general

intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities,

inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform

Commercial Code), insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Defendant or entities that are under the control of the Receiver pursuant to the Order Granting Motion for Order Clarifying Preliminary Injunction Order [DE 900], including such reserve funds held by payment processors, credit card processors, banks or other financial institutions.

4.      **"Assists Others"** or **"Assisting Others"** means providing assistance or support to any Person, including providing any of the following services:  (1) performing customer service functions including receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any promotional material; (3) providing names of, or assisting in the generation of, potential customers; (4) verifying, processing, fulfilling, or arranging for the fulfillment of orders; (5) hiring, recruiting, or training personnel; (6) performing promotional or marketing services of any kind; or (7) processing or arranging for processing of credit cards, debit cards, Automated Clearinghouse (ACH) debits, remotely-created checks, or payments through any other system.

5.      **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

a.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

b.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

c.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

d.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

e.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

f.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

g.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

h.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

6.      **"Client"** means any third party to which any of the IWorks Settling Defendants provides any of the services listed in the definition of Assisting Others.

7.      **"Commission"** or **"FTC"** means the Federal Trade Commission.

8.     **"Continuity Program"** means any plan, arrangement, or system under which a

consumer is periodically charged to maintain a service or periodically receive any Product

including access to a "member only" website.

9.     **"Corporate Defendants"** means:

| | |
|---|---|
| 1) Anthon Holdings Corp. | 32) Internet Economy, Inc. |
| 2) Big Bucks Pro, Inc. | 33) Internet Fitness, Inc. |
| 3) Blue Net Progress, Inc. | 34) IWorks, Inc. |
| 4) Blue Streak Processing, Inc. | 35) Jet Processing, Inc. |
| 5) Bolt Marketing, Inc. | 36) JRB Media, Inc. |
| 6) Bottom Dollar, Inc. | 37) LifeStyles for Fitness, Inc. |
| 7) Bumble Marketing, Inc. | 38) Market Funding Solutions, Inc. |
| 8) Business First Inc. | 39) Mist Marketing, Inc. |
| 9) Business Loan Success, Inc. | 40) Money Harvest, Inc. |
| 10) Cloud Nine Marketing, Inc. | 41) Monroe Processing, Inc. |
| 11) Cold Bay Media, Inc. | 42) Net Business Success, Inc. |
| 12) Costnet Discounts, Inc. | 43) Net Commerce, Inc. |
| 13) CPA Upsell, Inc. | 44) Net Discounts, Inc. |
| 14) CS Processing, Inc. | 45) Net Fit Trends, Inc. |
| 15) Cutting Edge Processing, Inc. | 46) Network Agenda, LLC |
| 16) Diamond J Media, Inc. | 47) Optimum Assistance, Inc. |
| 17) Ebusiness First, Inc. | 48) Power Processing, Inc. |
| 18) Ebusiness Success, Inc. | 49) Premier Performance, Inc. |
| 19) Ecom Success, Inc. | 50) Pro Internet Services, Inc. |
| 20) Elite Debit, Inc. | 51) Razor Processing, Inc. |
| 21) Employee Plus, Inc. | 52) Rebate Deals, Inc. |
| 22) Excess Net Success, Inc. | 53) Revive Marketing, Inc. |
| 23) Fiscal Fidelity, Inc. | 54) Simcor Marketing, Inc. |
| 24) Fitness Processing, Inc. | 55) Success Marketing, Inc. |
| 25) Funding Search Success, Inc. | 56) Summit Processing, Inc. |
| 26) Funding Success, Inc. | 57) The Net Success, Inc. |
| 27) GG Processing, Inc. | 58) Tranfirst, Inc. |
| 28) GGL Rewards, Inc. | 59) Tran Voyage, Inc. |
| 29) Highlight Marketing, Inc. | 60) Unlimited Processing, Inc. |
| 30) Hooper Processing, Inc. | 61) xCel Processing, Inc. |
| 31) Internet Business Source, Inc. | |

10.     **"Defendants"** means Jeremy Johnson, Ryan Riddle, Scott Leavitt, Bryce Payne, Loyd Johnston, Duane Fielding, Terrason Spinks, Andy Johnson, Kevin Pilon, Scott Muir, and the Corporate Defendants.

11.     **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, Internet sites, Webpages, Websites, electronic correspondence, including e-mail and instant messages, photographs, audio and video recordings, contracts, accounting data, advertisements (including advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, and other data compilations from which information can be obtained and translated. A draft or non-identical copy is a separate document within the meaning of the term.

