COLLOT GUERARD
J. RONALD BROOKE, JR.
DOTAN WEINMAN
JODY GOODMAN
ROBERTO ANGUIZOLA
Federal Trade Commission
600 Pennsylvania Avenue, NW, Mail Stop CC-8528
Washington, DC 20580
202-326-3338 (Guerard)
202-326-3484 (Brooke)
202-326-3049 (Weinman)
202-326-3096 (Goodman)
202-326-3284 (Anguizola)
Attorneys for Plaintiff Federal Trade Commission

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>JEREMY JOHNSON, *et al.*,<br><br>    Defendants. | Case No. 2:10-cv-02203-MMD-GWF |

**STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND
MONETARY JUDGMENT AS TO DEFENDANT SCOTT LEAVITT AND
EMPLOYEE PLUS, INC.**

On December 21, 2010, Plaintiff, the Federal Trade Commission ("FTC" or

"Commission") filed a redacted Complaint for permanent injunction and other relief pursuant to

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section

917(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), alleging that

Stipulated Final Order as to Scott Leavitt

defendants Scott Leavitt, Employee Plus, Inc., IWorks, Inc., and numerous other individuals and corporate entities (collectively, "Defendants") engaged in violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 917(c) of EFTA, and Section 205.10(b) of Regulation E ("Reg E"), 12 C.F.R. § 205.10(b), in connection with the marketing and sale of Internet-based products and services.

On February 25, 2013, the Commission filed its First Amended Complaint ("Amended Complaint") [ECF 830], adding eight relief defendants.

The Commission and Defendants Scott Leavitt and Employee Plus, Inc. ("Leavitt Defendants") stipulate to the entry of this Stipulated Final Order for Permanent Injunction and Monetary Judgment as to the Leavitt Defendants ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS STIPULATED, AGREED, AND ORDERED** as follows:

### FINDINGS

1.  This Court has jurisdiction over this matter.

2.  The Amended Complaint charges that the Leavitt Defendants participated in deceptive and unfair acts or practices in violation of Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b); under Section 917(c) of EFTA, 15 U.S.C. § 1693o(c); and Reg E, 12 C.F.R. § 205.10(b).

3.  The Leavitt Defendants neither admit nor deny any of the allegations in the Amended Complaint, except as specifically stated in this Order.  Only for purposes of this action, the Leavitt Defendants admit the facts necessary to establish jurisdiction.

Stipulated Final Order as to Scott Leavitt

2

4.    The Leavitt Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.    The Leavitt Defendants waive and release any claims that they may have against the Commission, the Receiver and their agents that relate to this action.

6.    The Leavitt Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

1.    **"Affiliate Network"** means any Person who provides Scott Leavitt with Marketing Affiliates for an Affiliate Program or whom Scott Leavitt contracts with as a Marketing Affiliate to promote any Product.

2.    **"Affiliate Program(s)"** means any arrangement under which Scott Leavitt pays, offers to pay, or provides or offers to provide any form of consideration to any third party to: (1) provide Scott Leavitt or his Clients with, or refer to Scott Leavitt or his Clients, potential or actual customers; or (2) otherwise market, advertise, or offer for sale any Product on behalf of Scott Leavitt or his Clients.

3.    **"Assists others"** or **"Assisting others"** means providing assistance or support to any person or entity, including, but not limited to, providing any of the following services: (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any promotional material; (3) providing names of, or assisting in the generation of, potential customers; (4) verifying, processing, fulfilling, or arranging for the fulfillment of

Stipulated Final Order as to Scott Leavitt

3

orders; (5) hiring, recruiting, or training personnel; (6) performing promotional or marketing services of any kind; or (7) processing or arranging for processing of credit cards, debit cards, Automated Clearinghouse ("ACH") debits, remotely-created checks, or payments through any other system.

4.      **"Clear(ly) and Conspicuous(ly)"** or **"Clear and Conspicuous"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

      a.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

      b.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

      c.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

      d.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

e.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

f.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

g.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

h.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

5.      **"Client"** means any third party to which Scott Leavitt provides any of the services listed in the definition of Assisting others.

6.      **"Commission"** or **"FTC"** means the Federal Trade Commission.

7.      **"Continuity Program"** means any plan, arrangement, or system under which a consumer is periodically charged to maintain a service or periodically receive any Product, including, but not limited to, access to a "member only" website.