12.     **"Endorsement"** means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization), which message consumers are likely to believe reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser.

13.     **"Endorser"** means the party whose opinions, beliefs, findings, or experience the message appears to reflect, and may be an individual, group or institution.

14.     **"Express Verifiable Authorization"** means:

    a.      Express written authorization by the customer, which includes the customer's signature, and shall include an electronic or digital form of signature, to the extent that

such form of signature is recognized as a valid signature under applicable federal law or state contract law;

b.   Express oral authorization which is audio-recorded and made available upon request to the customer, and the customer's bank or other billing entity, and which evidences clearly both the customer's authorization of payment for the goods or services that are the subject of the transaction and the customer's receipt of all of the following information:

(i)  An accurate description, Clearly and Conspicuously stated, of the goods or services for which payment authorization is sought;

(ii) The number of debits, charges, or payments (if more than one);

(iii) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(iv) The amount(s) of the debit(s), charge(s), or payment(s);

(v) The customer's name;

(vi) The customer's billing information, identified with sufficient specificity such that the customer understands what account will be used to collect payment for the goods or services that are the subject of the transaction;

(vii) A telephone number for customer inquiry that is answered during normal business hours; and

(viii) The date of the customer's oral authorization; or

c.   Written confirmation of the transaction, identified in a Clear and Conspicuous manner as such on the outside of the envelope, sent to the customer via first class mail prior to the submission for payment of the customer's billing information, and that includes all of the information contained in b(i)-(vii) above and a Clear and Conspicuous

statement of the procedures by which the customer can obtain a refund in the event the confirmation is inaccurate; *provided however*, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and Preacquired Account Information.

15.    **"Financial Institution"** means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)). An institution that is significantly engaged in financial activities is a Financial Institution.

16.    **"Forced Upsell"** means the automatic bundling of any additional Product with the purchase of a Primary Product. For purposes of this Order, a Forced Upsell shall include any bundled additional Product from which consumers cannot opt out, as well as any Upsell that uses a pre-checked checkbox.

17.    **"Grant Product"** means any Product, including a plan or program, that is represented, directly or by implication, to assist a consumer in any manner in obtaining a grant or similar financial assistance from the government or any other source.

18.    **"In Close Proximity"** shall mean for any communication presented solely through visual means: on the same webpage, online service page, mobile device screen, or other electronic page, and immediately adjacent to the cost-related claim and viewable in conjunction with the cost-related claim in such a manner that the communication is viewable without requiring the consumer to scroll up, down, or sideways, or otherwise adjust their browser window or mobile device window in any way. Representations or disclosures in response to cost-related claims that are accessed or displayed through hyperlinks, pop-ups, interstitials, or other means are NOT "In Close Proximity."

19.    **"Investment Opportunity"** means anything, tangible or intangible, including a program or plan, that is offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, earnings, profit, or appreciation.

20.    **"IWorks Settling Corporate Defendants"** means:

| | |
|---|---|
| 1) Blue Streak Processing, Inc. | 15) Internet Fitness, Inc. |
| 2) Business First, Inc. | 16) Market Funding Solutions, Inc. |
| 3) Cloud Nine Marketing, Inc. | 17) Money Harvest, Inc. |
| 4) Cold Bay Media, Inc. | 18) Monroe Processing, Inc. |
| 5) CPA Upsell, Inc. | 19) Net Commerce. Inc. |
| 6) Diamond J Media, Inc. | 20) Premier Performance, Inc. |
| 7) Ebusiness First, Inc. | 21) Pro Internet Services, Inc. |
| 8) Ebusiness Success, Inc. | 22) Revive Marketing, Inc. |
| 9) Ecom Success, Inc. | 23) Success Marketing, Inc. |
| 10) Elite Debit, Inc. | 24) Summit Processing, Inc. |
| 11) Funding Success, Inc. | 25) Tranfirst, Inc. |
| 12) Hooper Processing, Inc. | 26) Tran Voyage, Inc. |
| 13) IWorks, Inc. | 27) Unlimited Processing, Inc. |
| 14) Internet Economy, Inc. | |

21.    **"IWorks Settling Defendants"** means Jeremy Johnson and the IWorks Settling Corporate Defendants.

22.    **"Marketing Affiliate"** means any Person, including third-party marketers and Affiliate Networks, who participates in an Affiliate Program.

23.    **"Material"** means likely to affect a Person's choice of, or conduct regarding, a Product.