8.      **"Corporate Defendants"** means:

| | |
|---|---|
| 1) Anthon Holdings Corp. | 32) Internet Economy, Inc. |
| 2) Big Bucks Pro, Inc. | 33) Internet Fitness, Inc. |
| 3) Blue Net Progress, Inc. | 34) IWorks, Inc. |
| 4) Blue Streak Processing, Inc. | 35) Jet Processing, Inc. |
| 5) Bolt Marketing, Inc. | 36) JRB Media, Inc. |
| 6) Bottom Dollar, Inc. | 37) LifeStyles for Fitness, Inc. |
| 7) Bumble Marketing, Inc. | 38) Market Funding Solutions, Inc. |
| 8) Business First Inc. | 39) Mist Marketing, Inc. |
| 9) Business Loan Success, Inc. | 40) Money Harvest, Inc. |
| 10) Cloud Nine Marketing, Inc. | 41) Monroe Processing, Inc. |
| 11) Cold Bay Media, Inc. | 42) Net Business Success, Inc. |

Stipulated Final Order as to Scott Leavitt

| | |
|---|---|
| 12) Costnet Discounts, Inc. | 43) Net Commerce, Inc. |
| 13) CPA Upsell, Inc. | 44) Net Discounts, Inc. |
| 14) CS Processing, Inc. | 45) Net Fit Trends, Inc. |
| 15) Cutting Edge Processing, Inc. | 46) Network Agenda, LLC |
| 16) Diamond J Media, Inc. | 47) Optimum Assistance, Inc. |
| 17) Ebusiness First, Inc. | 48) Power Processing, Inc. |
| 18) Ebusiness Success, Inc. | 49) Premier Performance, Inc. |
| 19) Ecom Success, Inc. | 50) Pro Internet Services, Inc. |
| 20) Elite Debit, Inc. | 51) Razor Processing, Inc. |
| 21) Employee Plus, Inc. | 52) Rebate Deals, Inc. |
| 22) Excess Net Success, Inc. | 53) Revive Marketing, Inc. |
| 23) Fiscal Fidelity, Inc. | 54) Simcor Marketing, Inc. |
| 24) Fitness Processing, Inc. | 55) Success Marketing, Inc. |
| 25) Funding Search Success, Inc. | 56) Summit Processing, Inc. |
| 26) Funding Success, Inc. | 57) The Net Success, Inc. |
| 27) GG Processing, Inc. | 58) Tranfirst, Inc. |
| 28) GGL Rewards, Inc. | 59) Tran Voyage, Inc. |
| 29) Highlight Marketing, Inc. | 60) Unlimited Processing, Inc. |
| 30) Hooper Processing, Inc. | 61) xCel Processing, Inc. |
| 31) Internet Business Source, Inc. | |

9. **"Endorsement"** means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization), which message consumers are likely to believe reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser.

10. **"Endorser"** means the party whose opinions, beliefs, findings, or experience the message appears to reflect, and may be an individual, group or institution.

11. **"Express Verifiable Authorization"** means:

    a.    Express written authorization by the customer, which includes the customer's signature, and shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law;

Stipulated Final Order as to Scott Leavitt

b.      Express oral authorization which is audio-recorded and made available upon request to the customer, and the customer's bank or other billing entity, and which evidences clearly both the customer's authorization of payment for the goods or services that are the subject of the transaction and the customer's receipt of all of the following information:

(i)   An accurate description, clearly and conspicuously stated, of the goods or services for which payment authorization is sought;

(ii)  The number of debits, charges, or payments (if more than one);

(iii) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(iv)  The amount(s) of the debit(s), charge(s), or payment(s);

(v)   The customer's name;

(vi)  The customer's billing information, identified with sufficient specificity such that the customer understands what account will be used to collect payment for the goods or services that are the subject of the transaction;

(vii) A telephone number for customer inquiry that is answered during normal business hours; and

(viii) The date of the customer's oral authorization; or

c.      Written confirmation of the transaction, identified in a Clear and Conspicuous manner as such on the outside of the envelope, sent to the customer via first class mail prior to the submission for payment of the customer's billing information, and that includes all of the information contained in b(i)-(vii) above and a Clear and Conspicuous statement of the procedures by which the customer can obtain a refund in the event the confirmation is inaccurate; *provided, however,* that this means of authorization shall not

Stipulated Final Order as to Scott Leavitt

be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

12.     **"Financial Institution"** means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)).  An institution that is significantly engaged in financial activities is a Financial Institution.