24.    **"Merchant Account"** means any account with an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

25.    **"Negative Option Feature"** means, in an offer or agreement to sell or provide any Product, a provision under which the customer's silence or failure to take an affirmative action to reject a Product or to cancel the agreement is interpreted by the seller or provider as acceptance of the offer.

26.     **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

27.     **"Preacquired Account Information"** means any information that enables a seller to cause a charge to be placed against a consumer's account without obtaining the account number directly from the consumer during the transaction pursuant to which the account will be charged.

28.     **"Primary Product"** means the chief or principal Product that is the subject of the marketing materials or sales offers.

29.     **"Product"** means products, goods, and services, and includes online memberships.

30.     **"Receiver"** means Robb Evans & Associates, the receiver appointed by the Court's Preliminary Injunction entered on February 10, 2011 [DE 130].

31.     **"Relief Defendants"** means Sharla Johnson; Zibby, LLC; Zibby Flight Service, LLC; Orange Cat Investments, LLC; Kerry Johnson; Barbara Johnson; KB Family Limited Partnership; and KV Electric, Inc.

32.     **"Sensitive Personal Information"** means nonpublic information concerning an individual consumer including: Social Security number, in whole or in part; credit and/or debit card information, in whole or in part, including credit and/or debit card number, expiration date, and transaction detail records; Financial Institution account information or transaction records, in whole or in part, including the ABA routing number, account number, check number, and transaction detail records; and account information or transaction records relating to nontraditional payment systems, such as any telecommunications billing system, PayPal, and BillMeLater.

33.     "**Upsell**" shall mean any Product that is offered to the consumer at the time the consumer purchases the Primary Product.

## I.

## CONDUCT PROHIBITIONS

**IT IS THEREFORE ORDERED** that Jeremy Johnson and his representatives, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A.     Advertising, marketing, promoting. offering for sale, or selling any Grant Product or Assisting Others engaged in advertising, marketing, promoting. offering for sale, or selling any Grant Product;

B.     Advertising, marketing, promoting, offering for sale, or selling any Investment Opportunity or Assisting Others engaged in advertising, marketing, promoting. offering for sale, or selling any Investment Opportunity; *provided, however*, that the prohibition against Assisting Others shall not apply to Jeremy Johnson in his duties as a non-supervisor or non-manager of any publicly-traded company in which Jeremy Johnson:

1. owns one (1) percent or less of the outstanding common shares or preferred shares; or

2. in any way exercises control over one (1) percent or less of the outstanding common shares or preferred shares;

C.     Advertising, marketing, promoting, offering for sale, or selling any Product in which consumers will be entered into a Continuity Program or that has a Negative Option

Feature, or Assisting Others engaged in advertising, marketing, promoting, offering for sale, or selling any Product in which consumers will be entered into a Continuity Program or that has a Negative Option Feature; *provided, however*, that the prohibition against Assisting Others shall not apply to Jeremy Johnson in his duties as a non-supervisor or a non-manager of any:

1. publicly-traded company in which Jeremy Johnson:

(a) owns one (1) percent or less of the outstanding common shares or preferred shares; or

(b) in any way exercises control over one (1) percent or less of the outstanding common shares or preferred shares;

2. public utility such as electricity, natural gas, water, or sewage; or

3. federal, state, or local government agency;

D. Advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell, or Assisting Others engaged in advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;

E. Holding any ownership or other financial interest in any business entity that:

1. Engages in or Assists Others in the advertising, marketing, promoting, offering for sale, or selling of any Grant Product;

2. Engages in or Assists Others in the advertising, marketing, promoting, offering for sale, or selling of any Investment Opportunity; *provided, however*, that this prohibition shall not apply to any publicly-traded company in which Jeremy Johnson:

(a) owns one (1) percent or less of the outstanding common shares or preferred

shares; or

(b) in any way exercises control over one (1) percent or less of the outstanding common shares or preferred shares;

3.   Engages in or Assists Others in the advertising, marketing, promoting, offering for sale, or selling any Product in which consumers will be entered into a Continuity Program or that has a Negative Option Feature; *provided, however*, this prohibition shall not apply to any publicly-traded company in which Jeremy Johnson:

(a) owns one (1) percent or less of the outstanding common shares or preferred shares; or

(b) in any way exercises control over one (1) percent or less of the outstanding common shares or preferred  shares; or

4.   Engages in or Assists Others in the advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;

F.   Serving as an officer, director, or manager of any business entity, unless Jeremy Johnson actually controls, participates in, or has general knowledge of the daily operations of that entity;

G.   Acting as a signatory on any account for any business entity unless Jeremy Johnson controls, participates in, or has general knowledge of the daily operations of that entity; and

H.   Applying for any Merchant Account for any business entity unless Jeremy Johnson controls, participates in, or has general knowledge of the daily operations of that business entity.