13.     **"Forced Upsell"** means the automatic bundling of any additional Product with the purchase of a Primary Product.  For purposes of this Order, a Forced Upsell shall include, but not be limited to, any bundled additional Product from which consumers cannot optout, as well as any Upsell that uses a pre-checked checkbox.

14.     **"In Close Proximity"** means for any communication presented solely through visual means: on the same webpage, online service page, mobile device screen, or other electronic page, and immediately adjacent to the cost-related claim and viewable in conjunction with the cost-related claim in such a manner that the communication is viewable without requiring the consumer to scroll up, down, or sideways, or otherwise adjust their browser window or mobile device window in any way.  Representations or disclosures in response to cost-related claims that are accessed or displayed through hyperlinks, pop-ups, interstitials, or other means are NOT "In Close Proximity."

15.     **"Investment Opportunity"** means anything, tangible or intangible, including a program or plan, that is offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, earnings, profit, or appreciation.

Stipulated Final Order as to Scott Leavitt

8

16. **"IWorks Defendant(s)"** means the Corporate Defendants and Jeremy Johnson, Duane Fielding, Andy Johnson, Loyd Johnston, Scott Leavitt, Scott Muir, Bryce Payne, Kevin Pilon, Ryan Riddle, and Terrason Spinks individually, collectively, or in any combination.

17. **"Marketing Affiliate"** means any person or entity, including third-party marketers and Affiliate Networks, who participates in an Affiliate Program.

18. **"Material"** means likely to affect a person's choice of, or conduct regarding, a Product.

19. **"Merchant Account"** means any account with an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

20. **"Negative Option Feature"** means, in an offer or agreement to sell or provide any Product, a provision under which the customer's silence or failure to take an affirmative action to reject a Product or to cancel the agreement is interpreted by the seller or provider as acceptance of the offer.

21. **"Primary Product"** means the chief or principal Product that is the subject of the marketing materials or sales offers.

22. **"Product"** means products, goods, and services, and includes online memberships.

23. **"Receiver"** means Robb Evans & Associates, the receiver appointed by the Court's Preliminary Injunction entered on February 10, 2011 [ECF No. 130].

24. **"Sensitive Personal Information"** means nonpublic information concerning an individual consumer, including, but not limited to: Social Security number, in whole or in part; credit and/or debit card information, in whole or in part, including credit and/or debit card number, expiration date, and transaction detail records; Financial Institution account information or transaction records, in whole or in part, including the ABA routing number, account number,

Stipulated Final Order as to Scott Leavitt

9

check number, and transaction detail records; and account information or transaction records relating to nontraditional payment systems, such as any telecommunications billing system, PayPal, and BillMeLater.

25.     **"Upsell"** means any Product that is offered to the consumer at the time the consumer purchases the Primary Product.

## I.

## CONDUCT PROHIBITIONS

**IT IS ORDERED** that Scott Leavitt and his agents, employees, and attorneys, and all other persons in active concert or participation with Scott Leavitt, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.     Advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell, or Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;

B.     Holding any ownership or other financial interest in any business entity that engages in or Assists others in the advertising, marketing, promoting, offering for sale, or selling any Product as a Forced Upsell;

C.     Serving as an officer, director, or manager of any business entity, unless Scott Leavitt actually controls, participates in, or has knowledge of the daily operations of that entity;

D.     Acting as a signatory on any account for any business entity unless Scott Leavitt controls, participates in, or has knowledge of the daily operations of that entity; and

E.     Applying for any Merchant Account for any business entity unless Scott Leavitt controls, participates in, or has knowledge of the daily operations of that business entity.

*Provided further*, nothing in this Order shall be construed as an exception to this Section I.