Stipulated Final Order as to Jeremy
Johnson and 27 Corporate Defendants              15

## II.

## **PROHIBITED PRACTICES**

**IT IS FURTHER ORDERED** that:

A.   Jeremy Johnson and his representatives, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Product, are hereby permanently restrained and enjoined from:

1.   Making or Assisting Others in making, either directly or indirectly, expressly or by implication, any false or misleading statement or representation of any statement that is likely to affect a Person's choice of, or conduct regarding, a Product;

2.   Misrepresenting or Assisting Others in misrepresenting, either directly or indirectly, expressly or by implication:

   a.   That consumers who purchase an Investment Opportunity provided by, marketed by, or advertised by Jeremy Johnson, are likely to make money;

   b.   The income, earnings, profits, appreciation, or sales volume likely to be achieved from an Investment Opportunity;

   c.   Any Material aspect of a Continuity Program or of a Negative Option Feature including the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s);

d. The total cost to purchase, receive, or use, and the quantity of, any Product that is the subject of the sales offer;

e. The risks associated with a Product, including that a Product is Risk-Free, Low Risk, or otherwise results in no obligation to the consumer;

f. Any Material restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

g. Any Material aspect of the performance, efficacy, nature, or central characteristics of any Product that is the subject of the sales offer;

h. Any Material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

i. The status of any user or Endorser of a Product, including misrepresenting that the user or Endorser is an independent user or ordinary, unbiased consumer of the Product; or

j. That consumer Endorsements reflect typical consumer experiences with a Product;

3. Failing to disclose Clearly and Conspicuously:

a. The total cost to purchase, receive, or use any Product that is the subject of the sales offer;

b. The total cost to purchase, receive, or use any Product in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

c. The total cost to purchase, receive, or use any Product subject to the sales offer, in equal or greater size and prominence, and In Close Proximity to, any cost-related claim including any claim that the Product is "free," has a minimal cost, or is being offered on a trial basis or at an introductory or limited-time reduced cost;

d. All Material terms and conditions of any Negative Option Feature including the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s);

e. All Material terms and conditions of any Negative Option Feature including the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s) in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

f. All Material terms and conditions of any Continuity Plan;

g. All Material terms and conditions of any Continuity Plan in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

Stipulated Final Order as to Jeremy
Johnson and 27 Corporate Defendants          18

h. All Material terms and conditions of any Continuity Plan or Negative Option Feature in equal or greater size and prominence, and In Close Proximity to, any cost-related claim including any claim that a product is "free" or "no cost," if a cost-related claim is made in the course of advertising, offering for sale, or otherwise marketing any Product; and

i. All Material terms and conditions of any Continuity Program or Negative Option Feature in equal or greater size and prominence, and In Close Proximity to, any claim about risks associated with a Product, including claims that a Product is Risk-Free, Low Risk, or otherwise results in no obligation to the consumer, if such claim is made in the course of advertising, offering for sale, or otherwise marketing any Product;

4. Failing to disclose Clearly and Conspicuously any other Material information including:

a. The quantity of any Product that is the subject of the sales offer;

b. Any Material term or condition including any restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

c. Any Material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for any Product including if there is a policy of not making refunds, cancellations, exchanges, or repurchases;

d. That Endorsers received funds or some other benefit, directly or indirectly, from any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the

subject of an Endorsement including if Endorsers received funds or some other benefit from a non-profit charitable fund that is directly or indirectly associated with any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement, *provided that*, this provision shall not apply where (1) the Endorser is an expert or Person known to a significant portion of the viewing public, and (2) the endorsement appears in an advertisement where payment would be ordinarily expected by viewers; and

 e. Any relationship that materially affects the weight or credibility of any Endorsement and that would not be reasonably expected by consumers, when one exists, between any user or Endorser and any other individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product;

B. Jeremy Johnson and his representatives, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Product, are hereby permanently restrained and enjoined from charging or debiting a consumer's bank, credit, or other financial account, or otherwise assessing charges to a consumer, without first obtaining the consumer's Express Verifiable Authorization; and

C. In connection with applying for or maintaining Merchant Accounts, Jeremy Johnson and his representatives, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this

Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

1. Making or Assisting Others in making, expressly or by implication, any false or misleading statement or representation including any statement or representation concerning the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind; or

2. Failing to disclose to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind any Material information related to a Merchant Account including the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, and any connection between the owner, manager, director, or officer of the applicant for or holder of a Merchant Account and any third Person who has been or is placed in a Merchant Account monitoring program, had a Merchant Account terminated by a payment processor or a Financial Institution, or has been fined or otherwise disciplined in connection with a Merchant Account by a payment processor or a Financial Institution.