Stipulated Final Order as to Scott Leavitt

10

## II.

## PROHIBITED PRACTICES

**IT IS FURTHER ORDERED** that:

A.      Scott Leavitt and his agents, employees, and attorneys, and all other persons in active concert or participation with Scott Leavitt, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Product, are permanently restrained and enjoined from:

1.      Making or Assisting others in making, either directly or indirectly, expressly or by implication, any false or misleading statement or representation of Material fact;

2.      Misrepresenting or Assisting others in misrepresenting, either directly or indirectly, expressly or by implication:

      a.      That government grants are generally available to individuals to pay personal expenses;

      b.      That consumers will be able to find government grants to pay personal expenses using materials provided by, marketed by, or advertised by Scott Leavitt;

      c.      That consumers who purchase an Investment Opportunity provided by, marketed by, or advertised by Scott Leavitt are likely to make money;

      d.      The income, earnings, profits, or sales volume likely to be achieved from an Investment Opportunity;

      e.      Any Material aspect of a Continuity Program or of a Negative Option Feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid

Stipulated Final Order as to Scott Leavitt

the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s);

f. The total cost to purchase, receive, or use, and the quantity of, any Product that is the subject of the sales offer;

g. The risks associated with a Product, including that a Product is risk-free, low risk, or otherwise results in no obligation to the consumer;

h Any Material restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

i. Any Material aspect of the performance, efficacy, nature, or central characteristics of any Product that is the subject of the sales offer;

j. Any Material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

k. The status of any user or Endorser of a Product, including, but not limited to, misrepresenting that the user or Endorser is an independent user or ordinary, unbiased consumer of the Product; or

l. That consumer Endorsements reflect typical consumer experiences with a Product;

3. Failing to disclose Clearly and Conspicuously:

a. The total cost to purchase, receive, or use any Product that is the subject of the sales offer;

b. The total cost to purchase, receive, or use any Product in equal or greater size and prominence, and In Close Proximity to, any request that

consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

c.   The total cost to purchase, receive, or use any Product subject to the sales offer, in equal or greater size and prominence, and In Close Proximity to, any cost-related claim including, but not limited to, any claim that the Product is "free," has a minimal cost, or is being offered on a trial basis or at an introductory or limited-time reduced cost;

d.   All Material terms and conditions of any Negative Option Feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s);

e.   All Material terms and conditions of any Negative Option Feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s) in equal or greater size and prominence, and In Close Proximity to, any request that consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

f.   All Material terms and conditions of any Continuity Plan;

g.   All Material terms and conditions of any Continuity Plan in equal or greater size and prominence, and In Close Proximity to, any request that

Stipulated Final Order as to Scott Leavitt

13

consumers provide their name, address, telephone number, email address, or any Sensitive Personal Information;

    h.    All Material terms and conditions of any Continuity Plan or Negative Option Feature in equal or greater size and prominence, and In Close Proximity to, any cost-related claim including, but not limited to, any claim that a product is "free" or "no cost," if a cost-related claim is made in the course of advertising, offering for sale, or otherwise marketing any Product; and

    i.    All Material terms and conditions of any Continuity Program or Negative Option Feature in equal or greater size and prominence, and In Close Proximity to, any claim about risks associated with a Product, including claims that a Product is Risk-Free, Low Risk, or otherwise results in no obligation to the consumer, if such claim is made in the course of advertising, offering for sale, or otherwise marketing any Product;

4.    Failing to disclose Clearly and Conspicuously any other Material information, Including:

    a.    The quantity of any Product that is the subject of the sales offer;

    b.    Any Material term or condition including, but not limited to, any restrictions, limitations, or conditions to purchase, receive, or use any Product that is the subject of the sales offer;

    c.    Any Material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for any Product including, but not limited

Stipulated Final Order as to Scott Leavitt

14

to, if there is a policy of not making refunds, cancellations, exchanges, or repurchases;

    d.    That Endorsers received funds or some other benefit, directly or indirectly, from any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement including, but not limited to, if Endorsers received funds or some other benefit from a non-profit charitable fund that is directly or indirectly associated with any individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product that is the subject of an Endorsement, *provided that*, this provision shall not apply where (1) the Endorser is an expert or Person known to a significant portion of the viewing public, and (2) the endorsement appears in an advertisement where payment would be ordinarily expected by viewers; and

    e.    Any Material Connection, when one exists, between any user or Endorser and any other individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing a Product;

B.    Scott Leavitt and his agents, employees, and attorneys, and all other persons in active concert or participation with Scott Leavitt, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Product, are permanently restrained and enjoined from charging or debiting a consumer's bank, credit, or other financial account, or otherwise assessing charges to a consumer, without first obtaining the consumer's Express Verifiable Authorization; and

C.      In connection with applying for or maintaining Merchant Accounts, Scott Leavitt and his agents, employees, and attorneys, and all other persons in active concert or participation with Scott Leavitt, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

　　1.      Making or Assisting others in making, expressly or by implication, any false or misleading statement or representation including, but not limited to, any statement or representation concerning the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind; or

　　2.      Failing to disclose to an acquiring bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind any Material information related to a Merchant Account including, but not limited to, the identity of the owner, manager, director, or officer of the applicant for or holder of a Merchant Account, and any connection between the owner, manager, director, or officer of the applicant for or holder of a Merchant Account and any third person who has been or is placed in a Merchant Account monitoring program, had a Merchant Account terminated by a payment processor or a Financial Institution, or has been fined or otherwise disciplined in connection with a Merchant Account by a payment processor or a Financial Institution.