## III.

## PROHIBITION AGAINST VIOLATION OF THE
## ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that Jeremy Johnson and his representatives, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Product, are hereby permanently restrained and enjoined:

A.      Engaging in any recurring debiting of a consumer's account without first obtaining a valid written pre-authorization for preauthorized electronic fund transfers from the consumer's account, which pre-authorization is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b) (5) and (6), Supp. I;

B.      Engaging in any recurring debiting of a consumer's account without first providing a copy of a valid written pre-authorization to the consumer for preauthorized electronic fund transfers from the consumer's account, which copy is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b) (5) and (6), Supp. I; and

C.      Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain a written authorization for preauthorized electronic fund transfers, as required

in Section 205.10(b)(7) of the Federal Reserve Board's Official Staff Commentary to

Regulation E.

### IV.

### MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that monetary judgment is entered in favor of the

Commission and against the IWorks Settling Defendants, jointly and severally, in the amount of

**$280,911,870.36**, which represents the Commission's estimate of the total alleged unreimbursed

consumer injury caused by the Defendants, *provided, however*, that full payment of the

foregoing amount shall be suspended upon satisfaction of the obligations set forth in Paragraphs

A and B of this Section, and subject to the conditions set forth in this Section below.

A.   Effective immediately upon the entry of this Order, the IWorks Settling Defendants

shall surrender to the Commission all control, title, dominion, and interest each has in

the following assets:

1.   All property owned by or titled to the IWorks Corporate Settling Defendants

including any real, personal, or intellectual property, chattel, goods, instruments,

equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or

other deliveries, shares or stock, securities, inventory, checks, notes, accounts,

credits, receivables (as those terms are defined in the Uniform Commercial Code),

insurance policies, lines of credit, cash, trusts (including asset protection trusts),

lists of consumer names and reserve funds or any other accounts associated with

any payments processed by, or on behalf of, any IWorks Corporate Settling

Defendants;

2.   All cash held by the Receiver, including cash held in First Republic Bank account

ending in no. 3198, City National Bank account ending in no. 4946, and Bank of the West account ending in no. 6758;

3. All precious metals seized by the Internal Revenue Service from Kerry and Barbara Johnson's residence;

4. 529 S. Woodsview Circle, St. George, Utah, Parcel No. SG-WVV-3-B;

5. 13% interest of Jeremy Johnson in Santa Clara Creek Properties, LLC and any interest in Santa Clara, Utah property owned by Santa Clara Creek Properties, LLC, Parcel Nos. SC-32, SC-32-A, SC-32-B;

6. 2009 VW Jetta, Plate No. CA 6HND101;

7. Lot in Santa Clara, Utah: Castle Rock 1 (SG) Lot: 105, Parcel No. SG-CRS-1-105;

8. Lot in Santa Clara, Utah: Castle Rock 2 (SG) Lot: 166, Parcel No. SG-CRS-2-166;

9. 573 S. Woodsview Circle, St. George, Utah 84770, Parcel No. SG-WVV-1;

10. All stock in Belize Beach Holdings, Ltd. and real property located at Parcel 1277 Block 42 San Pedro Registration Section, San Pedro Town, Ambergris Caye, Belize District of Belize owned by Belize Beach Holdings, Ltd.;

11. 392 West 400 South, Manti, Utah, Parcel No. 1221X1;

12. 3.00 acres parcel of land in Hurricane City, Utah, Parcel No. H-3-1-31-222;