Stipulated Final Order as to Scott Leavitt

16

### III.

## PROHIBITION AGAINST VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that Scott Leavitt and his agents, employees, and attorneys, and all other persons in active concert or participation with Scott Leavitt, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Product, are permanently restrained and enjoined from:

A.    Engaging in any recurring debiting of a consumer's account without first obtaining a valid written pre-authorization for preauthorized electronic fund transfers from the consumer's account, which pre-authorization is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b) (5) and (6), Supp. I;

B.    Engaging in any recurring debiting of a consumer's account without first providing a copy of a valid written pre-authorization to the consumer for preauthorized electronic fund transfers from the consumer's account, which copy is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b)(5) and (6), Supp. I; and

C.    Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain a written authorization for preauthorized electronic fund transfers, as required in Section 205.10(b)(7) of the Federal Reserve Board's Official Staff Commentary to Regulation E.

# IV.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.     Judgment in the amount of Twenty Seven Million Nine Hundred Ten Thousand Nine Hundred Thirty-Five Dollars ($27,910,935.00) is entered in favor of the Commission against the Leavitt Defendants, jointly and severally, as equitable monetary relief.

B.     Upon all asset transfers referenced in Subsection C below, the remainder of the judgment is suspended, subject to the Subsections below.

C.     Immediately upon entry of this Order, the Leavitt Defendants are ordered to surrender to the Commission all control, title, dominion, and interest each has in the following assets:

      1.     All interest the Leavitt Defendants have in funds in any accounts in the name of the Corporate Defendants;

      2.     All cash held by the Receiver, and

      3.     All assets owned by Employee Plus, Inc. including any real, personal, or intellectual property, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities. inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Corporate Defendants.

D.     To the extent they are not already in the possession of the Receiver, the Leavitt Defendants shall deliver possession to the Receiver of the assets identified in Subsection C.

Stipulated Final Order as to Scott Leavitt

18

E.      The Receiver shall, as soon as practicable, commence the sale of the unliquidated assets identified in Subsection C and surrendered pursuant to this Order using a commercially-reasonable procedure.  The Receiver shall hold the surrendered assets, and the proceeds from the sale of the unliquidated Assets, for future transfer in accordance with further instructions from the Court.

F.      The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Scott Leavitt's sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1.      The Financial Statement of Scott Leavitt signed on August 31, 2016, including the attachments.

G.      The suspension of the judgment will be lifted as to Scott Leavitt if, upon motion by the Commission, the Court finds that Scott Leavitt failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

H.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to Scott Leavitt in the amount specified in Subsection A. above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Amended Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

I.      The Leavitt Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to the Order and may not seek the return of any assets.

Stipulated Final Order as to Scott Leavitt

19

J.      The facts alleged in the Amended Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

K.      The facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

L.      Scott Leavitt acknowledges that his Social Security Number, which he has previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of the Order, in accordance with 31 U.S.C. § 7701.

M.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Amended Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  The Leavitt Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

N.      Following the Leavitt Defendants' full completion of their obligations under subsections B-D of this Section, the Receiver shall take the necessary steps to dissolve Employee Plus, Inc.

**V.**

Stipulated Final Order as to Scott Leavitt

20

## BAN ON USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Scott Leavitt and his agents, employees, and attorneys, and all other persons in active concert or participation with Scott Leavitt, who receive actual notice of this Order, are permanently restrained and enjoined from:

A.     Disclosing to any third party, using, or benefitting from consumer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), or would otherwise allow the assessing of a charge against a consumer's account, of any person which the IWorks Defendants obtained prior to entry of this Order in connection with the advertising, marketing, promotion, or offering of any Product;

B.     Failing to provide to the Receiver such consumer information in all forms that is in Scott Leavitt's possession, custody, or control within five (5) business days after entry of this Order; and

C.     Failing to dispose of such consumer information in all forms that is in Scott Leavitt's possession, custody, or control within fifteen (15) days after entry of this Order. Disposal shall be by means that protect against unauthorized access to the consumer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the consumer information cannot practicably be read or reconstructed.