13. Watch: Louis Vuitton, 300 Metres, 18K gold RZ1032;

14. Watch: IWC Schaffhausen, Referenz 5001;

15. Remaining balance of settlement proceeds from Receiver's settlement with Todd Vowell, et al.;

16. Remaining balance of settlement proceeds from the Receiver's settlement with Michael Studebaker;

17. All stock in Pacific Mercantile Bank and/or its parent company;

18. All stock in Town & Country Bank and/or its parent company;

19. All stock in SunFirst Bank and/or its parent company;

20. Northwestern Mutual life insurance policy no. XXXX4835, owner: Jeremy Johnson;

21. Northwestern Mutual life insurance policy no. XXXX3723, owner: Sharla Johnson;

22. Northwestern Mutual variable annuity contract annuity no. XXXX5092, owner: Sharla Johnson;

23. Northwestern Mutual variable annuity contract annuity no. XXXX3728, owner: Sharla Johnson;

24. Northwestern Mutual variable annuity contract annuity no. XXXX7326, owner: Jeremy Johnson;

25. Northwestern Mutual insurance service account no. XXX1012, account holder: Jeremy Johnson; and

26. Northwestern Mutual insurance service account no. XXX0991, account holder: Jeremy Johnson.

B. To the extent they are not already in the possession of the Receiver, the IWorks Settling Defendants shall deliver possession to the Receiver of the Assets identified in Section IV.A.

C. The Receiver shall, as soon as practicable, commence the sale of the unliquidated assets identified in Section IV.A. surrendered pursuant to this Order using a commercially-reasonable procedure. The Receiver shall hold the surrendered Assets, and the proceeds from the sale of the unliquidated Assets, for future transfer in accordance with further instructions from the Court.

D. The Commission's agreement to this Order is expressly premised upon the truthfulness, accuracy, and completeness of the sworn financial statement of Jeremy Johnson, signed on March 31, 2016, which was delivered to Commission counsel on May 11, 2016 ("Johnson's Sworn Statement") and asset deposition testimony in this case.

E. The IWorks Settling Defendants and the Commission stipulate that Johnson's Sworn Statement and testimony in this case include material information upon which the Commission relied in negotiating and agreeing to this Order. The IWorks Settling Defendants stipulate that the Commission has relied on the truthfulness, accuracy, and completeness of Johnson's Sworn Statement and testimony in this case in agreeing to the terms of this Order and that the Commission would not have entered into this Order but for the truthfulness, accuracy, and completeness of Johnson's Sworn Statement and testimony in this case;

F. The suspension of the judgment will be lifted as to the IWorks Settling Defendants if, upon motion by the Commission, the Court finds that Jeremy Johnson failed to disclose any material Asset, materially misstated the value of any Asset, or made any other material misstatement or omission in Johnson's Sworn Statement or testimony in this case.

G.   If the suspension of the judgment is lifted, the judgment becomes immediately due as to the IWorks Settling Defendants in the amount of **$280,911,870.36**, plus interest computed from the date of entry of this Order.

H.   The IWorks Settling Defendants relinquish dominion and all legal and equitable right, title, and interest in all Assets transferred pursuant to this Order and may not seek the return of any Assets.

I.   The facts alleged in the Amended Complaint will be taken as true, without further proof, in, and solely for the purpose of, any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

J.   The facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect solely for such purposes.

K.   The IWorks Settling Defendants acknowledge that Jeremy Johnson's Social Security Number and the Taxpayer Identification Numbers of the IWorks Corporate Settling Defendants, which they previously submitted to the Commission and the Receiver, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

L.   Proceedings instituted under this Section are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order.

M.   All Assets or funds ultimately surrendered to the Commission pursuant to this Order and further instructions from the Court may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Amended Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. The IWorks Settling Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## V.

## BAN ON USE OF CONSUMER INFORMATION

IT IS FURTHER ORDERED that Jeremy Johnson and his representatives, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A.   Disclosing to any third party, using, or benefitting from consumer information, including the name, address, telephone number, e-mail address, Social Security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), or would otherwise allow the assessing of a charge against a consumer's

Stipulated Final Order as to Jeremy
Johnson and 27 Corporate Defendants          28

account, of any Person which Defendants obtained prior to entry of this Order in

connection with the advertising, marketing, promotion, or sale of any Product;

B.    Failing to provide to the Receiver such consumer information in all forms that is

in IWorks Settling Defendants' possession, custody, or control within five (5)

business days after entry of this Order; and

C.    Failing to dispose of such consumer information in all forms that is in the IWorks

Settling Defendants' possession, custody, or control within forty-five (45) days

after entry either 1) entry of a final Order closing this case or 2) receipt of written
or 3) when all appellate rights are exhuasted.
direction to do so from a representative of the FTC⋏ Disposal shall be by means

that protect against unauthorized access to the consumer information, such as by

burning, pulverizing, or shredding any papers, and by erasing or destroying any

electronic media, to ensure that the consumer information cannot practicably be

read or reconstructed.

*Provided, however*, that consumer information need not be disposed of, and may be

disclosed, to the extent requested by a government agency or required by a law, regulation, or

court order.