*Provided, however*, that consumer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

**VI.**

Stipulated Final Order as to Scott Leavitt

21

## MONITORING BY SCOTT LEAVITT

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Scott Leavitt and his agents, employees, and attorneys, and all other persons in active concert or participation with Scott Leavitt, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, selling or provision of any Products on or through the Internet, the World Wide Web, or any web page or website, are hereby restrained and enjoined from failing to:

A.    Obtain contact information from any prospective Marketing Affiliate or Client.  In the case of a natural person, Scott Leavitt shall obtain the prospective Marketing Affiliate's or Client's first and last name, physical address, country, telephone number, e-mail address, date of birth, and complete bank account information as to where payments are to be made.  In the case of business entities, Scott Leavitt shall obtain the first and last name, physical address, country, telephone number, e-mail address, and date of birth for the natural person who owns, manages, or controls the prospective Marketing Affiliate or Client, and complete bank account information as to where payments are to be made;

B.    Require each Affiliate Network to obtain from its Marketing Affiliates and maintain the identifying information set forth in Subsection A of this Section prior to the Marketing Affiliate's or Affiliate Network's participation in Scott Leavitt's Affiliate Program;

C.    Provide each prospective Marketing Affiliate or Client prior to such prospective Marketing Affiliate's acceptance into Scott Leavitt's Affiliate Program or prior to Scott Leavitt providing services to a prospective Client: (1) a copy of this Order; and (2) a Clear and Conspicuous statement in writing that engaging in acts or practices prohibited by this Order will

Stipulated Final Order as to Scott Leavitt

22

result in immediate termination of any Marketing Affiliate or Client and forfeiture of all monies received from or owed to the Marketing Affiliate or Client;

D.      Obtain from each prospective Marketing Affiliate or Client prior to such prospective Marketing Affiliate's acceptance into Scott Leavitt's Affiliate Program or prior to Scott Leavitt providing services to a prospective Client a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order;

E.      Routinely monitor any marketing materials, including websites, emails, and pop-ups used by each Marketing Affiliate to advertise, promote, market, offer for sale, or sell any Product(s) of Scott Leavitt;

F.      Routinely monitor any marketing materials, including websites, emails, and pop-ups used by each Client to advertise, promote, market, offer for sale, or sell any Product(s) for which the Scott Leavitt provides services;

G.      Promptly and completely investigate any complaints received by Scott Leavitt through any source to determine whether any Marketing Affiliate or Client is engaging in acts or practices prohibited by this Order;

H.      Review the sales websites for each Marketing Affiliate advertising, promoting, marketing, offering for sale, or selling any of Scott Leavitt's Product(s) at least once every thirty (30) days to determine whether any Marketing Affiliate is engaging in acts or practices prohibited by this Order;

I.      Review the sales websites advertising, promoting, marketing, offering for sale, or selling each Client's Product for which Scott Leavitt provides services, at least once every thirty (30) days to determine whether any Client is engaging in acts or practices prohibited by this Order;

Stipulated Final Order as to Scott Leavitt

23

J.      Immediately halt the processing of any payments or charges generated by any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order;

K.      Fully refund, within five (5) business days of discovery, any consumer whose account Scott Leavitt has processed a charge against whose sale originated from any Marketing Affiliate or Client that is discovered to have engaged in, or is engaging in, acts or practices prohibited by this Order since the date of Scott Leavitt's most recent review of the Marketing Affiliate's or Client's marketing materials, including the Marketing Affiliate's or Client's websites; and

L.      Terminate, immediately, any Marketing Affiliate or Client that has engaged in, or is engaging in, acts or practices prohibited by this Order and cease payments to any such person.

Provided, however, that this Section does not authorize or require Scott Leavitt to take any action that violates any federal, state, or local law.

## VII.

## COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Amended Complaint or related to the location of assets or business records of any IWorks Defendant, Scott Leavitt shall cooperate in good faith with the FTC and appear at such places and times as the FTC shall reasonably request, after three (3) business days written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC.  If requested in writing by the FTC, Scott Leavitt shall appear and provide truthful testimony in any trial, deposition, or other proceeding, or produce or authenticate, if possible, any documents, related to or associated with the transactions

Stipulated Final Order as to Scott Leavitt

24

1  or the occurrences that are the subject of the Amended Complaint, without the service of a

2  subpoena.