## VI.

### LIMITED LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the Asset freeze imposed by the February 10, 2011

Preliminary Injunction Order [DE 130] and the March 25, 2013 Order Granting Motion for

Order Clarifying Preliminary Injunction Order [DE 900] (the "Asset Freeze") is modified to

permit the payments and transfers required by Section IV (Monetary Judgment) of this Order.

Upon completion of the payments and transfers required by Section IV of this Order, the Asset

Freeze is dissolved as to the IWorks Settling Defendants. The Asset Freeze remains in full force and effect as to all remaining non-settling Corporate Defendants.

## VII.

## MONITORING BY JEREMY JOHNSON

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Jeremy Johnson and his representatives, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, selling, or provision of any Products on or through the Internet, the World Wide Web, or any web page or website, are hereby permanently restrained and enjoined from failing to:

A.  Obtain contact information from any prospective Marketing Affiliate or Client. In the case of a natural person. Jeremy Johnson shall obtain the prospective Marketing Affiliate's or Client's first and last name, physical address, country, telephone number, e-mail address, date of birth, and complete bank account information as to where payments are to be made. In the case of business entities, Jeremy Johnson shall obtain the first and last name, physical address. country. telephone number, e-mail address, and date of birth for the natural person who owns, manages, or controls the prospective Marketing Affiliate or Client, and complete bank account information as to where payments are to be made;

B.  Require each Affiliate Network to obtain from its Marketing Affiliates and maintain the identifying information set forth in Subsection A of this Section prior to the

Marketing Affiliate's or Affiliate Network's participation in any Jeremy Johnson
Affiliate Program;

C.   Provide each prospective Marketing Affiliate or Client prior to such prospective
Marketing Affiliate's acceptance into any Jeremy Johnson Affiliate Program or
Jeremy Johnson providing services to a prospective Client: (1) a copy of this Order;
and (2) a Clear and Conspicuous statement in writing that engaging in acts or
practices prohibited by this Order will result in immediate termination of any
Marketing Affiliate or Client and forfeiture of all monies received from or owed to
the Marketing Affiliate or Client;

D.   Obtain from each prospective Marketing Affiliate or Client prior to such prospective
Marketing Affiliate's acceptance into any Jeremy Johnson Affiliate Program or prior
to Jeremey Johnson providing services to a prospective Client a signed and dated
statement acknowledging receipt of this Order and expressly agreeing to comply with
this Order;

E.   Routinely monitor all marketing materials, including websites, e-mails, and pop-ups
used by each Marketing Affiliate to advertise, promote, market, offer for sale, or sell
any Jeremy Johnson Product(s);

F.   Routinely monitor all marketing materials, including websites, e-mails, and pop-ups
used by each Client to advertise, promote, market, offer for sale, or sell any
Product(s) for which Jeremy Johnson is providing services;

G.   Promptly and completely investigate all complaints received by Jeremy Johnson
through any source to determine whether any Marketing Affiliate or Client is
engaging in acts or practices prohibited by this Order;

H.  Review the sales websites for each Marketing Affiliate advertising, promoting, marketing, offering for sale, or selling any Jeremy Johnson Product(s) at least once every thirty (30) days to determine whether any Marketing Affiliate is engaging in acts or practices prohibited by this Order;

I.  Review the sales websites advertising, promoting, marketing, offering for sale, or selling each Client's Product for which Jeremy Johnson provides services at least once every thirty (30) days to determine whether any Client is engaging in acts or practices prohibited by this Order;

J.  Immediately halt the processing of any payments or charges generated by any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order;

K.  Fully refund, within five (5) business days of discovery, any consumer whose account Jeremy Johnson has processed a charge against whose sale originated from any Marketing Affiliate or Client that is discovered to have engaged in, or is engaging in, acts or practices prohibited by this Order since the date of the most recent review by Jeremy Johnson of the Marketing Affiliate's or Client's marketing materials, including the Marketing Affiliate's or Client's websites; and

L.  Terminate, immediately, any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order and cease payments to any such Person.

*Provided, however,* that this Section does not authorize or require Jeremy Johnson to take any action that violates any federal or state law.