3                                                    **VIII.**

4                                **ORDER ACKNOWLEDGMENTS**

5

6       **IT IS FURTHER ORDERED** that:

7  A.      Scott Leavitt, within seven (7) days of entry of this Order, must submit to the

8  Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

9  B.      For eight (8) years after entry of this Order, Scott Leavitt, for any business for which he

10  individually or collectively with any other IWorks Defendant is the majority owner or controls

11  directly or indirectly, must deliver a copy of this Order to:  (1) all principals, officers, directors,

12  and LLC managers and members; (2) all employees, agents, and representatives who participate

13  in conduct related to the subject matter of this Order; and (3) any business entity resulting from

14  any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must

15  occur within seven (7) days of entry of this Order for current personnel.  For all others, delivery

16  must occur before they assume their responsibilities.

17  C.      From each individual or entity to which Scott Leavitt delivered a copy of this Order,

18  Scott Leavitt must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt

19  of this Order.

20

21

22

23

24

25

26

27

28  Stipulated Final Order as to Scott Leavitt

# IX.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Scott Leavitt make timely submissions to the Commission:

A.      One year after entry of this Order, Scott Leavitt must submit a compliance report, sworn under penalty of perjury:

      1.      Scott Leavitt must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with him; (b) identify all of his businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other IWorks Defendant (which Scott Leavitt must describe if he knows or should know due to the own involvement); (d) describe in detail whether Scott Leavitt is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

      2.      Additionally, Scott Leavitt must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which he perform services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such

Stipulated Final Order as to Scott Leavitt

business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For eight (8) years after entry of this Order, Scott Leavitt must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

    1.     Scott Leavitt must report any change in:  (a) any designated point of contact; or (b) any entity in which Scott Leavitt has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

    2.     Additionally, Scott Leavitt must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Scott Leavitt must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against him within fourteen (14) days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

Stipulated Final Order as to Scott Leavitt

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin:  FTC v. Jeremy Johnson, et al., Leavitt—X110011.

## X.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Scott Leavitt must create certain records for eight (8) years after entry of the Order, and retain each such record for five (5) years.  Specifically, Scott Leavitt, for any business that he, individually or collectively with any other IWorks Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      Non-duplicative copies of any advertisement or other marketing material, including web pages, pop ups, email advertisements, and any audio files related to them.

Nothing in this Section shall relieve Scott Leavitt of any responsibility under the Section entitled "Monitoring By Scott Leavitt."

Stipulated Final Order as to Scott Leavitt

28

## XI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Scott Leavitt's compliance with this Order, including the financial representations upon which the judgment was suspended:

A.      Within fourteen (14) days of receipt of a written request from a representative of the Commission, Scott Leavitt must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Scott Leavitt.  Scott Leavitt must permit representatives of the Commission to interview any employee or other person affiliated with him who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through their representatives as consumers, suppliers, or other individuals or entities, to Scott Leavitt or to any entity in which he has any ownership interest, or any individual or entity affiliated with Scott Leavitt, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

Stipulated Final Order as to Scott Leavitt

D.     Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning the Leavitt Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

The parties, and their respective counsel, hereby consent to the terms and conditions of the Order as set forth above and consent to the immediate entry thereof.

**SO ORDERED:** this 18th day of October, 2016 at 5:27 PM, Pacific Daylight Time.

_____
MIRANDA M. DU
United States District Judge

Stipulated Final Order as to Scott Leavitt

30

**STIPULATED AND AGREED TO BY:**

**For Defendant Scott Leavitt and Employee Plus, Inc.**

Date: 9-16-16

Defendant Scott Leavitt

Date: 9-16-16

Marcus R. Mumford, Esq.
405 S. Main Street, Suite 975
Salt Lake City  UT  84111
*Counsel for Scott Leavitt and Employee Plus, Inc.*
Amanda B. Mendenhall

**For Plaintiff Federal Trade Commission:**

Date: 10-18-2016

Collot Guerard
J. Ronald Brooke, Jr.
Dotan Weinman
Jody Goodman
Roberto Anguizola
Attorneys for Plaintiff
Federal Trade Commission
600 Pennsylvania Avenue, NW
Room 8602
Washington, DC 20580

Stipulated Final Order as to Scott Leavitt

31