**VIII.**

**ORDER ACKNOWLEDGMENTS**

**IT IS FURTHER ORDERED** that:

A.   Each IWorks Settling Defendant, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.   For eight (8) years after entry of this Order, Jeremy Johnson for any business that he owns, individually or collectively with any other IWorks Defendant, is the majority owner or controls directly or indirectly, and each IWorks Settling Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of this Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.   From each individual or entity to which an IWorks Settling Defendant delivered a copy of this Order, that IWorks Settling Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

**IX.**

**COMPLIANCE REPORTING**

**IT IS FURTHER ORDERED** that Jeremy Johnson make timely submissions to the Commission:

Stipulated Final Order as to Jeremy
Johnson and 27 Corporate Defendants          33

A.   One year after entry of this Order, Jeremy Johnson must submit a compliance report, sworn under penalty of perjury:

1.   Jeremy Johnson must:  (a) identify the primary physical, postal, and e-mail address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with him; (b) identify all of Jeremy Johnson's businesses by all of their names, telephone numbers, and physical, postal, e-mail, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Jeremy Johnson must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how he is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.   Additionally, Jeremy Johnson must:  (a) identify all telephone numbers and all physical, postal, e-mail and Internet addresses, including all residences; (b) identify all business activities, including any business for which Jeremy Johnson performs services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such business, including his title, role, responsibilities, participation, authority, control, and any ownership.

B.   For eight (8) years after entry of this Order, Jeremy Johnson must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

   1.   Jeremy Johnson must report any change in: (a) any designated point of contact; or (b) the structure of any entity that Jeremy Johnson has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

   2.   Additionally, Jeremy Johnson must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.   Jeremy Johnson must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against him within fourteen (14) days of its filing.

D.   Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.   Unless otherwise directed by a representative of the Commission in writing, all

submissions to the Commission pursuant to this Order must be e-mailed to

DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:

Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade

Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject

line must begin: *FTC v. Jeremy Johnson, et al*—Jeremy Johnson, X-11-0011.

## X.

## **RECORDKEEPING**

**IT IS FURTHER ORDERED** that Jeremy Johnson must create certain records for eight

(8) years after entry of the Order, and to retain each such record for five (5) years. Specifically,

Jeremy Johnson, for any business in which he, individually or collectively with any other

Defendant, is a majority owner or directly or indirectly controls, must create and retain the

following records:

A.   Accounting records showing the revenues from all goods and services sold, all costs

incurred in generating those revenues, and the resulting net profit or loss;

B.   Personnel records showing, for each Person providing services, whether as an

employee or otherwise, that Person's: name, addresses, and telephone numbers; job

title or position; dates of service; and (if applicable) the reason for termination;

C.   Records of all consumer complaints and refund requests, whether received directly or

indirectly, such as through a third party, and any response;

D.   All records necessary to demonstrate full compliance with each provision of this

Order, including all submissions to the Commission; and

E.      Non-duplicate copies of any advertisement or other marketing material, including web pages, pop ups, e-mail advertisements, and any audio files related to them.

## XI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring the IWorks Settling Defendants' compliance with this Order:

A.      Within fourteen (14) days of receipt of a written request from a representative of the Commission, Jeremy Johnson must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69;

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Jeremy Johnson.  Jeremy Johnson must permit representatives of the Commission to interview any employee or other Person affiliated with him or any of his businesses who has agreed to such an interview.  The Person interviewed may have counsel present;

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Jeremy Johnson, or any individual or entity affiliated with him, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful

use of compulsory process pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1; and

D.   Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Jeremy Johnson, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681(b)(1).

## XII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED**, this 24th day of August , at 10:50 a.m. Pacific Daylight Time.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

Stipulated Final Order as to Jeremy
Johnson and 27 Corporate Defendants                38

**STIPULATED AND AGREED TO BY:**

**For the IWorks Settling Defendants:**

Date: 5/26/2016

Jeremy Johnson, Individually
And As Owner and Officer of the
IWorks Settling Corporate Defendants

Date: 5-26-2016

Karra J. Porter
Phillip E. Lowry, Jr.
Sara E. Spencer
CHRISTENSEN & JENSEN, P.C.

Date: 5-26-2016

Kelly H. Macfarlane
KELLY H. MACFARLANE, PLLC.
Attorneys for the IWorks Settling Corporate Defendants

Stipulated Final Order as to Jeremy
Johnson and 27 Corporate Defendants          39

1

**For Plaintiff Federal Trade Commission:**

2

3    *Collot Guerard*                          Date: August 1, 2016

4    Collot Guerard
     J. Ronald Brooke, Jr.

5    Dotan Weinman
     Roberto Anguizola

6    Jody Goodman
     Attorneys for Plaintiff

7    Federal Trade Commission
     600 Pennsylvania Avenue, NW

8    Mailstop CC-8528
     Washington, DC 20580

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stipulated Final Order as to Jeremy
Johnson and 27 Corporate Defendants                40